Richard W. Osman, State Bar No. 167993
Joanne Tran, State Bar No. 294402
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
Email:      rosman@bfesf.com
            jtran@bfesf.com

John A. Nagel, State Bar No. 164796
Rebecca L. Moon, State Bar No. 167981
Anais Martinez Aquino, State Bar No. 285038
CITY OF SUNNYVALE, OFFICE OF THE CITY ATTORNEY
P.O. Box 3707
456 West Olive Avenue
Sunnyvale, CA 94088-3707
Telephone:     (408) 730-7464

Attorneys for Defendants
CITY OF SUNNYVALE, MATTHEW MEYER,
JESSE ASHE, ANTHONY SERRANO, and
GREGORY GIGUIERE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVANTHI MANDA, SURENDER YERVA, and AVINASH YERVA as GAL for minor A.Y., <br><br> Plaintiffs, <br><br> v. <br><br> CATHERINE ALBIN, CITY OF SUNNYVALE, MATTHEW MEYER, JESSE ASHE, ANTHONY SERRANO, GREGORY GIGUIERE, and DOES 1 through 10 inclusive; <br><br> Defendants. | Case No. 5:19-cv-01947-NC <br><br> **DEFENDANTS CITY OF SUNNYVALE, MATTHEW MEYER, JESSE ASHE, ANTHONY SERRANO, AND GREGORY GIGUIERE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> **[FRCP Rule 12(b)(6)]** <br><br> **DEFENDANTS' DEMAND FOR JURY TRIAL** <br><br> Date:      August 7, 2019 <br> Time:      1:00 p.m. <br> Location:  Courtroom 5 – 4th Floor <br>            280 South 1st Street, <br>            San Jose, CA 95113 <br><br> **Hon. Nathanael Cousins** |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.    SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED .................1

II.   STATEMENT OF FACTS ALLEGED BY PLAINTIFFS .........................................................2

III.  LEGAL ARGUMENT.................................................................................................................5

A.    The Complaint Fails To State Facts And Should Be Dismissed Under Rule 12(b)(6) .......................................................................................................................5

B.    The First Cause Of Action Is Unsupported By Facts To State §1983 Claims Against Defendants MEYER, SERRANO, ASHE or GIGUIERE ...................................5

C.    The Second Cause Of Action For Violation Of 14th Amendment Familial Association Rights Is Unsupported By Facts........................................................................9

D.    The Third Cause Of Action For Conspiracy Under §1983 Is Unsupported By Facts .......10

E.    The Officers Are Entitled To Qualified Immunity From All The §1983 Claims..............11

F.    Plaintiffs' §1983 *Monell* Claim Fails To State A Claim Against The CITY....................17

1.    No Facts Are Stated Showing A CITY Pattern, Policy Or Custom.......................18

2.    The Complaint Fails to State Facts to Support a Ratification Claim.....................19

3.    The Complaint Fails to State a Claim Based on Inadequate Training..................20

IV.   CONCLUSION..........................................................................................................................21

i

# TABLE OF AUTHORITIES

## Cases

*AE ex rel. Hernandez v. Cnty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012) ...............................................................................17, 18, 19

*Aguilera v. Baca*,
    510 F.3d 1161 (9th Cir. 2007) .......................................................................................17

*Alberici v. Cnty. of Los Angeles*,
    2013 WL 5573045 (C.D. Cal. 2013).......................................................................9, 10, 16

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011)..................................................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................2, 5, 6, 20

*Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*,
    520 U.S. 397 (1996)..................................................................................................17, 18, 19

*Beck v. City of Upland*,
    527 F.3d 853 (9th Cir. 2008) ........................................................................................19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................2

*Bravo v. City of Santa Maria,*
    639 Fed.Appx. 412 (9th Cir. 2016).................................................................................19

*Brosseau v. Haugen,*
    543 U.S. 194 (2004).................................................................................................11, 12

*Burns v. County of King*,
    883 F.2d 819 (9th Cir. 1998) ........................................................................................10

*Castro v. Cnty. of Los Angeles,*
    833 F.3d 1060 (9th Cir. 2016) ......................................................................................18

*Christie v. Iopa*,
    176 F.3d 1231 (9th Cir. 1999) ......................................................................................19

*Chuman v. Wright*,
    76 F.3d 292 (9th Cir. 1996) ............................................................................................6

*City of Canton v. Harris*,
    489 U.S. 378 (1989)............................................................................................17, 18, 20

*City of Escondido v. Emmons,*
    139 S.Ct. 500 (2019).................................................................................................15, 16

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)........................................................................................................17

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988)................................................................................................17, 18, 19

*Cnty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998).........................................................................................................9

*Connick v. Thompson*,
  563 U.S. 51 (2011)....................................................................................................17, 20

*Crowe v. Cnty. of San Diego*,
  608 F.3d 406 (9th Cir. 2010) .........................................................................................10

*Daniels v. Williams*,
  474 U.S. 327 (1986)..........................................................................................................5

*Delaware v. Prouse*,
  440 U.S. 648 (1979)..........................................................................................................7

*Dillberg v. Cnty. of Kitsap*,
  76 Fed.Appx. 792 (9th Cir. 2003)..................................................................................19

*Doerle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001) .......................................................................................14

*Dougherty v. City of Covina*,
  654 F.3d 892 (9th Cir. 2011) .........................................................................................20

*Franklin v. Fox*,
  312 F.3d 423 (9th Cir. 2002) .........................................................................................10

*Gauvin v. Trombatore*,
  682 F.Supp. 1067 (N.D.Cal.1988) ...................................................................................5

*Gillette v. Delmore*,
  979 F.2d 1342 (9th Cir. 1992) .......................................................................................19

*Graham v. Connor*,
  490 U.S. 386 (1989)..........................................................................................................7

*Harris v. Roderick*,
  126 F.3d 1189 (9th Cir. 1997) ..................................................................................10, 14

*Hillblom v. Cnty. of Fresno*,
  539 F.Supp.2d 1192 (E.D. Cal. 2008)..............................................................................6

*Hopkins v. Bonvicino*,
  573 F.3d 752 (9th Cir. 2009) ...........................................................................................6

*Hunter v. Bryant*,
  502 U.S. 224 (1991)........................................................................................................11

*Jones v. Williams*,
  297 F.3d 930 (9th Cir. 2002) ...........................................................................................6

*Kanae v. Hodson*,
  294 F.Supp.2d 1179 (D. Haw. 2003) .............................................................................19

iii

*Kingsley v. Hendrickson,*
    135 S.Ct. 2466 (2015) ................................................................................................ 11, 13

*Kisela v. Hughes,*
    138 S.Ct. 1148 (2018) ............................................................................................ 13, 14, 15

