JAMES R. WILLIAMS, County Counsel (S.B. #271253)
STEPHEN H. SCHMID, Deputy County Counsel (S.B. #078055)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendant
CATHERINE ALBIN

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (San José Division)

| | |
|---|---|
| AVANTHI MANDA, SURENDER YERVA and AVINASH YERVA as GAL for minor A.Y.,<br><br>Plaintiffs,<br><br>v.<br><br>CATHERINE ALBIN, CITY OF SUNNYVALE, MATTHEW MEYER, JESSE ASHE, ANTHONY SERRANO, GREGORY GIGUIERE, and DOES 1 through 10 inclusive,<br><br>Defendants. | No. 19CV01947EJD<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT CATHERINE ALBIN; MEMORANDUM OF POINTS AND AUTHORITIES [FRCP RULE 12(b)(6)]**<br><br>Date: November 7, 2019<br>Time: 9:00 a.m.<br>Crtrm.: 1, 5th Floor<br>Judge: Edward J. Davila |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **November 7, 2019** at **9:00 a.m.** or as soon thereafter as the matter may be heard, in the Courtroom of U.S. District Court Judge Edward J. Davila, located at 280 South 1st Street, San José, Courtroom 1, 5th Floor, Defendant Catherine Albin will move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff's Complaint for Damages.

This Motion is based on the grounds that Plaintiffs have failed to state a cause of action against her under 42 U.S.C. § 1983 or for intentional or negligent infliction of emotional distress.

//

//

This Motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the records, files and pleadings in this action, and on such other matter as the Court may deem necessary and proper.

Dated: July 16, 2019

Respectfully submitted,

JAMES R. WILLIAMS
County Counsel

By: */s/ Stephen H. Schmid*
STEPHEN H. SCHMID
Deputy County Counsel

Attorneys for Defendant
CATHERINE ALBIN

Notice of Motion and Motion to Dismiss Defendant Catherine Albin;
Memorandum of Points and Authorities

19CV01947EJD

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A. A.Y.'S MEDICAL ISSUES ................................................................. 2

    B. DR. ALBIN'S ALLEGED STATUS AS A STATE ACTOR ............................. 2

    C. DR. ALBIN'S ALLEGED UNCONSTITUTIONAL ACTIVITY ........................ 2

    D. PLAINTIFFS' CLAIMS AGAINST DR. ALBIN ............................................ 3

III. ARGUMENT ..................................................................................................... 4

    A. LEGAL STANDARD FOR MOTIONS TO DISMISS ..................................... 4

    B. DR. ALBIN CANNOT BE LIABLE UNDER SECTION 1983 FOR THE WARRANTLESS REMOVAL OF A.Y. ...................................................... 5

        1. Plaintiffs' Allegations are Insufficient to Establish that Dr. Albin is a State Actor .................................................................... 5

        2. Plaintiffs' Allegations are Insufficient to Show that Dr. Albin Conspired with State Actors to Remove A.Y. from the Parental Custody ........................................................................... 7

    C. DR. ALBIN CANNOT BE LIABLE UNDER §1983 ARISING OUT OF HER INVOLVEMENT IN DFCS-INITIATED JUVENILE DEPENDENCY PROCEEDINGS ..............................................................................10

    D. DR. ALBIN IS IMMUNE FROM STATE TORT LIABILITY ........................12

IV. CONCLUSION .................................................................................................15

Notice of Motion and Motion to Dismiss Defendant Catherine Albin;        19CV01947EJD
Memorandum of Points and Authorities

# TABLE OF AUTHORITIES

**CASES**

*Albertson v. Raboff*
  46 Cal.2d 375 (1956)...............................................................................12

*Arce v. County of L.A.*
  211 Cal.App.4th 1455 (2012) ...................................................................12

*ASARCO, LLC v. Union Pacific R. Co.*
  765 F.3d 999 (9th Cir. 2014) ....................................................................14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...........................................................................4, 5, 7, 9

*Balisteri v. Pacifica Police Dept.*
  901 F.2d 696 (9th Cir. 1990) .......................................................................4

*Bell Atlantic v. Twombly*
  550 U.S. 544 (2007).................................................................................4, 5

*Beltran v. County of Santa Clara*
  514 F.3d 906 (9th Cir. 2008) .....................................................................10

*Benavidez v. Gunnell*
  722 F.2d 615 (10th Cir. 1983) .....................................................................7

*Briley v. California*
  564 F.2d 849 (9th Cir. 1977) .......................................................................6