*Kulya v. City & Cnty. of San Francisco,*
    2008 WL 4415116 (N.D. Cal. 2008) .................................................................................. 9

*Leer v. Murphy,*
    844 F.2d 628 (9th Cir. 1988) ........................................................................................ 5, 6

*Maag v. Wessler,*
    960 F.2d 773 (9th Cir. 1991) ............................................................................................ 12

*Mabe v. San Bernardino Cnty. Dept. of Pub. Soc. Servs.,*
    237 F.3d 1101 (9th Cir. 2001) ............................................................................................ 9

*Mattos v. Agarano,*
    661 F.3d 433 (9th Cir. 2011) ...................................................................................... 11, 12

*Mendocino Environ. Ctr. v. Mendocino Cnty.,*
    192 F.3d 1283 (9th Cir. 1999) .......................................................................................... 10

*Monell v. New York City Dept. of Soc. Servs.,*
    436 U.S. 658 (1978) ...................................................................................................... 11, 17

*Moss v. U.S. Secret Servs.,*
    572 F.3d 962 (9th Cir. 2009) .............................................................................................. 5

*Mueller v. Auker,*
    700 F.3d 1180 (9th Cir. 2012) ............................................................................. 6, 7, 8, 16

*Mullenix v. Luna,*
    136 S.Ct. 305 (2015) ..................................................................................................... 15, 16

*Nadell v. Las Vegas Metro Police Dept.,*
    268 F.3d 924 (9th Cir. 2001) ............................................................................................ 19

*Parratt v. Taylor,*
    451 U.S. 527 (1981) ............................................................................................................. 5

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ................................................................................................. 6, 11, 12

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) .................................................................................................... 18, 19

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,*
    130 F.3d 432 (9th Cir. 1997) ............................................................................................ 17

*Plumhoff v. Rickard,*
    134 S.Ct. 2012 (2014) ................................................................................................. 12, 13

*Porter v. Osborn,*
    546 F.3d 1131 (9th Cir. 2008) ............................................................................................ 9

iv

*Reese v. Cnty. of Sacramento,*
888 F.3d 1030 (9th Cir. 2018) ................................................................................................ 14, 15

*Reichle v. Howards,*
132 S.Ct. 2088 (2012) .................................................................................................................... 12

*Rogers v. Cnty. of San Joaquin,*
487 F.3d 1288 (9th Cir. 2007) ....................................................................................................... 7

*Saucier v. Katz,*
533 U.S. 194 (2001) ........................................................................................................................ 12

*Sheehan v. City & Cnty. of San Francisco,*
743 F.3d 1211 (9th Cir.2014) ....................................................................................................... 19

*Taylor v. List,*
880 F.2d 1040 (9th Cir. 1989) ........................................................................................................ 6

*Wallis v. Spencer,*
202 F.3d 1126 (9th Cir. 2000) ...................................................................................................... 10

*White v. Pauly,*
137 S.Ct. 548 (2017) .................................................................................................. 11, 12, 13, 15

*White v. Roper,*
901 F.2d 1501 (9th Cir. 1990) ........................................................................................................ 6

*Wilkinson v. Torres,*
610 F.3d 546 (9th Cir. 2010) .......................................................................................................... 9

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

**NOTICE**

TO PLAINTIFFS AVANTHI MANDA, SURENDER YERVA and AVINASH YERVA as Guardian ad Litem for minor A.Y.:

PLEASE TAKE NOTICE that on August 7, 2019, at 1:00 p.m., or as soon thereafter as the matter may be heard, Courtroom 5 − 4th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California,  defendants CITY OF SUNNYVALE, MATTHEW MEYER, JESSE ASHE, ANTHONY SERRANO and GREGORY GIGUIERE will and hereby do move this Court for an order granting dismissal of the claims specified below and contained in Plaintiff's Complaint, for failure to state claims upon which relief can be granted against these defendants. This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), as set forth more fully in the memorandum of points and authorities below, on the grounds that dismissal is appropriate because the complaint fails to allege facts sufficient to state each of the claims upon which relief can be granted against Defendants. This motion is based on this notice, the memorandum of points and authorities, the papers and pleadings on file herein, and on such oral and documentary evidence as may be adduced at the hearing of this matter. Defendants also hereby request a jury trial in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED**

Plaintiffs AVANTHI MANDA ("MANDA"), SURENDER YERVA ("YERVA") and AVINASH YERVA ("AVINASH") as Guardian ad Litem for minor A.Y. bring this action against the CITY OF SUNNYVALE ("CITY"), MATTHEW MEYER ("MEYER"), JESSE ASHE ("ASHE"), ANTHONY SERRANO ("SERRANO") and GREGORY GIGUIERE ("GIGUIERE") (collectively referred to herein as "CITY Defendants") for violation of civil rights under 42 U.S.C. section 1983 arising out of the alleged removal of minor A.Y. from the custody of MANDA and YERVA on an unspecified date pursuant to reports of abuse.[1] Plaintiffs' complaint is unsupported by sufficient facts to state each of the claims asserted against the CITY defendants, and Plaintiffs fails to meet their pleading burden to state facts showing a plausible right to relief on each of the claims asserted. (*Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Plaintiffs also bring this action against defendant Catherine Albin, a child abuse investigator for the County of Santa Clara. (Complaint ¶16.) Albin is not an employee of the CITY and is not represented by counsel for the CITY Defendants herein.

1

678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).) Specifically, dismissal of the complaint is warranted because:

(1)     The first cause of action is unsupported by facts to state a §1983 claim for violation of the Fourth Amendment against MEYER, SERRANO, ASHE and GIGUIERE;

(2)     The second cause of action is unsupported by facts to state a §1983 claim for violation of the Fourteenth Amendment against MEYER, SERRANO, ASHE and GIGUIERE;

(3)     The third cause of action is unsupported by facts to state a §1983 conspiracy claim against any CITY defendant; and

(4)     Defendants MEYER, SERRANO, ASHE and GIGUIERE are entitled to qualified immunity from Plaintiffs' §1983 claims.

## II.     STATEMENT OF FACTS ALLEGED BY PLAINTIFFS

Plaintiffs allege Albin is the director of the Northern California Pediatric ICU for Kaiser Medical Group, a general pediatrician with special training and fellowship in pediatric critical care medicine; she holds a PhD in infectious diseases and holds herself out as having special expertise in the area of physical child abuse garnered in her role as the director of the Center for Child Protection for the County of Santa Clara. (Complaint "Compl." ¶¶7-38.) They claim Albin is "the resident child abuse expert for Santa Clara County," serving in that capacity for "some 30 years" and in that capacity she provided child abuse reports for Santa Clara County DFCS, consultation to social workers and law enforcement and court testimony. (Id. ¶¶36, 39.)