*Briscoe v. LaHue*
  460 U.S. 325 (1983) ............................................................................10, 12

*Coulter v. Bronster*
  57 F.Supp.2d 1028 (D. Haw. 1999) .............................................................5

*Fonda v. Gray*
  707 F.2d 435 (9th Cir. 1983) .......................................................................7

*Franklin v. Terr*
  201 F.3d 1098 (9th Cir. 2000) ...................................................................11

*Gauvin v. Trombatore*
  682 F.Supp. 1067 (N.D. Cal. May 15, 1988) ...............................................5

*Jones v. County of Los Angeles*
  802 F.3d 990 (9th Cir. 2015) ..................................................................6, 12

*Kachig v. Boothe*
  22 Cal.App.3d 626 (1971) .........................................................................13

*Krikorian v. Barry*
  196 Cal.App.3d 1211 (1987) ................................................................12, 14

ii

*Lisker v. City of Los Angeles*
 780 F.3d 1237 (9th Cir. 2015) ................................................................................ 11

*Lockhead v. Weinstein,*
 24 Fed. Appx. 805 (9th Cir. 2001) ........................................................................... 7

*Meyers v. Contra Costa County Dept. of Social Services*
 812 F.2d 1154, (9th Cir. 1987) ............................................................................... 10

*Paine v. City of Lompoc*
 265 F.3d 975 (9th Cir. 2001) ................................................................................... 11

*Parratt v. Taylor*
 451 U.S. 527 (1981) ................................................................................................... 5

*Pettitt v. Levy*
 28 Cal.App.3d 484 (1972) ....................................................................................... 13

*Radcliffe v. Rainbow Const. Co.*
 254 F.3d 772 (9th Cir. 2001) ..................................................................................... 8

*Robbins v. Hamburger Home for Girls*
 32 Cal.App.4th 671 (1995) ................................................................................. 12, 14

*Rubin v. Green*
 4 Cal.4th 1187 (1993) ............................................................................................. 12

*Sawyer v. Legacy Emanuel Hospital & Health Center*
 2019 WL 1982530, at *5 ...................................................................................... 8, 10

*Silberg v. Anderson*
 50 Cal.3d 205 (1990) ......................................................................................... 13, 14

*Siliwinski v. Maysent*
 2019 WL 581720, at *4 (S.D. Cal. Feb.13, 2019) ..................................................... 6

*Sprewell v. Golden State Warriors*
 266 F.3d 979 (9th Cir. 2001) ..................................................................................... 5

*Sutton v. Providence St. Joseph Medical Center*
 192 F.3d 826 (9th Cir. 1999) ................................................................................. 6, 8

*United Steelworkers of America v. Phelps Dodge Corp.*
 865 F.2d 1539 (9th Cir. 1989) ................................................................................... 7

*Warren v. Fox Family Worldwide, Inc.*
 328 F.3d 1136 (9th Cir. 2003) ............................................................................... 5, 7

**/ /**

/ /

/ /

/ /

# STATUTES, CODES, AND RULES

**FEDERAL**

**<u>Federal Rules of Civil Procedure</u>**

Rule 12(b)(6)..................................................................................................... 4, 5

Rule 8(a)(2) ........................................................................................................ 5

**<u>United States Code</u>**

42 U.S.C. § 1983 ...........................................1, 5, 6, 7, 8, 9, 10, 11, 12, 15

**<u>United States Constitution</u>**

Amendment 4.................................................................................................3, 4, 5, 6

Amendment 14...............................................................................................3, 4, 5, 6

**STATE**

**<u>California Code of Civil Procedure</u>**

Section 47(b)(2) .........................................................................................12, 13, 14

**<u>California Penal Code</u>**

Section 11165.7(a)(21) ....................................................................................... 8

Section 11166(a) ................................................................................................ 8

Section 11172(a) ........................................................................................... 12, 14

**<u>California Welfare and Institutions Code</u>**

Section 325 ...................................................................................................... 10

Notice of Motion and Motion to Dismiss Defendant Catherine Albin;                    19CV01947EJD
Memorandum of Points and Authorities

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs, minor A.Y. and his parents, Avanthi Manda and Surender Yerva, have improperly sued Dr. Catherine Albin, a private physician employed by Kaiser Permanente Hospital, under 42 U.S.C. § 1983 and California tort law. Dr. Albin's involvement with Plaintiffs began when A.Y. came under her care at Kaiser in her role as Kaiser's Director of the Pediatric Intensive Care Unit (PICU). Based upon information gathered during A.Y.'s treatment at Kaiser, including a brain MRI, Dr. Albin concluded that A.Y. had suffered a brain injury suggestive of non-accidental trauma; namely, Shaken Baby Syndrome. As required by California law, Dr. Albin, a mandated reporter, directed a Kaiser social worker to communicate a report of suspected child abuse to the County of Santa Clara Department of Family and Children's Services (DFCS).