Plaintiffs allege that on April 7, 2017, MANDA and YERVA brought their three-month-old son A.Y. to Kaiser Hospital in Sunnyvale claiming he was not eating and had a fever. Medical tests were done and he was sent home with instructions and Tylenol. (Compl. ¶20.) On April 8, 2017, MANDA and YERVA brought A.Y. back to Kaiser for a follow up, and A.Y. was diagnosed with a urinary tract infection. (Id. ¶21.) On April 9, 2017, MANDA and YERVA brought A.Y. back to Kaiser for further follow up and results of the culture previously taken. They claim A.Y. had an E.coli infection and the medical provider mistakenly provided an oral antibiotic. (Id. ¶22.) Plaintiffs claim that as a result of misdiagnosis and incorrect antibiotics A.Y. developed sepsis and the infection spread to the dura, causing meningitis and exacerbating A.Y.'s condition. (Id. ¶23.)

2

On April 11, 2017, MANDA allegedly discovered A.Y. with a fever and possibly seizing, and she brought A.Y. back to Kaiser. (Compl. ¶¶24-25.) Plaintiffs claim that Albin took A.Y. off antibiotics, further exacerbating his condition. (Id. ¶26.) They claim that shortly after he was diagnosed with E.coli Meningitis. (Id. ¶27.) A.Y. was then taken for an MRI. Dr. Saket, a neuroradiologist, found the MRI showed abnormal findings in the brain and surrounding tissue. "The MRI report contained findings of the neuroradiologist consistent with non-accidental head trauma, specifically, Shaken Baby Syndrome." (Id. ¶28.) Plaintiffs claim, however, that Dr. Saket was not informed by Albin that A.Y. was suffering from E. coli Meningitis before the MRI, that A.Y. was misdiagnosed and given the wrong medication that exacerbated his physical condition, including the images seen as abnormalities in the brain and tissue that they claim developed secondary to the E. coli Meningitis and not from Shaken Baby Syndrome. (Id.)

Plaintiffs contend that in discussions with Dr. Saket regarding his MRI findings Albin "purposely did not disclose to Saket the fact that A.Y. had been misdiagnosed and mistreated by Kaiser physicians, including Albin, regarding the E. Coli Meningitis." (Compl. ¶29.) They allege that after discussions with Dr. Saket about his MRI findings Albin "again purposely took no action to inform Saket of the E. Coli Meningitis diagnosis of A.Y." and she allowed the false record she "created through manipulation to persist" in A.Y.'s medical records, knowing it would be relied upon by all future medical providers and form the basis for all their opinions and conclusions regarding A.Y.'s condition and cause of injuries, including that the parents MANDA and YERVA were responsible for inflicting injury to A.Y. via Shaken Baby Syndrome. (Id. ¶30.) They claim "Albin's decision to manipulate the MRI record by omitting critical information was calculated" to create a paper trail of physician's records that would persist for months indicating A.Y. required medical treatment due to non-accidental head trauma. (Id. ¶31.) They claim that based on Albin's experience, she knew this would support her false claim of Shaken Baby Syndrome by creating a record of various medical providers supporting the claims she created while "the other medical providers were merely unwitting participants in her scheme based on her manipulation of the medical record." (Id.)

Plaintiffs allege "Albin chose to purposely omit the information regarding the E.coli Meningitis and allow to stand Saket's finding of brain injuries resulting from non-accidental trauma … to support her intent to put forth a case of Shaken Baby Syndrome" against MANDA and YERVA. (Compl. ¶32.)

3

They claim Dr. Saket only learned in August 2017 during a Juvenile Court proceeding that A.Y. was suffering from E. coli Meningitis at the time of his MRI on April 11, 2017. (Id. ¶33.)  They claim that if Dr. Saket had such information he would not have concluded A.Y. suffered non-accidental head trauma. (Id. ¶34.) Plaintiffs claim that Albin somehow "interfered with the legal process" during the juvenile court proceeding and caused Saket to change his testimony after he admitted his diagnosis and findings would have been different had he known about the E. coli Meningitis, and she "then directed him to testify to a new finding supporting child abuse on another basis." (Id. ¶35.)

Plaintiffs claim Albin, as the child abuse expert for Santa Clara County, "initiated the accusation and ultimately inculpated and incriminated the parents, Manda and Yerva" during a joint investigation by Albin, Santa Clara County DFCS and the Sunnyvale Police Department into the accusations of Shaken Baby Syndrome. (Compl. ¶36.) Plaintiffs allege "Albin told the police the parents were responsible for inflicting the injuries to A.Y. despite having to fabricate a finding of Shaken Baby Syndrome by manipulating the MRI findings through omission of the E. coli Meningitis condition; and concealing the fact Kaiser had misdiagnosed the child's condition and providing the wrong medication … leading up to the hospitalization and exacerbating the child's condition at the time he presented to the hospital." (Id. ¶40.) They allege "Albin knew at the time she inculpated and incriminated Manda and Yerva for the injuries to A.Y. the police would act upon her recommendation and remove the child from the custody of the parents." (Id. ¶41.) They claim Albin also was aware DFCS and the courts would act on her recommendation, resulting in permanent deprivation of familial association. (Id. ¶¶42-43.) They claim that Albin nevertheless "played an active and integral role, in fact the principal instigator of ensuring progression of the false claim throughout the administrative and legal process." (Id. ¶44.)

Plaintiffs allege that, on some unspecified date, defendant officers MEYER, SERRANO, ASHE and GIGUIERE, "with the assistance and in concert with Albin removed minor A.Y. from the custody and care of his parents without any lawful court order or warrant, or other legal or just cause." (Compl. ¶46.) They claim that a joint investigation between the Sunnyvale police officer defendants, DFCS and Albin yielded no information supporting the Shaken Baby Syndrome allegations against MANDA and YERVA. (Id. ¶47.) Plaintiffs claim the police conferred with Albin and concluded the parents MANDA and YERVA were responsible for inflicting non-accidental head trauma to A.Y. via Shaken Baby

4

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

Syndrome and created and advanced a false narrative that MANDA was incapable of caring for A.Y. due to a medical condition and inability to cope with A.Y. (Compl. ¶49.) They claim police and Albin told Plaintiffs they disbelieved them. (Id. ¶50.) Plaintiffs conclude there was no imminent risk of serious bodily injury to A.Y. and no justification for removing A.Y. without a warrant (Id. ¶ 53.)