Plaintiffs brazenly allege that Dr. Albin directed the making of this report—not because it was her true medical opinion, correct or otherwise—but to create a false narrative designed to conceal her erroneous diagnoses and medication decisions regarding A.Y.'s care at Kaiser. Plaintiffs further offer conclusory allegations to suggest the following farcical scenario: that Dr. Albin, to strengthen her false narrative, successfully convinced Sunnyvale police officers and DFCS social workers to go along with her false scheme, knowing they were causing separation of A.Y. and his parents in violation of their constitutional rights.

Although at the pleading stage mere denial of allegations will not support a motion to dismiss, it bears noting that Dr. Albin vigorously denies these false and irresponsible allegations. Dr. Albin moves to dismiss the entirety of Plaintiffs' Complaint for the following reasons: (1) she is a private actor who did not act under color of law and cannot be held liable under § 1983; and (2) she is shielded from tort liability by absolute immunity stemming from her roles as a mandated reporter of suspected child abuse and as a witness testifying in a judicial proceeding.

//

//

//

**A.      A.Y.'S MEDICAL ISSUES**

A.Y. was born prematurely and allegedly suffered from a difficult birth. Complaint ¶ 19. In April 2017, Manda and Yerva brought A.Y. (then age 3 mos.) to Kaiser hospital in Sunnyvale ("Kaiser") on successive days, initially due to fever and poor appetite; then due to persistent fevers; and then due to uncontrollable eye and right arm movement indicating possible seizure activity. *Id.,* ¶¶ 20-25.

At Kaiser, A.Y. came under the care of Dr. Albin, who allegedly took A.Y. off antibiotics, diagnosed him with E. Coli Meningitis, and referred him for a brain MRI. Complaint ¶¶ 26-28. Dr. Albin determined that the MRI findings were consistent with non-accidental head trauma, specifically, Shaken Baby Syndrome. ¶ 28. Dr. Albin allegedly did not share her diagnosis of E. Coli. Meningitis with the Kaiser neuroradiologist who made the MRI findings. Instead, Plaintiffs allege that Dr. Albin kept this diagnosis from her colleagues to obtain medical consensus with her diagnosis of Shaken Baby Syndrome instead of an alternative diagnosis; i.e., E. Coli Meningitis aggravated by improper provisions of medications at Kaiser. *Id.*, ¶¶ 28-30.

**B.      DR. ALBIN'S ALLEGED STATUS AS A STATE ACTOR**

Plaintiffs allege that Dr. Albin, a general pediatrician with special training and fellowship in pediatric critical care medicine, is employed by Kaiser as the PICU Director with a special expertise in the area of physical child abuse. Complaint ¶¶ 37-39. Plaintiffs allege that Dr. Albin was once the director of the Center for Child Protection for the County of Santa Clara with a history of acting as a consulting child-abuse expert for DFCS. *Id.*, ¶¶ 38-39. Plaintiffs further allege that Dr. Albin was a representative, agent, and/or employee and agent of both the County of Santa Clara and the City of Sunnyvale; and a pediatrician and child-abuse investigator for the County and law enforcement in and throughout the County. *Id.*, ¶ 16.

**C.      DR. ALBIN'S ALLEGED UNCONSTITUTIONAL ACTIVITY**

Plaintiffs allege that Dr. Albin concealed her initial diagnosis of E. Coli Meningitis from other Kaiser physicians to perpetrate her false diagnosis of Shaken Baby Syndrome for the purpose

2

of supporting her intent to "put forth a case of Shaken Baby Syndrome against the mother and father." Complaint ¶¶ 29-32. Plaintiffs allege that Dr. Albin informed police that the parents were responsible for inflicting injuries to A.Y. and, in so doing, concealed from the police: (1) the falsity of her diagnosis of Shaken Baby Syndrome; (2) her diagnosis of E. Coli Meningitis; and (3) administration of the wrong medication at Kaiser. *Id.*, ¶ 40. Plaintiffs further allege that Dr. Albin knew that police and DFCS social workers would rely upon her "recommendation" and would remove A.Y. from his parents' custody and initiate child-dependency proceedings. *Id.*, ¶¶ 41-42.