## III.   LEGAL ARGUMENT

### A.   The Complaint Fails To State Facts And Should Be Dismissed Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.' … A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. … The [allegations must show] more than a sheer possibility that a defendant has acted unlawfully." (*Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Servs.*, 572 F.3d 962, 969 (9th Cir. 2009).) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." (*Iqbal*, 556 U.S. at 678-679.)   A plaintiff suing multiple defendants "<u>must allege the basis of his claim against each defendant</u> to satisfy [FRCP] 8(a)(2)…" [Emphasis added.] (*Gauvin v. Trombatore,* 682 F.Supp. 1067, 1071 (N.D.Cal.1988); *Reyes ex rel. Reyes v. City of Fresno*, No. CV F 13-0418 LJO SKO, 2013 WL 2147023, at \*4 (E.D. Cal. May 15, 2013).)   Plaintiffs' complaint in this case fails to state facts sufficient to state each of the claims asserted against each CITY Defendant and is subject to dismissal.   Argument and authorities on these points follow.

### B.   The First Cause Of Action Is Unsupported By Facts To State §1983 Claims Against Defendants MEYER, SERRANO, ASHE or GIGUIERE

Plaintiffs' first cause of action for violation of A.Y's Fourth Amendment rights under 42 U.S.C. section 1983 for unlawful seizure is unsupported by facts to show a *plausible* right to relief against MEYER, SERRANO, ASHE or GIGUIERE.   To state a §1983 claim, Plaintiffs must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." (*Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 328 (1986).)   "In order for a

5

person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." (*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).)  "[S]ection 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." (*Hillblom v. Cnty. of Fresno,* 539 F.Supp.2d 1192, 1206 (E.D. Cal. 2008); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).)  Plaintiffs must show that the defendant's unconstitutional conduct was the actual and proximate cause of injury. (*White v. Roper*, 901 F.2d 1501, 1501-1506 (9th Cir. 1990); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).)

Vicarious liability is inapplicable in §1983 actions, and Plaintiffs must show that each defendant, through their own individual actions, violated the constitution as to each of the plaintiffs claiming injury. (*Iqbal,* 556 U.S. at 676.)  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." (*Leer*, 844 F.2d at 633.)  A plaintiff cannot hold a defendant liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." (*Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002), *citing Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).)  A defendant cannot be held liable under §1983 based on a "team effort" theory, which "lump[s] all the defendants together, rather than requir[ing] [plaintiff] to base each individual's liability on his own conduct." (*Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); *Chuman*, 76 F.3d at 295.)

A.Y.'s Fourth Amendment unlawful detention claim is unsupported by facts showing any wrongful conduct by defendants MEYER, SERRANO, ASHE or GIGUIERE and fails to state claims against them. "The Fourth Amendment usually requires an officer to have a warrant issued upon probable cause before seizing someone, but 'neither probable cause nor a warrant is required when 'special needs, beyond the normal need for law enforcement make the warrant and probable-cause requirement impracticable.'" (*Mueller v. Auker*, 700 F.3d 1180, 1189 (9th Cir. 2012).)  "In these 'special needs' cases, we 'dispense[] with the probable cause and warrant requirements and simply appl[y] a balancing test to determine if a search or seizure is reasonable and thus constitutional.'" (*Id.*, original

6

brackets.)  "As the Supreme Court has said, a state 'has an urgent interest in the welfare of the child." (*Id.* at 1186.)  "The liberty interest in familial relations is limited by the compelling government interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." (*Id.* at 1186-1187.)  A child may be summarily removed from parental custody without a warrant or notice and a hearing where a child is in imminent danger. (*Id.* at 1187.)  "When a child's safety is threatened, that is justification enough for action first and hearing afterward." (*Id.*)  The term "imminent danger" has not been given any detailed definition. (*Id.* at 1188.)  "Serious allegations of abuse that have been investigated and corroborated usually give rise to a 'reasonable inference of imminent danger sufficient to justify taking children into temporary custody' if they might again be beaten or [harmed] during the time it would take to get a warrant." (*Rogers v. Cnty. of San Joaquin,* 487 F.3d 1288, 1295 (9th Cir. 2007).)

Plaintiffs' complaint fails to state facts showing that MEYER, SERRANO, ASHE or GIGUIERE, acted unreasonably or wrongfully took custody of A.Y. under the circumstances known to them at the time.  "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials … to safeguard … against arbitrary invasions." (*Delaware v. Prouse,* 440 U.S. 648, 653-54 (1979).)  It is well settled that "reasonableness 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and that '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." (*Graham v. Connor,* 490 U.S. 386, 396-97 (1989).)  Plaintiffs' complaint details Albin's alleged wrongful conduct at length, and repeatedly asserts that she purposefully misrepresented, manipulated and concealed medical diagnoses and information throughout A.Y.'s treatment, the investigation and court proceedings to remove A.Y. from MANDA and YERVA's custody.  They allege Albin, a medical physician with specialized training in pediatric care and child abuse and a decades-long "Child Abuse Expert," initiated the accusations against A.Y.'s parents and "ultimately inculpated and incriminated" them during investigation of the abuse charges.  Plaintiffs specifically allege "Albin told the police the parents were responsible for inflicting the injuries to A.Y." despite the fact that she allegedly manipulated medical evidence and diagnoses and fabricated the finding

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

of Shaken Baby Syndrome. (Complaint ¶40.)  They further contend Albin intended to induce police action to remove A.Y. through the allegedly false narrative she promoted. (Id. ¶41.)  Notably, no <u>facts</u> are stated anywhere showing that any police officers knew or had reason to know that Albin allegedly misrepresented, manipulated or concealed evidence to procure the Shaken Baby Syndrome diagnosis. The complaint in fact states that a second doctor made the diagnosis of Shaken Baby Syndrome. (Id. ¶28.) No facts are alleged suggesting it was unreasonable for MEYER, SERRANO, ASHE or GIGUIERE, police officers without medical training or expertise, to rely on the conclusion of two licensed physicians that A.Y. was the victim of Shaken Baby Syndrome. (*Mueller,* 700 F.3d at 1188, detective "was in no position to second guess [doctor]. Even were we to assume with hindsight that the doctor's assessment was wrong, to attribute such a professional error in judgment to [the detective] would be manifestly inappropriate.")  Allegations that MEYER, SERRANO, ASHE and GIGUIERE merely conferred with Albin and concluded the parents were responsible for A.Y.'s condition fail to plausibly show their conclusion was wrongful, particularly given that the complaint makes clear that Albin manipulated and provided false information intending to induce police action, without any facts suggesting anyone knew of the alleged deception.