Plaintiffs allege that Dr. Albin played "an active and integral role," and was the "principal instigator of ensuring progression of the false claim throughout the administrative process." Complaint ¶ 44. Plaintiffs allege that Dr. Albin participated in a "joint investigation" with Sunnyvale police officers, which concluded with false determinations that A.Y. suffered non-accidental trauma while in the parents' custody and that the mother was incapable of caring for A.Y. due to a post-partum mental state. *Id.,* ¶¶ 47-49. Plaintiffs further allege that Dr. Albin and Sunnyvale police officer Defendants "discussed their plan to remove A.Y. from the parents' custody and then undertook to do so despite absence of a showing of imminent risk of serious bodily injury." Complaint ¶ 54.

Finally, Plaintiffs allege that Dr. Albin, during the testimony of another witness (fellow Kaiser physician, Dr. Saket) at the juvenile dependency trial, interfered with the legal process while serving as the consultant for the County and caused the witness to change his testimony . . . and then directed him to testify to a new finding supporting child abuse on another basis. Complaint ¶ 35.

## D. PLAINTIFFS' CLAIMS AGAINST DR. ALBIN

In the first cause of action, Plaintiffs allege that Dr. Albin and others violated A.Y.'s Fourth Amendment right to be free of unreasonable seizure by seizing him without a warrant or court order, without any legal justification, including absence of a showing that A.Y. was in imminent risk of serious bodily injury such that a warrant application was not feasible. Complaint ¶ 59.

In the second cause of action, Plaintiffs allege that Dr. Albin and others violated the parents' Fourteenth Amendment right of familial association through unconstitutional seizure of A.Y. with consequent separation of the parents from A.Y.

3

In the third cause of action, Plaintiffs allege that Dr. Albin participated in a conspiracy with others to deprive Plaintiffs of their rights under the Fourth and Fourteenth Amendments through planning and engaging in a false investigation with police officers to remove A.Y. from his parents' custody without a warrant; and use of false reports and testimony provided in juvenile dependency proceedings. Complaint ¶¶ 71-72.

In the fourth and fifth causes of action, Plaintiffs assert claims against Dr. Albin for intentional and negligent infliction of emotional distress through her actions in allegedly covering up an improper Kaiser physician's misdiagnosis and improper prescription of medication, concealing her diagnosis of E. Coli Meningitis from the Kaiser neuroradiologist to perpetrate a false diagnosis of Shaken Baby Syndrome, and engaging law enforcement and DFCS in her scheme to remove A.Y. from his parents' custody. Complaint ¶¶ 76-78.

## III.

## ARGUMENT

### A. LEGAL STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A dismissal under Rule 12(b)(6) is proper where there is either a "lack of cognizable legal theory" or the absence of sufficient facts alleged under a cognizable legal theory. *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

4

"While a complaint attacked by [a] Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-679. Thus, "bare assertions . . . amounting to nothing more than a formulaic recitation of the elements . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

The court is not required to "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The court will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy [FRCP] 8(a)(2) . . ." *Gauvin v. Trombatore,* 682 F.Supp. 1067, 1071 (N.D. Cal. May 15, 1988).

Finally, a motion under FRCP Rule 12(b)(6) should be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as absolute immunity. *Coulter v. Bronster,* 57 F.Supp.2d 1028, 1032 (D. Haw. 1999).

**B.    DR. ALBIN CANNOT BE LIABLE UNDER SECTION 1983 FOR THE WARRANTLESS REMOVAL OF A.Y.**

1.    Plaintiffs' Allegations are Insufficient to Establish that Dr. Albin is a State Actor

To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must show that: (1) the action occurred "under color of law;" and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). Plaintiffs A.Y. and his parents sue Dr. Albin for her actions in conjunction with the Sunnyvale police officers' warrantless removal of A.Y. from parental custody.

Families in child abuse investigations are protected by two provisions of the Constitution, the Due Process Clause of the Fourteenth Amendment and the Search and Seizure Clause of the Fourth

5

Amendment. *Jones v. County of Los Angeles,* 802 F.3d 990, 1000 (9th Cir. 2015). Under the Fourteenth Amendment right to familial association, an official who removes a child from parental custody without a warrant "must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant. *Id.* The child subjected to seizure is also protected by the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* While the constitutional source of the parent's and the child's rights differ, the tests under the Fourteenth Amendment and the Fourth Amendment for when a child may be seized without a warrant are the same. *Id.* The Constitution requires an official separating a child from its parents to obtain a court order unless the official has reasonable cause to believe the child is in imminent danger of serious bodily injury. *Id.*

While Plaintiffs may have alleged a constitutional violation associated with the alleged warrantless removal of A.Y. from parental custody, they nonetheless failed to adequately allege that Dr. Albin is a state actor; i.e., that she acted under color of law.