Further, the complaint curiously fails even to identify the date on which the officers took custody of A.Y.  The complaint thus fails to support the conclusion that A.Y. was not in imminent danger from further suspected injury by MANDA and YERVA, or that the officers had time to obtain a warrant to seize A.Y. without risking further injury to him. A.Y. was a three-month-old infant, vulnerable and diagnosed with an extremely serious condition of head trauma resulting from Shaken Baby Syndrome after medical investigation of his condition that had deteriorated within a few days. Indeed, A.Y.'s condition allegedly was so severe he was in the hospital and expected to remain there (Compl. ¶53), and no facts are stated showing the parents could not have removed or accessed A.Y. and inflicted further serious head or other injury such that immediate protective custody was unwarranted. The facts alleged thus show it was objectively reasonable for the officers to believe exigent circumstances existed to justify protective custody of A.Y. without a warrant. The complaint fails to state a claim for violation of A.Y.'s Fourth Amendment rights against MEYER, SERRANO, ASHE or GIGUIERE.

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

**C.      The Second Cause Of Action For Violation Of 14th Amendment Familial Association Rights Is Unsupported By Facts**

MANDA and YERVA's claim that their 14th Amendment rights to familial association were violated by the seizure A.Y. is unsupported by facts to state a claim against MEYER, SERRANO, ASHE or GIGUIERE.  "To prevail on Plaintiffs' due process claim premised on the unwarranted interference with familial rights, Plaintiffs must demonstrate that the government's action at issue was so egregious or ill-conceived that it shocks the conscious." (*Alberici v. Cnty. of Los Angeles,* No. CV 12-10511-JFW (VBK) 2013 WL 5573045 *16 (C.D. Cal. 2013).)  "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." (*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).)  "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." (*Id.*)  To impose liability for violation of an individual due process right, the official's action must "shock the conscience." (*Id.* at 846; *Wilkinson v. Torres,* 610 F.3d 546, 555 (9th Cir. 2010).)  The standard of culpability for due process right to familial association claims requires plaintiffs to demonstrate that the officer acted with a "purpose to harm" "that was unrelated to legitimate law enforcement objectives." (*Alberici*, 2013 WL 5573045 at *16, *citing Porter v. Osborn,* 546 F.3d 1131, 1137 (9th Cir. 2008).)  "This same standard applies to all due process right to familial association claims, whether the actions that caused the alleged violation were taken by a law enforcement officer, or a social worker." (*Alberici*, 2013 WL 5573045 at *16, *citing Kulya v. City & Cnty. of San Francisco*, No. C 06-06539 JSW, 2008 WL 4415116 (N.D. Cal. 2008).)

"A government official may intrude on a parent's custody of their children without a warrant if the official has information 'at the time of the seizure that establishes' reasonable cause to believe that the child is in imminent danger of serious bodily injury and the scope of the intrusion is reasonably necessary to avert that specific injury.'" (*Mabe v. San Bernardino Cnty. Dept. of Pub. Soc. Servs.,* 237 F.3d 1101, 1107 (9th Cir. 2001).) "The Court uses an objective standard to determine whether information provided an official with reasonable cause to believe exigent circumstances exist. … No fixed formula determines exigency and the Courts consider the totality of the circumstances. Relevant factors that can weigh in favor of exigency include the following: (1) the parents credibility… and (2) the

9

age of the child …" (*Alberici,* 2013 WL 5573045 at \*17, *quoting Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000), *inter alia.*)

The facts alleged in Plaintiff's complaint fail to show MEYER, SERRANO, ASHE or GIGUIERE removed A.Y. from MANDA and YERVA's custody with a purpose to harm them, unrelated to the legitimate objective of protecting A.Y. from further suspected physical abuse.  As set forth above, the facts stated in the complaint show the information known to the officers gave reasonable cause to believe exigent circumstances justified A.Y.'s prompt removal from MANDA and YERVA's custody. No facts are alleged suggesting that any of the police defendants acted with a purpose to harm MANDA or YERVA unrelated to the protection of A.Y. from further suspected serious abuse.  The complaint fails to state a claim for violation of MANDA and YERVA's 14th Amendment rights to familial association.

**D.     The Third Cause Of Action For Conspiracy Under §1983 Is Unsupported By Facts**

Plaintiffs' conclusory allegations that defendants conspired to act are insufficient.  "To establish liability for a conspiracy in a §1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights.… 'Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence …To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." (*Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010), *citing Mendocino Environ. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).)  "The defendants must have, 'by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage.'" (*Mendocino Environ. Ctr.*, 192 F.3d at 1301.)  Further, pleading a conspiracy requires more than a conclusory allegation that defendants conspired to deprive plaintiff's civil rights. The Ninth Circuit applies a heightened pleading standard to §1983 conspiracy claims and holds that bare allegations a defendant conspired with another are insufficient. (*Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1998).)

Plaintiffs' complaint here states no facts showing MEYER, SERRANO, ASHE or GIGUIERE engaged in "some concerted action" or that they intended to accomplish some unlawful objective for the purpose of harming Plaintiffs. The complaint states only that Albin undertook various actions to

10

misrepresent, manipulate and conceal facts surrounding A.Y.'s medical condition and manipulated evidence to procure another physician's diagnosis supporting her claims of abuse, and that at some point the officers "conferred" with Albin and concluded MANDA and YERVA were responsible for inflicting non-accidental head trauma to A.Y. (Compl. ¶49.) No facts are stated even suggesting MEYER, SERRANO, ASHE or GIGUIERE knew Albin allegedly provided false information or falsified evidence of abuse, or that they took some concerted action to perpetuate the allegedly false charges for the purpose of harming MANDA or YERVA.  Conclusions and recitation of the elements of §1983 conspiracy fail to meet the Ninth Circuit's heightened pleading standard for such claims and are insufficient.

The §1983 conspiracy claim also is asserted against "All Defendants," including the CITY. The CITY's §1983 liability, however, cannot be vicarious and must be directly based on a pattern, policy or practice of the CITY pursuant to *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). No facts are alleged showing a CITY policy of conspiracy.  The complaint fails to a *Monell* claim against the CITY on any claim and the §1983 conspiracy claim against the CITY is untenable. (See discussion re §1983 municipal liability, Section "F" *infra.*)

**E.    The Officers Are Entitled To Qualified Immunity From All The §1983 Claims**

MEYER, SERRANO, ASHE and GIGUIERE are protected by qualified immunity.  Qualified immunity protects officers from liability where their conduct does not violate clearly established law, **notwithstanding that reasonable officers could disagree.** (*Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Hunter v. Bryant,* 502 U.S. 224, 228 (1991).)  A court discerns whether "the [officer] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed…after the fact." (*Hunter,* 502 U.S. at 228, emphasis added.)  Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (*Id.* at 227; *Brosseau v. Haugen,* 543 U.S. 194, 205 (2004).)  "[T]he Court considers only the facts that were knowable to the defendant officers." (*White v. Pauly,* 137 S.Ct. 548, 550 (2017); *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2474 (2015).)