Generally, only a state actor, and not a private individual or entity, may be liable under 42 U.S.C. § 1983 because "section 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826, 835 (9th Cir. 1999). Private hospitals, doctors, and nurses are not generally considered state actors amenable to suit under § 1983. *Siliwinski v. Maysent,* 2019 WL 581720, at *4 (S.D. Cal. Feb.13, 2019) (citing *Briley v. California,* 564 F.2d 849, 855-56 (9th Cir. 1977), noting that "private hospitals and physicians have consistently been dismissed from § 1983 actions for failure to come within the color of state law requirement.")

Dr. Albin is a private physician employed by Kaiser Permanente Medical Group. Complaint ¶¶ 37, 39. While Plaintiffs allege that Sunnyvale police officers effected a warrantless removal of A.Y. from his parents' custody, they failed to allege with any specificity that Dr. Albin acted as an employee of Sunnyvale Department of Public Safety. *Id.*, ¶ 46. Instead, Plaintiffs generally allege that Dr. Albin was a representative, agent, or employee of the County of Santa Clara and the City of Sunnyvale; and a pediatrician and child-abuse investigator for the County and law enforcement throughout the County. *Id.*, ¶ 16. These legal conclusions, cast as factual allegations, are

6

insufficient to meet the *Iqbal* plausibility standard to support an inference that Dr. Albin is a state actor. See also *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). At a minimum, Plaintiffs should be required to allege specific facts establishing her employment relationship to the City of Sunnyvale at the time of the alleged unconstitutional activity.

Likewise, Plaintiffs' allegations that Dr. Albin was previously the Director of the County's Center for Child Protection and served for many years as a child-abuse expert for DFCS (see ¶¶ 38-39) fail to establish that in April 2017 she acted under color of law in connection with Sunnyvale police officers' removal of A.Y from his parents' custody.

To plausibly show that Dr. Albin acted under color of law in April 2017, Plaintiffs should be required to specify Dr. Albin's employment status with either the City of Sunnyvale or County of Santa Clara as of April 2017 (not in the distant past) and a connection between such status and the Sunnyvale police officers' warrantless removal of A.Y. Plaintiffs have admitted that Dr. Albin was employed by Kaiser in 2017 (Complaint ¶¶ 37, 39) and under *Iqbal* have not and cannot plausibly allege that she is nonetheless a state actor subject to liability under § 1983.

>    2.    Plaintiffs' Allegations are Insufficient to Show that Dr. Albin Conspired with State Actors to Remove A.Y. from the Parental Custody

Private parties have been held to act under color of law if they willfully participate in joint action or a conspiracy with state officials to deprive others of constitutional rights. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540 (9th Cir. 1989). To prove a conspiracy between private parties and the government under § 1983, an agreement or "meeting of the minds" to violate constitutional rights must be shown. *Fonda v. Gray,* 707 F.2d 435, 437-38 (9th Cir. 1983) (internal citations omitted). To be liable, each participant must at least share the common objective of the conspiracy. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1541 (9th Cir. 1989) (citing *Fonda,* 707 F.2d at 438).

But the mere furnishing of information to police officers does not constitute joint action under color of law rendering a private citizen liable under § 1983. *Lockhead v. Weinstein,* 24 Fed. Appx. 805, 806 (9th Cir. 2001) (citing to *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir. 1983)). In a case involving an alleged conspiracy between a complaining citizen and a prosecutor, the Ninth

7

Circuit noted that "a relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy." *Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772, 784 (9th Cir. 2001).

Furthermore, no court has recognized that reporting suspected child abuse or neglect in compliance with, and as mandated by, state law subjects a mandated reporter to liability under § 1983. Mandated reporters under the California Child Abuse and Neglect Reporting Act (CANRA) are required to report suspected child abuse or neglect to law enforcement, child welfare, or other public agencies "whenever the mandated reporter, in his or her professional capacity . . . has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." Cal. Pen. Code § 11166(a). Under CANRA, physicians are mandated reporters of suspected child abuse. Cal. Pen. Code § 11165.7(a)(21).