To defeat qualified immunity, the law must be "'clearly established in light of the specific context of the case' **at the time of the events in question**." (*Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011), emphasis added.)  It is Plaintiff's burden to show the law was clearly established so "**every**

11

**reasonable official would [have understood] that what he is doing violates that right**." (*Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012), emphasis added.) "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." (*Id.* at 2093; *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Mattos* , 661 F.3d at 442.) Whether the law was clearly established "must be [determined] in light of the specific context of the case, not as a broad general proposition." (*Saucier v. Katz,* 533 U.S. 194, 205 (2001), overruled in part regarding mandatory analysis procedure; *Pearson,* 555 U.S. at 232.) "[It must] be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (*Katz,* 533 U.S. at 202, emphasis added; *Brosseau,* 543 U.S. at 205; *Mattos*, 661 F.3d at 442, *al-Kidd*, 563 U.S. at 742.) For example, it is not enough to "determine the broad question of whether the seizure…violated the fourth amendment's proscription against unreasonable seizures." (*Maag v. Wessler,* 960 F.2d 773, 775 (9th Cir. 1991).) "[G]eneral Fourth Amendment principles may only provide clearly established law in *obvious cases* and the Supreme Court "clarified that the bar for finding such obviousness is quite high.…[and] it has 'repeatedly told courts not to define clearly established law at a high level of generality.'" (*Mattos*, 661 F.3d at 442*, citing al-Kidd*, 563 U.S. at 742.) As the Supreme Court explained, "In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. … The Court has found this necessary both because qualified immunity is important to 'society as a whole,' and because as 'an immunity from suit' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial'." (*White*, 137 S.Ct. at 551.) The Court thus explained:

> [I]t is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." … the clearly established law must be "particularized" to the facts of the case. … Otherwise "[p]laintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." …
>
> The panel majority misunderstood the "clearly established" analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment. … Of course, "general statements of the law are not inherently incapable of giving fair and clear warning" to officers, … **but "in the light of pre-existing law the unlawfulness must be apparent.**"… [Emphasis added.]

(*White,* 137 S.Ct. at 552; *Brosseau*, 543 U.S. at 199; *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014).) Where a case presents a "unique set of facts and circumstances," this alone should be an indication that

12

an officer's conduct did not violate a "clearly established" right. (*White,* 137 S.Ct. at 552.) The Supreme Court consistently has emphasized in recent years that it has "repeatedly told courts not to define clearly established law at a high level of generality." (*al-Kidd*, 563 U.S. at 742; *White,* 137 S.Ct. at 550; *Kingsley*, 135 S.Ct. at 2474; *Plumhoff*, 134 S.Ct. at 2023.) The importance of identifying clearly established law in terms of the specific contours of each particular case is of such great significance that the Supreme Court repeatedly has reversed Ninth Circuit decisions denying qualified immunity, and it repeatedly has expressly admonished courts not to define clearly established law at a high level of generality. (*Kisela v. Hughes,* 138 S.Ct. 1148, 1152 (2018).)

In *Kisela,* a neighbor reported a woman acting erratically and hacking a tree with a knife. Officers saw Hughes with a large knife walking down her driveway towards her roommate Chadwick, stopping six feet away. All three officers drew their guns and twice told Hughes to drop the knife. Hughes appeared calm but did not acknowledge the officers or drop the knife. All three officers believed Hughes was a threat to Chadwick and Kisela fired four times, striking Hughes. (*Id.* at 1151.) Hughes sued Kisela claiming excessive force in violation of the Fourth Amendment. The Ninth Circuit reversed summary judgment on the grounds that the violation was clearly established, and the violation was obvious. (*Id.*) The Supreme Court reversed the Ninth Circuit decision, finding that Kisela was entitled to qualified immunity. (*Id.* at 1152, 1155.) The Court reiterated that:

> Although "this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White,* 580 U.S., at —, 137 S.Ct., at 551 … "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Ibid.* … **This Court has " 'repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality**.' " *City and County of San Francisco v. Sheehan,* 575 U.S. —, —, 135 S.Ct. 1765, 1775–1776, 191 L.Ed.2d 856 (2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)); see also *Brosseau, supra,* at 198–199, 125 S.Ct. 596.
>
> "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna,* 577 U.S. —, —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (*per curiam *1153*) … Use of excessive force is an area of the law **"in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue**. *Id.,* at —, 136 S.Ct., at 309 ….

13

"[G]eneral statements of the law … do not by themselves create clearly established law outside an 'obvious case.' " *Ibid.* …[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. **An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it**." *Plumhoff v. Rickard,* 572 U.S. —, —, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014). That is a necessary part of the qualified-immunity standard, and it is a part of the standard that the Court of Appeals here failed to implement in a correct way. (*Kisela*, 138 S.Ct. at 1152–1153, emphasis added.)

Kisela believed Hughes was a threat to Chadwick. Kisela had mere seconds to assess the potential danger; he was confronted by a woman seen hacking a tree with a large knife, whose erratic behavior was so significant a bystander to called 911 and flagged down officers; Hughes moved to within feet of Chadwick; and she failed to acknowledge commands or drop the knife. The Supreme Court thus concluded "[t]his is far from an obvious case in which any competent officer would have known that shooting Hughes to protect Chadwick would violate the Fourth Amendment." (*Id.* at 1153.) The Ninth Circuit "made additional errors in concluding that its own precedent clearly established that Kisela used excessive force. To begin with, 'even if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.' *Sheehan, supra,* at —, 135 S.Ct., at 1776." (*Kisela*, 138 S.Ct. at 1153.) The Ninth Circuit's reliance on case authorities involving dissimilar factual situations such as police shooting an unarmed man in the face without warning (*Doerle v. Rutherford,* 272 F.3d 1272 (9th Cir. 2001)), and where an FBI sniper positioned safely on a hilltop shot a man in the back as he retreated into a cabin during the Ruby Ridge standoff (*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997)), was improper to show clearly established law. The differences in these cases and the *Kisela* case "leap from the page," and the attempt to rely on such cases to constitute clearly established law "does not pass the straight-face test." (*Kisela*, 138 S.Ct. at 1154.) Therefore, the law was not clearly established prohibiting the use of force under the specific facts confronting Kisela, and Kisela was entitled to qualified immunity. (*Id.* at 1155.)