The Ninth Circuit has observed that "in a case involving a private defendant, the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable' to the private defendant." *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir. 1999). Consistent with this direction, several federal district courts have held that merely "reporting suspected child abuse . . . does not constitute state action" for purposes of § 1983. *Sawyer v. Legacy Emanuel Hospital & Health Center,* 2019 WL 1982530, at *5.

Plaintiffs generally allege that Dr. Albin: (1) accused Plaintiff parents of inflicting injuries to A.Y. and ultimately inculpated and incriminated them during a joint investigation with DFCS and the Sunnyvale Department of Public Safety; (2) knew that the police officers and DFCS social workers would act upon her recommendation to remove A.Y. from his parents' custody and initiate a dependency court action aimed at permanently depriving the family of familial association; (3) played an active and integral role and was the principal instigator of ensuring progression of the false claim throughout the legal process; and (4) assisted in concert with the warrantless removal and discussed with Sunnyvale police officer defendants "their plan to remove A.Y. from his parents' custody despite knowledge that there was no competent evidence to show that A.Y. was in imminent

//

//

danger of suffering severe bodily injury in the time it would take to get the warrant" through means of false information in police reports, false information in DFCS petitions, and false testimony in court. Complaint ¶¶ 30, 36, 40-44, 46-47, 54, and 71-72.

Plaintiffs' allegation that Dr. Albin initiated the process that led to alleged unconstitutional activity does not alone establish a conspiracy or her involvement in state action because she was acting as a mandated reporter in compliance with CANRA. The mere fact that a warrantless removal occurred thereafter does not establish Dr. Albin's participation in a conspiracy with Sunnyvale police officers. Plaintiff must allege specific facts establishing a meeting of the minds insofar as a scheme designed to violate Plaintiffs' constitutional rights—by means of a warrantless removal—despite knowledge that there was no evidence that A.Y. suffered from Shaken Baby Syndrome. Plaintiffs failed to allege that Sunnyvale police officers knew that Dr. Albin's medical diagnosis was willfully false and nonetheless chose to remove A.Y. from his parents' custody without a warrant. For there to exist a meeting of the minds required to show a conspiracy or joint action, the Sunnyvale police officers had to be mindful and supportive of Dr. Albin's alleged plan to falsely report suspected child abuse. Yet Plaintiffs failed to allege that Dr. Albin shared with police officers that she was concealing diagnostic and medication errors as A.Y.'s treating physician at Kaiser or that she concealed her Meningitis diagnosis from the Kaiser neuroradiologist. Without such facts it is implausible to infer that the police officers were had reached a meeting of the minds with Dr. Albin and conspired with her to remove A.Y. from his parents' custody without obtaining a warrant.

Use of general labels to describe Dr. Albin's involvement; i.e., participating in a "joint investigation," playing an "active and integral role," functioning as the "principal instigator," and "assisting in concert" are poor substitutes for fact pleading necessary to meet the *Iqbal* plausibility standard. Thus, Plaintiffs have failed to plead a factually cognizable claim under § 1983, as asserted in the first three causes of action against Dr. Albin for the warrantless removal of A.Y.

/ /

/ /

/ /

9

**C.    DR. ALBIN CANNOT BE LIABLE UNDER §1983 ARISING OUT OF HER INVOLVEMENT IN DFCS-INITIATED JUVENILE DEPENDENCY PROCEEDINGS**

As a starting point, in the child-welfare context, social workers investigating allegations of child abuse and neglect are authorized to file petitions to declare children dependents of the juvenile court. Cal. Welf. & Inst. Code § 325. The Ninth Circuit has held that the decision to institute dependency proceedings is a discretionary, quasi-prosecutorial decision entitled to absolute immunity. *Beltran v. County of Santa Clara,* 514 F.3d 906, 908 (9th Cir. 2008).

While *Beltran* also held that social workers do not have absolute immunity for fabrication of evidence during investigation or falsification of statements included in a dependency petition, Plaintiffs have neither sued County social workers nor specifically alleged that County social workers have either fabricated evidence during their investigation or utilized false affidavits in a dependency petition.

Leaving conclusory allegations aside, the most that can be inferred from Plaintiffs' allegations is that Dr. Albin allegedly made the initial mandated suspected child-abuse report and later testified as an expert witness in juvenile dependency court. As a physician and mandated reporter employed by Kaiser, Dr. Albin was not authorized to investigate, initiate, or prosecute juvenile dependency proceedings with the aim of bringing A.Y. within the jurisdiction of the juvenile dependency court.