The Ninth Circuit in *Reese v. Cnty. of Sacramento,* 888 F.3d 1030 (9th Cir. 2018) acknowledged "the Supreme Court summarily reversed" its qualified immunity decision in *Kisela*, concluding it was 'far from an obvious case,' and that none of [the Court's] precedents squarely governed the facts

14

involved." (*Reese*, 888 at 1040.)  Qualified immunity applied in *Reese* because the law did not clearly prohibit the officer's use of force under the particular facts of the case.  While the court does "'not require a case directly on point…existing precedent must have placed the statutory or constitutional question beyond debate.'…Thus 'clearly established law' should not be defined 'at a high level of generality.'" (*Id.* at 1038, *citing White,* 137 S.Ct. at 552.)  "As [the Supreme] Court explained…the clearly established law must be 'particularized' to the facts of the case…" (*Reese,* 888 F.3d at 1038, original brackets, *citing Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).)  Authorities holding that the use of deadly force was unreasonable where the subject did not pose a threat to officers in different factual situations were inadequate and did not constitute clearly established law in the situation the deputy confronted. The dissimilar factual contexts of the cases on which Reese relied "make clear that the law was not clearly established for the circumstances Deputy Rose confronted…" (*Reese*, 888 F.3d at 1039.) None of Reese's cases "squarely governed" the situation.  Merely citing cases finding excessive force against non-threatening subjects generally was insufficient to show clearly established law prohibiting the force in factually similar circumstances such that the deputy would have known his use of force in Reese's particular incident was prohibited. (*Id.* at 1040.)

Significantly, as recently as January 7, 2019, in *City of Escondido v. Emmons,* __U.S.__, 139 S.Ct. 500 (2019) the Supreme Court once again reversed the Ninth Circuit's denial of qualified immunity on general constitutional principles. In *Emmons,* officers responding to a 911 domestic violence call knocked on an apartment door but got no response. Officers spoke to a woman through an open window and asked her to open the door for a welfare check. Officers heard Emmons inside but could not identify him. Minutes later, Emmons opened the door and came outside. He closed the door against orders and tried to brush past an officer. The officer stopped him, took him to the ground and handcuffed him. (*Id.* at 502.) The district court found no excessive force and that qualified immunity applied, but the Ninth Circuit reversed on the grounds that "The right to be free of excessive force was clearly established at the time of the events in question. *Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1093 (9th Cir. 2013)." (*Id.*) The Supreme Court found the Ninth Circuit again erred in defining clearly established law at such a high level of generality and again emphasized, "Under our cases, the **clearly established right must be defined with specificity**." (*Id.* at 503, *citing Kisela,* 138 S.Ct. at 1152-53, emphasis added.)  Other than

15

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

in "the rare obvious case," the Court "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." (*Id.*) The Ninth Circuit erred in failing to properly analyze whether clearly established law barred the officer from stopping and taking down Emmons in the particular manner used as he exited the apartment. (*Id.*)

Plaintiffs in this case cannot identify any factually similar authority "squarely on point" that clearly prohibited the officers from placing A.Y. in protective custody. Plaintiffs identify no authority requiring police officers to second guess the findings and conclusions of medical professionals, to correctly assess the accuracy of medical diagnoses, to know and correctly determine when medical professionals are misrepresenting, manipulating and concealing information and procuring false diagnoses and to correctly determine when an infant child abuse victim medically diagnosed with non-accidental head trauma from Shaken Baby Syndrome faces imminent danger of further serious bodily injury. "It is exactly these kind of decisions made under difficult conditions and uncertain law that qualified immunity is designed to protect. 'One of the cardinal purposes of immunity is to offer the police 'a fairly wide zone of protection in close cases.''… Officers faced with such decisions must be allowed a broad margin of error." (*Alberici*, 2013 WL 5573045 at *18.) Even assuming with hindsight that Albin and Dr. Saket's diagnosis of Shaken Baby Syndrome was wrong, attributing medical professional error in judgment to police officers MEYER, SERRANO, ASHE and GIGUIERE "would be manifestly inappropriate." (*Mueller*, 700 F.3d at 1188.)

Moreover, Plaintiffs cannot rely on case authorities setting forth general principles of familial integrity, generalities that judicial authorization for removal is required absent evidence that the child was in imminent danger of serious bodily care or authorities involving factually dissimilar situations to defeat qualified immunity. Such an approach would, in effect, ask the court "to repeat the analytical mistake [the Ninth Circuit] made in *Brosseau*, where [it] approached this issue based upon general tests and abstract constitutional propositions instead of focusing on the precise factual scenario confronted by the officers." (*Mueller*, 700 F.3d at 1188.) The Supreme Court has repeatedly instructed courts to examine "whether the violative nature of *particular* conduct is clearly established" by controlling precedent, not whether the conduct violates a general principle of law. (*Mullenix,* 136 S.Ct. at 308, italics in original.) Plaintiffs cannot identify clearly established law prohibiting the officers' warrantless

16

removal of A.Y.'s custody under the "particularized facts of the case" such that it would have been clear to every reasonable officer in similar circumstances, "beyond debate," that removal was wrongful under the Fourth and Fourteenth Amendments. Under the Supreme Court's string of recent decisions, including *Kisela, White, Kingsley*, *Plumhoff* and *Emmons,* in which the Court consistently, and repeatedly required clear precedent that squarely governs the conduct at issue in order to defeat qualified immunity, Plaintiffs cannot meet *their* burden to show factually similar case authority clearly prohibiting the officers' removal of A.Y. under the facts alleged the complaint. MEYER, SERRANO, ASHE and GIGUIERE thus are entitled to qualified immunity from Plaintiffs' §1983 claims.

**F.    Plaintiffs' §1983 *Monell* Claim Fails To State A Claim Against The CITY**

A public entity is subject to liability under §1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation or policy statement (*Monell*, 436 U.S. 658); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law" (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); (3) the decision of a person with "final policymaking authority" (*Id.* at 123); or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights (*City of Canton v. Harris,* 489 U.S. 378 (1989)).  Plaintiffs must show a sufficient causal connection between the enforcement of the municipal policy or practice and the violation of their federally protected right. (*Harris* at 389; *Connick v. Thompson,* 563 U.S. 51, 60 (2011).)  A municipality is "liable under § 1983 only where its policies are the moving force behind the constitutional violation." (*Harris* at 389; *Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1996).) "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." (*Brown* at 405; *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997); *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).)  Further, municipal liability is contingent on an underlying violation of constitutional rights. (*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007).)  Plaintiffs' complaint fails to state facts to show a plausible right to *Monell* liability against the CITY under any theory of §1983 municipal liability.

CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Manda, et al. v. Albin, et al.* U.S.D.C. Northern District of California Case No.: 5:19-cv-01947-NC

### 1.    No Facts Are Stated Showing A CITY Pattern, Policy Or Custom

To show municipal liability based on a pattern, custom or practice, the critical issue is whether there was a particular custom or practice that was so widespread as to have the force of law. (*Brown,* 520 U.S. at 404.) "The custom or policy must be a 'deliberate choice to follow a course of action…made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" (*Castro v. Cnty. of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986).) Plaintiff cannot merely "identify a custom or policy, attributable to the municipality, that caused his injury. [He] must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [parties]." (*Castro,* 833 F.3d at 1076; *Harris,* 489 U.S at 392.) Without allegations of plausible facts supporting a policy or custom, a *Monell* claim should be dismissed. (*AE ex rel. Hernandez,* 666 F.3d at 637.)

Plaintiffs' complaint fails to state specific facts showing that their constitutional rights were violated by an official municipal policy or widespread practice. They merely conclude vague policies, patterns, practices and customs exist regarding inadequate training, supervision, investigation and discipline related to child abuse investigations and removal of children. (Complaint ¶96.) No *facts* are alleged at all showing a pattern or suggesting a "widespread practice" of sufficient duration, frequency and consistency that "is 'so permanent and well settled as to constitute a custom or usage' with the force of law." (*Praprotnik*, 485 U.S. at 127; *Brown* at 403-404.) More significantly, no facts are alleged showing a connection between a CITY custom or policy and the alleged violations. (*Harris,* 489 U.S at 392.) "To the extent that [the Court has] recognized a cause of action under §1983 based on a single decision <u>attributable to a municipality</u>, [it has] done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." [Emphasis added.] (*Brown,* 520 U.S. at 405.)  "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee <u>will not alone permit an inference of municipal culpability and causation</u>; the plaintiff will simply have shown that the *employee* acted culpably." (*Id.* at 406-407; original italics, other emphasis added.) "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. … Congress did not intend municipalities to be held liable unless *deliberate* action <u>attributable to the municipality</u> directly

18

caused a deprivation of federal rights." [Emphasis added.] (*Id.* at 415, original italics.) Plaintiffs' complaint states no facts showing any CITY policy existed, or that deliberate action by the CITY directly caused a deprivation of their constitutional rights. Plaintiffs merely allege misconduct by certain officers in their particular incident. The alleged misconduct in this instance alone fails to support an inference of the CITY's culpability and causation. Factually unsupported conclusions that vague CITY policies existed and "directly and proximately caused" plaintiffs' claimed injuries patently fails to meet plaintiffs' pleading burden and is insufficient. (*AE ex rel. Hernandez,* 666 F.3d at 636.)

## 2. The Complaint Fails to State Facts to Support a Ratification Claim

"To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it." (*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Praprotnik,* 485 U.S., 123-124; *Pembaur,* 475 U.S. at 480-481.) Municipal policymakers must make a conscious, affirmative, deliberate choice to endorse a subordinate's decision and the basis for it. (*Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).) "[M]ere refusal to overrule a subordinate's completed act does not constitute approval. 'To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983." (*Christie*, 176 F.3d at 1239-40; *Praprotnik,* 485 U.S at 128-130.) "We decline to endorse this end run around *Monell.*" (*Gillette*, 979 F.2d at 1348.) "The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification," (*Kanae v. Hodson*, 294 F.Supp.2d 1179, 1189 (D. Haw. 2003); *Nadell v. Las Vegas Metro Police Dept.*, 268 F.3d 924, 929-30 (9th Cir. 2001).[2]) Plaintiffs must show municipal policymakers knew of unconstitutional conduct by subordinates before the constitutional violations ceased. (*Christie*, 176 F.3d at 1239-40.) It is well established that that "Mere failure to discipline…does not amount to ratification…" (*Bravo v. City of Santa Maria,* 639 Fed.Appx. 412, 414–415 (9th Cir. 2016); *Sheehan v. City & Cnty. of San Francisco,* 743 F.3d 1211, 1231 (9th Cir.2014), *reversed in part on other grounds,*— U.S.—, 135 S.Ct. 1765 (2015); *Dillberg v. Cnty. of Kitsap,* 76 Fed.Appx. 792, 796-797 (9th Cir. 2003).)

Plaintiffs' mere conclusion that the CITY "ratified" the defendant officers' conduct by its

---

[2] Abrogated in part on unrelated grounds, as recognized in *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008).

19

"actions and/or inaction" is inadequate to state a claim. (Complaint ¶96.)  No facts are stated showing the CITY's authorized policymakers knew of unconstitutional conduct by any officer, before the alleged violations were completed, and approved it.  Plaintiffs' allegations relate only to their particular incident, and the CITY's after-the-fact knowledge of the incident, which could not have been the moving force behind an incident that already occurred. Mere recitation of the elements of municipal ratification does not suffice to state a claim. (*Iqbal*, 556 U.S. at 678-679.)

### 3.   The Complaint Fails to State a Claim Based on Inadequate Training

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." (*Connick,* 563 U.S. at 61.)  Municipal liability on a failure to train theory could attach "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." (*Harris,* 489 U.S. at 388.)  Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need." (*Id.* at 390; *Connick,* 563 U.S. at 62.)

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'…A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities… [¶] A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.

(*Connick*, 563 U.S. at 61-62; *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).) While this is a high standard, "permitting cases against cities for their 'failure to train' employees to go forward under §1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities–a result [the Court] rejected in *Monell*." (*Harris,* 489 U.S. at 391-392.) Inadequate training claims "will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." (*Id.* at 389.)

Plaintiffs' complaint is devoid of facts showing what the CITY's training programs were, prior similar acts or any basis to show the need for more or different training was so obvious, and the alleged inadequacy so likely to result in constitutional violations, which are necessary to meet the high deliberate indifference standard.  The allegations of the complaint fall well short of plaintiffs' burden to plead facts

to meet the stringent standard of fault for municipal liability based on inadequate training.

The complaint states nothing more than "labels and conclusions" and "a formulaic recitation of the elements" of a *Monell* claim, and fails to state a §1983 claim against the CITY under any theory.

## IV.    CONCLUSION

For the reasons set forth above, defendants the CITY, MEYER, SERRANO, ASHE and GIGUIERE respectfully submit that the instant motion to dismiss plaintiffs' complaint should be granted.

Dated:  June 20, 2019                                                    BERTRAND, FOX, ELLIOT, OSMAN & WENZEL


By:   _____*/s/ Richard W. Osman*_____
        Richard W. Osman
        Joanne Tran
        Attorneys for Defendants
        CITY OF SUNNYVALE, MATTHEW MEYER,
        JESSE ASHE, ANTHONY SERRANO, and
        GREGORY GIGUIERE

21