Dr. Albin cannot be liable under § 1983 merely from her role as a mandated reporter of suspected child abuse. See *Sawyer v. Legacy Emanuel Hospital & Health Center,* 2019 WL 1982530, at *5 (holding that physicians of a private hospital who participated in a report of suspected child abuse mandated by Oregon law were not state actors for § 1983 liability purposes.). And it is beyond question that as a witness giving testimony during a juvenile dependency proceeding, even perjured testimony, Dr. Albin is protected from § 1983 liability by absolute immunity afforded to witnesses who testify at trials. *Briscoe v. LaHue,* 460 U.S. 325, 345-46 (1983); *Meyers v. Contra Costa County Dept. of Social Services,* 812 F.2d 1154, 1156-57 (9th Cir. 1987).

/ /

Absolute witness immunity is based upon the policy of protecting the judicial process and is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Franklin v. Terr,* 201 F.3d 1098, 1100 (9th Cir. 2000). Absolute witness immunity extends to a witness who conspires to present her own and another person's perjured testimony. *Id.* at 1101-03.

In *Franklin v. Terr,* a psychiatrist hired as an expert witness interviewed a key witness before trial and coached that witness to testimony to fit with her own expert opinion testimony. The plaintiff argued that the psychiatrist and the witness conspired to ensure that their testimony was not contradictory. The court reasoned that because the psychiatrist's alleged conspiratorial behavior was inextricably tied to her own testimony, she was absolutely immune from § 1983 liability under a conspiracy theory. *Id.* at 1102.

Plaintiffs allege that Dr. Albin, during the testimony of another witness, Dr. Saket, interfered with the legal process while serving as the consultant for DFCS during the juvenile dependency trial and caused Dr. Saket to change his testimony … and then directed him to testify to a new finding that supported that the A.Y.'s injuries were the result of child abuse. Complaint ¶ 35. Dr. Albin's alleged interaction with Dr. Saket is subject to absolute witness immunity under *Franklin v. Terr* because it was inextricably tied to her own expert witness testimony.

While *Franklin v. Terr* extended absolute witness immunity to conspiracies to commit perjury, immunity from pre-testimony conduct is not limitless. *Lisker v. City of Los Angeles,* 780 F.3d 1237, 1242 (9th Cir. 2015); *Paine v. City of Lompoc,* 265 F.3d 975, 981 (9th Cir. 2001). Thus, tampering with documentary or physical evidence or preventing witnesses from coming forward is outside the scope of absolute witness immunity. *Id.,* 265 F.3d at 981-82. But Plaintiffs have failed to specify that Dr. Albin, by way of conspiracy or otherwise, was involved in fabrication of or tampering with evidence or prevention of any witness from coming forward.

The most that can be inferred from Plaintiffs' allegations is that: (1) Dr. Albin made a false report of suspected child abuse to conceal Kaiser treatment errors; (2) testified falsely; and (3) coordinated with another witness to support her own false narrative. But Plaintiffs failed to specify facts evidencing that Dr. Albin was a state actor in these alleged activities or that DFCS social

11

workers were aware of or shared in her alleged scheme such as to support a conspiracy with state actors. Logically, like the Sunnyvale police officers, County social workers would have no incentive to participate in a false scheme to protect medical improprieties attributed to a private hospital.

Even assuming the truth of Plaintiffs' wild, vitriolic, and unlikely allegations against Dr. Albin, their Complaint falls short of adequately alleging that she was a state actor, participated in a conspiracy with state actors, or engaged in any activity on her own for which she does not have absolute witness immunity under *Briscoe.* Thus, Plaintiffs' first, second, and third causes of action should be dismissed as against Dr. Albin for failure to state a cognizable claim under § 1983 associated with her involvement with juvenile dependency proceedings brought by DFCS.

## D. DR. ALBIN IS IMMUNE FROM STATE TORT LIABILITY

California Penal Code section 11172(a) provides absolute immunity to a mandated reporter of child abuse and neglect, which includes physicians, against civil and criminal liability for a mandated report of child abuse, including "false and malicious reports of abuse." *Jones v. County of Los Angeles,* 802 F.3d 990, 1008 (2015) (citing to *Arce v. County of L.A.,* 211 Cal.App.4th 1455, 1492 (2012)). Section 11172(a) absolute immunity extends not only to the making of the initial report, but also to "conduct giving rise to the obligation to report, such as the collection of data, or the observation, examination, or treatment of the suspected victim performed in a professional capacity." *Krikorian v. Barry,* 196 Cal.App.3d 1211, 1222-1223 (1987). It further extends to "subsequent communications between the reporter and the public authorities responsible for investigating or prosecuting abuse." *Robbins v. Hamburger Home for Girls,* 32 Cal.App.4th 671, 680 (1995).

Communications with "some relation" to judicial proceedings are absolutely immune from tort liability pursuant to California Civil Code § 47(b)(2), which provides that a privileged publication or broadcast is one made . . . in any . . . judicial proceeding. *Rubin v. Green,* 4 Cal.4th 1187, 1193 (1993). The privilege is an absolute one because it protects publications made with actual malice or with the intent to do harm. *Albertson v. Raboff,* 46 Cal.2d 375, 379 (1956).

/ /

/ /

12

The principal purpose of this so-called litigation privilege under Section 47(b)(2) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. *Silberg v. Anderson,* 50 Cal.3d 205, 213 (1990). It promotes the effectiveness of judicial proceedings by encouraging open channels of communication and the presentation of evidence in judicial proceedings. *Id.* A further purpose of the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing. *Id.*

In furtherance of the public policy purposes it is designed to serve, the litigation privilege has been given broad application. *Silberg v. Anderson,* 50 Cal.3d at 211-212. Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution. *Id.* Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. *Id.* The usual formulation is that the privilege applies to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of litigation; and (4) that have some connection or logical relation to the action. *Id.*

The litigation privilege has been held to bar claims for intentional infliction of emotional distress and negligence when premised upon communications subject thereto. See *Kachig v. Boothe,* 22 Cal.App.3d 626, 641 (1971) and *Pettitt v. Levy,* 28 Cal.App.3d 484, 489 (1972).

Plaintiffs' fourth and fifth causes of action respectively assert claims for intentional infliction of emotional distress and negligent infliction of emotional distress based upon identical allegations. Plaintiffs allege that Dr. Albin, in her capacity as a child-abuse investigator, covered up treatment-related errors occurring at Kaiser, omitted informing the Kaiser neuroradiologist of critical medical information leading to an incorrect diagnosis of Shaken Baby Syndrome, engaged law enforcement and DFCS to remove A.Y. from his parents' custody to facilitate the continued deception of promulgating a false narrative of non-accidental trauma, and falsely called Plaintiff parents liars and child abusers premised upon her false narrative. Complaint ¶¶ 76-79, 86-89.

13

The false narrative allegedly promulgated by Dr. Albin arose out of treatment provided to A.Y. at Kaiser and communicated by Dr. Albin in her role as a mandated reporter of suspected child abuse. Dr. Albin's actions from treatment, reporting, and communicating with law enforcement and social services agencies are absolutely privileged under Penal Code section 11172(a), which shields treatment and information that precedes the making of the suspected child-abuse report and follow-up interaction with investigators. See *Krikorian v. Barry,* 196 Cal.App.3d 1211, 1222-1223 (1987) and *Robbins v. Hamburger Home for Girls,* 32 Cal.App.4th 671, 679 (1995).

Likewise, Dr. Albin's communications connected to the juvenile dependency proceedings and culminating with her sworn expert testimony are absolutely privileged under the litigation privilege (Civil Code § 47(b)(2)), which shields testimony and pre-testimonial activity. See *Silberg v. Anderson,* 50 Cal.3d 205, 211-13 (1990).

While absolute immunity is typically recognized as an affirmative defense, assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense. *ASARCO, LLC v. Union Pacific R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014). Plaintiffs' complaint fails to allege specific, non-conclusory facts establishing a plausible theory of tort liability against Dr. Albin other than based upon conduct for which she is shielded by absolute immunity. Accordingly, Plaintiff's fourth and fifth causes of action should be dismissed as to Dr. Albin.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

14

**IV.**

**CONCLUSION**

Plaintiffs failed to state a cognizable claim against Dr. Albin under 42 U.S.C. § 1983 because they failed to allege sufficient facts to support that she was a state actor or that she conspired with state actors to cause the warrantless removal of A.Y.  Further, Dr. Albin is entitled to immunity from liability on the state law claims.  Accordingly, Dr. Albin respectfully requests that the Court grant her motion to dismiss.

Dated:  July 16, 2019

Respectfully submitted,

JAMES R. WILLIAMS
County Counsel

By: */s/ Stephen H. Schmid*
STEPHEN H. SCHMID
Deputy County Counsel

Attorneys for Defendant
CATHERINE ALBIN

2042433

15