Peter Johnson, SBN No. 165523
Law Office of Johnson & Johnson
2125 Oak Grove Rd. Ste. 315
Walnut Creek, CA 94598
(t) 925.952.8900
(f) 925.952.8902
jjlaw2@earthlink.net

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE COURTHOUSE**

| | |
|---|---|
| AVANTHI MANDA, SURENDER YERVA, and AVINASH YERVA as GAL for minor A.Y., <br><br> Plaintiffs, <br><br> v. <br><br> CATHERINE ALBIN, CITY OF SUNNYVALE, MATTHEW MEYER, JESSE ASHE, ANTHONY SERRANO, GREGORY GIGUIERE, and DOES 1 through 10 inclusive; <br><br> Defendants. | Case No. 5:19-CV-01947-EJD <br><br> PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FRCP 12(b)(6) AS TO THE CITY OF SUNNYVALE DEFENDANTS <br><br> Date: 11/7/19 <br> Time: 9:00am <br> Location: Courtroom 4, 5th Floor <br><br> Hon. Edward J. Davila |

# TABLE OF CONTENTS

I. SUMMARY OF FACTS ...............................................................................................7

II. ARGUMENT ......................................................................................................7

    **A.** Plaintiffs' Complaint in this Case Should Not Subject to
Dismissal Under Federal Rule of Civil Procedure 12(b)(6)……………………….................7

    **B.** Plaintiffs' First Cause of Action Stemming from a Fourth
Amendment Violation is sufficiently pled……………………………………..…….……..8

    **C.** The Defendants' Misconception that a Different Legal Standard
Applies to the 14th Amendment Due Process Claim Undermines
their Assessment of the Second Cause of Action…………………………….…..…………12

    **D.** Each of the Officers Can Be Found Individually Liable for
Integral Participation in the Constitutional Violations........................................................14

    **E.** The Third Cause of Action for Conspiracy Under 42 U.S.C
§ 1983 was Properly Plead and Constitutes a Viable Cause of
Action…………………………………………………………………………..…16

    **F.** The Law is Clearly Established and a Violation of the Law
Does Not Support Application of Qualified Immunity………………………...……………17

    **G.** The *Monell* Claim Has Been Adequately Pled………………………….………….....20

III. CONCLUSION……………………………………………………………………23

**TABLE OF AUTHORITIES**

CASES

*Bell Atl. Corp. v. Twombly,*

   550 U.S. 544, 555 (2007)........................................................................................................7,12

*Ashcroft v. Iqbal,*

   129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555) ................................................7

*NL Indus., Inc. v. Kaplan,*

   792 F.2d 896, 898 (9th Cir.1986) ..............................................................................................7,8

*Ashcroft v. Iqbal,*

   556 U.S. 662, 677-79 (2009) ...........................................................................................8,12, 22

*McQuillion v. Schwarzenegger,*

   369 F.3d 1091, 1099 (9th Cir. 2004) ............................................................................................8

*Rogers v. County of San Joaquin,*

   487 F3d 1288, 1294 (9th Cir. 2007) ..................................................................................10,11,12

*Wallis v. Spencer,*

   202 F3d 1126, 1138, fn. 8 (9th Cir. 2000) .........................................................................11,12,13

*Mabe v. San Bernadino County,*

   237 F3d 1101, 1106-1107 (9TH Cir 2001).........................................................................11,12,13

*Arce v. Children's Hospital Los Angeles,*

   211 CA4th 1455 (2012) ...........................................................................................................11,14

*McKenzie v. Lamb,*

   F2d 1005, 1008 (9th Cir. 1984) ...................................................................................................11

*Porter v. Jones,*

   319 F3d 483, 494 (9th Cir. 2003) ...........................................................................................11, 12

*Alberici v. County of L.A.,*

   2013 U.S. Dist. LEXIS 146362 ...............................................................................................12,16

*County of Sacramento v. Lewis,*

    523 US 833, 848 (1998)....................................................................................12

*Wilkinson v. Torres,*

    610 F3d 546, 555 (9th Cir. 2010) .................................................................12

*Porter v. Osborn,*

    546 F3d 1131, 1137 (9th Cir. 2008) .............................................................12

*Akey v. Placer Cty.,*

    U.S. Dist. LEXIS 137519 (2018)..................................................................13

Troxel v. Granville,

    530 US 57, 65; (2000)....................................................................................13

*Costanich v. Dept. of Soc. and Health Services*

    627 F3d 1101,1113-1114 (9th Cir. 2010) ....................................................13

*O'Con v. Katavich,*

    US Dist. Lexis 168387 at pg. 25 (2013) ......................................................14

*Beltran v. Santa Clara County,*

    514 F3d 906, 908 (9th Cir. 2008) .................................................................14

*McLaughlin v. County of El Dorado,*

    2012 US Dist. Lexis 157186 at pg. 17-20................................................14, 15

*Zinermon v. Burch,*

    494 US 113, 125-126 (1990) .....................................................................13,14

*Boyd v. Benton County,*

    374 F3d 773, 780 (9th Cir 2004) ..............................................................14, 15

*James v. Sadler,*

    909 F2d 934 (5th Cir. 1990) .........................................................................14

*Anderson-Francois v. County of Sonoma,*

    2009 US Dist. Lexis 44176 at pg. 21 ...........................................................14

*Jones v. Williams,*

297 F3d 930, 934 (9th Cir. 2002) ....................................................................................15

*Mueller v. Auker,*

700 F3d 1180 (9th Cir. 2012) .........................................................................................15

*Hampton v. Hanrahan,*

600 F.2d 600, 620-24 (7th Cir. 1979) .............................................................................16

*Harris v. Roderick,*

*126 F.3d 1189 (9th Cir. 1997)* ......................................................................................16

*White v. Pauley,*

*137 S. Ct. 548, 550 (2017)* ...........................................................................................17

*Williams v. Grant County,*

*2016 US Dist. Lexis 123078 at pg. 9-24 (7th Cir. 1979)* ..............................................*18*

*Kisela v. Hughes,*

138 Sup. Ct. 1148 (2018) ...............................................................................................18

*Reese v. County of Sacramento,*

*88 F3d 1030 (9th Cir. 2018)* ........................................................................................*19*

*City of Canton v. Harris,*

289 US 3788, 388-389 (1989) ........................................................................................20

*Dawkins v. County of Honolulu,*

761 F. Supp. 2d 1080, 1087 (2010) ................................................................................20

*Balisteri v. Pacifica Police Dept.,*

901 F2d 696, 699 (9th Cir. 1990) ...................................................................................21

*Harvey v. City of Lake Tahoe,*

*2012 US Dist. Lexis 51876*.............................................................................................22

*Wilkie v. Robbins,*

  *551 US 537, 550 (2007)* ...................................................................................................................*22*

## I.    SUMMARY OF FACTS

On April 7, 2017 the plaintiffs Yerva and Manda brought their young child A.Y. to Kaiser Hospital Sunnyvale due to the fact the child was suffering from a fever and not eating. The child was sent home, prescribed Tylenol and a urine analysis and culture was conducted. (Plaintiffs' Complaint, hereinafter PC 20). On April 8, 2017 plaintiffs brought their child back for a follow up and he was diagnosed with a urinary tract infection. (PC 21) On April 9, 2018 the parents brought their child back for further follow up and for the results of the culture. It was determined AY had an E. Coli infection. A misdiagnosis led to the wrong antibiotic being prescribed. (PC 22)  As a result the child developed Sepsis and the infection spread to the brain dura leading to meningitis. (PC 23) On the morning of April 11, 2017 the child was suffering fever and possible seizing. The mother brought the child back to the hospital. (PC 24-25).  The child was taken off the antibiotics by Albin, which further exacerbated the condition. (PC 26). Shortly after the child was diagnosed with E. Coli Meningitis. (PC 27).  Later that morning the child was taken for an MRI.  Albin did not inform the radiologist and the radiologist had no information the child was suffering from meningitis.  As such irregularities in the imaging were misdiagnosed as non-accidental brain trauma caused by so called Shaken Baby Syndrome. (PC 28)  Shortly thereafter the City of Sunnyvale police arrived due to concerns related to the child's condition. The police arrived and visited with Albin.  Their involvement ensued as set forth below.  In the end they made a decision to remove the child from the custody and care of the parents, without a warrant or court order and despite the absence of any imminent risk of the parents inflicting serious bodily injury to the child.

## II.    ARGUMENT

### A.  Plaintiffs' Complaint in this Case Should Not Subject to Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only when the complaint does not give a defendant fair notice of a legally cognizable claim and the basis on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 555). In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d

896, 898 (9th Cir.1986). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement…" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Based on the specified factual allegations against the *City of Sunnyvale et al.* defendants, which support the alleged causes of action, the complaint here is not appropriate subject for dismissal pursuant to FRCP 12(b)(6).

In the alternative, if the court finds any legal or factual deficiencies in the pleading, the court should allow plaintiffs leave to amend to cure such defects. A complaint should not be dismissed without leave to amend unless amendment would be *futile*. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004). Furthermore, the court should "freely give leave" to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2).

### B. Plaintiffs' First Cause of Action Stemming from a Fourth Amendment Violation is sufficiently pled.

In summary, Plaintiffs alleged as follows:

1. The action arises from the unlawful removal of A.Y. by the City of Sunnyvale police officers without a lawful warrant or court order, and without any legal justification for removal. (Plaintiffs' Complaint (hereinafter PC) para. 3)

2. Matthew Meyer; Jesse Ashe; Anthony Serrano, Gregory Giguiere are all police officers employed by the City of Sunnyvale. (PC paras. 9-14)

3. The unlawful removal occurred on April 11, 2017. (PC para. 15)

4. There was a joint investigation between Albin and the Sunnyvale Police Department falsely accusing the parents of Shaken Baby Syndrome. (PC 36)

5. Albin and the City of Sunnyvale officers Meyer, Serrano, Ashe and Giguire assisted each other and acted in concert in removing the child without a warrant, court order or other legal cause. (PC 46)

6. The joint investigation of the Sunnyvale Police Officers, (each of them) along with Albin and DFCS failed to attain any competent information to support a non-accidental head injury suffered while in the parents care. (PC 47)

7. The officer manipulated and fabricated their interrogations and investigation. (PC 48)

8. After conferring with Albin the police undertook to attain fabricated information by creating and pushing a false narrative that Manda was incapable of caring for her child due to her own medical condition and inability to cope with the demeanor of the child due to symptoms of post-partum mental issues. (PC 49)

9. Law enforcement along with Albin told the parents they were liars and were responsible for inflicting the injuries. (PC 50)

10. Despite the fact all reasonable information pointed to the conclusion the parents did not inflict harm to their child, and the further fact that the child was under the care of the hospital personnel with a police presence, the defendants did not obtain a court order or warrant before removal of the child. (PC 51-52)

11. Not only was the child in this case not in imminent risk of serious bodily injury, but there is no justification for not having attempted to attain a warrant or court order in light of the fact the child's condition was such that it was well known he would remain in the hospital, under the care of hospital staff and the watchful eye of law enforcement in the meantime. (PC 53)

12. Albin and the Sunnyvale Police officer defendants discussed their plan to remove the child despite knowledge there was no competent evidence to support a showing the child was in imminent danger suffering severe bodily injury at the hands of the parents in the time it would take to get a warrant or court order. (PC 54)

Later in the Complaint plaintiffs have also pled:

13. Due to the fact the parents could not explain their child's medical condition in a manner satisfactory to the defendants, the defendants due to their predisposition against parents under those circumstances undertook to fabricate evidence, provide false information to the court and assist their "partners" in the system due to having a similar mindset that the ends justifies the means. (PC 69)

14. The Sunnyvale Police Officers in meeting, planning and carrying out a bogus investigation to create a false narrative as opposed to attain objective findings, manipulated information to support the false narrative with the ultimate objective being the separation of the child from the parents. (PC 71)

15. The specific acts included making false police reports, providing false information to DFCS and providing false testimony. (PC 72)[1]

Summarized the facts are as follows:

The police came to the hospital to investigate a child with a serious medical condition. The police separated the parents from their child. The police conferred with Albin about the medical history. Together, Albin and the police decided to create and pursue a false narrative that the child had suffered a traumatic brain injury at the hands of the mother due to acting out under the stress of post-partum depression in order to create a mechanism of injury that did not exist as to person or manner. The police were present throughout, along with hospital personnel and therefore, there were no facts to support that the child was in imminent danger of serious physical injury at the hands of the parents. The police along with Albin removed the child from the care of his parents and interfered with their familial association without a warrant or court order despite the fact that they clearly could have attained a warrant in the time needed to avert any risk. Since no risk existed while the child remained in the hospital, particularly under the watchful eye of hospital staff and police.

The complaint gives adequate notice to the police of what the allegations are against them. They all worked together; they all agreed and engaged in the acts of creating this false narrative in order to fabricate a mechanism for a non-accidental injury at the hands of the parents. They accomplished through their purposeful investigation that was directed at supporting the false narrative and that was accomplished by providing false information in their reports, to DFCS and in testimony.

If the only allegations against the police were they arrived at the hospital and took the child without a warrant or court order under the circumstances that the child was being cared for by hospital personnel, while the parents were under the watchful eye of the hospital personnel and the police, these allegations would support a violation of the child's and parents constitutional rights. The law is clear police cannot remove a child from the custody and care of its parents without a warrant or court order unless the child is in imminent risk of serious bodily injury; and imminent means in the time it would take to get a warrant. *Rogers v. County of San*

---

[1] The moment-to-moment conduct of the officers was not broken down for the purpose of the complaint due to the fact the officer each worked together throughout this conduct. If more specificity is required by the Court the plaintiffs can provide greater moment-to-moment detail, however do not concede it is necessary in order for the defendants to be on notice of the claims against them.

*Joaquin*, (9th Cir. 2007) 487 F3d 1288, 1294; *Wallis v. Spencer* (9th Cir. 2000) 202 F3d 1126, 1138, fn. 8 (requires government officials obtain prior judicial authorization before intruding on a parent's custody of their children unless they possess information at the time of the seizure that establishes reasonable cause to believe the child is in imminent danger of serious bodily injury); *Mabe v. San Bernadino County*, 237 F3d 1101, 1106-1107. The fourth amendment protects a child from such intrusion. *Rogers* supra at 1294. The fourteenth amendment protects the parents from such an intrusion. *Rogers* supra at1294.

In the 2012 California State Appellate Court case of *Arce v. Children's Hospital Los Angeles*, 211 CA4th 1455 the court specifically found under facts similar to this case:

> "Even if "reasonable cause" existed to believe that the parents had in fact caused the injuries to A.L., allegations in the complaint suggest that plaintiffs might be able to prove facts demonstrating that it was unreasonable to believe that either A.L. or N.L. was "likely to experience serious bodily harm in the time that would be required to obtain a warrant." (See Rogers, supra 487 F3d at p. 1294) The complaint alleges that, at the time A.L. was detained from his parents, he was still in the hospital and remained "under the eye of [C]ounty social workers." There is no information in the complaint indicating that the parents had threatened or otherwise intended to remove A.L. from the hospital. Accordingly, it is not beyond doubt that plaintiffs may be able to prove facts demonstrating that (1) while in the hospital, the parents did not present any risk to A.L. because they were being monitored by medical personnel and social workers and (2) the County social workers could have obtained a warrant before the child was discharged from the medical facilities."

The child was removed without a warrant or court order by the police. There was no evidence to suggest the parents were interfering with medical treatment or threatening to abscond with the child. Certainly no such facts are contained in the complaint, nor will any evidence ever be presented to suggest such facts. The reality is in this case whether or not the facts present circumstances to support a finding of imminent risk of serious bodily injury to the child would have occurred in the time needed to attain a warrant is a question of fact that will have to be determined by a jury. "Whether reasonable cause to believe exigent circumstances existed in a given situation, "and the related questions, are all questions of fact to be determined by a jury." *Mabe v. San Bernadino* supra at 1108; citing *Wallis v. Spencer*, 202 F3d 1126, 1138 (9th Cir. 2000); *McKenzie v. Lamb*, F2d 1005, 1008 (9th Cir. 1984). The question before this court now is whether the plaintiffs have pled facts which if proven as true would support a constitutional violation. "To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2) a short and plain statement of the claim." *Porter v. Jones*,

319 F3d 483, 494 (9th Cir. 2003); The "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007) The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009). Removal without a warrant or court order has been alleged. Lack of exigency has been alleged. Under the current pleading the Court would have to find that the child was in the hospital and taken from his parents despite no threat of taking him away or causing him harm all while under the watchful eye of the hospital staff and police. This is a constitutional violation as to the child under the 4th amendment and as to the parents under the 14th amendment.

**C. The Defendants' Misconception that a Different Legal Standard Applies to the 14th Amendment Due Process Claim Undermines their Assessment of the Second Cause of Action**

The Defendants have sought to convince the Court that in order for the parents to prevail on a 14th amendment claim and thereby initially meet the minimal threshold under FRCP 12(b)(6) the legal standard under which the parents claims must be assessed by a standard different than the child's. Namely the defendants are seeking to have the Court assess the parents' claim based solely on the standard of establishing subjective intent to harm and a "shocks the conscious" standard which applies under a substantive due process analysis. The defendants principally rely on *Alberici v. County of L.A.,* 2013 U.S. Dist. LEXIS 146362 a tortured procedural case/opinion that decides in favor of a warrantless removal due to exigency based principally on *Wallis* supra; *Mabe* supra and *Rogers* supra; *Alberici* supra at 59 and never actually applies a "shocks the conscience standard" or "subjective intent analysis" to any of the facts of removal. However later in the opinion possibly applies a "shocks the conscience" or "deliberate indifference" standard to claims regarding the manner in which the social workers investigated or handled the case. Supra at 65-67. In stating the application of the "shock the conscience standard" to 14th amendment claims the cases relied on are excessive force claims, *County of Sacramento v. Lewis*, 523 US 833, 848; (high speed pursuit may violate substantive due process rights) *Wilkinson v. Torres*, 610 F3d 546, 555 (9th Cir. 2010) ("In sum, Plaintiffs have not established a substantive due process claim" Id at 555; (son shot and killed by police); *Porter v. Osborn*, 546 F3d 1131, 1137 (9th Cir. 2008) (acting with purpose to harm son, "that was unrelated to legitimate law enforcement objectives")

The Court in *Alberici* stated the "shocks the conscience standard" but was also assessing conduct separate and apart from the action of removal, for which the subjective intent may be at

issue. However due to the convoluted nature of the opinion it is unclear where, how or if the Court actually conducted an analysis against that standard, but certainly did not as to the removal count. See *Akey v. Placer Cty.,* 2018 U.S. Dist. LEXIS 137519 wherein the Court clearly differentiated between the substantive and procedural due process claims. The latter directed at whether or not legal process was invoked in order to effectuate removal. "As explained below, there are triable issues based on the procedural due process claims, but the court grants summary judgment for Sutton and Myers on the substantive due process claims." Id at 13.

> "The Fourteenth Amendment protects parents' and their children's "well-elaborated constitutional right to live together without governmental interference." Wallis v. Spencer, 202 F3d 1126, 1136 (9th Cir 2000) (collecting cases); see also Troxel v. Granville, 530 US 57, 65; (2000) This "essential liberty interest . . . guarantee[s] that parents and children will not be separated by the state without due process of law except in an emergency." Wallis, 202 F3d at 1136-1137 (9th Cir. 2000) (citations omitted); Mabe v. San Bernadino Cty, 237 F3d 1101, 1107 (9th Cir. 2001). The court evaluates procedural due process claims through a two-step inquiry. The court asks (1) whether defendants deprived plaintiffs of a constitutionally protected liberty or property interest; and if so, (2) whether that deprivation occurred without due process of law. Zinermon v. Burch, 494 US 113, 125." Id at 13.

In this case the plaintiffs have alleged additional facts not required to prevail against the 12(b)(6) standard as to a 42 USC section 1983 claim based on a 4th or 14th amendment violation for wrongful removal of a child. Namely that the officers after discussing the child's condition with Albin were faced with a situation where there was no mechanism of injury and no perpetrator. In order to establish a perpetrator and mechanism of injury they engaged in a course of conduct to fabricate and manipulate the facts of the investigation, write false police reports, provide false information to DFCS for the purpose of the DFCS petition and ultimately testify falsely regarding the investigation in Court. The latter allegations which would separately support a substantive due process claim under *Costanich v. Dept. of Soc. and Health Services* 627 F3d 1101,1113-1114. (note case was initial published precedent so the court granted qualified immunity however the case is from 2010 which significantly pre-dates this case) wherein court found:

> We therefore conclude that Costanich had a Fourteenth Amendment due process right to be free from deliberately fabricated evidence in a civil child abuse proceeding, and that, because genuine issues of material fact exist as to whether Duron deliberately fabricated evidence, which led to the termination proceedings and license revocation, the district court erroneously concluded that "Plaintiff has

not provided evidence showing that Defendants deliberately made false statements and fabricated evidence to make a false finding of abuse."

See also *O'Con v. Katavich*, 2013 US Dist. Lexis 168387 at pg. 25 (a false police report can lead to a substantive due process claim where the action leads to a deprivation of life, liberty or property); also *Beltran v. Santa Clara County*, 514 F3d 906, 908. However, clearly the question of removal without legal process or exigency is a question of procedural due process. *McLaughlin v. County of El Dorado*, 2012 US Dist. Lexis 157186 at pg. 17-20. In order to survive a 12(b)(6) motion the plaintiff need only satisfy the pleading requirements under a procedural due process claim wherein the Court simply determines if there are facts pled that if proved could establish 1) defendants deprived plaintiffs of a constitutionally protected interest and if so 2) whether the deprivation occurred without due process of law. *Zinermon v. Burch*, 494 US 113, 125-126. Here the interference with the familial rights is the protected interest. The process required is warrant or court order. The exception is imminent risk of serious bodily injury. The exception did not exist so the process is required before the interest taken. This did not occur in this case.

**D. Each of the Officers Can Be Found Individually Liable for Integral Participation in the Constitutional Violations**

In this case each of the officer was involved in the discussions, planning, investigation and fabrication of information in order to create a false narrative whereas a mechanism of injury and perpetrator could be fingered for the child's condition. Likewise as well each participated in the decision to remove the child without a warrant, court order or exigency. In order to hold each officer liable the plaintiff must prove they participated in the constitutional violations under a theory of "integral participant" *Boyd v. Benton County* 374 F3d 773, 780;

> "Defendants improperly construe Chuman as precluding liability under the circumstances of this case. Specifically, "integral participation" does not require that each officer's actions themselves rise to the level of a constitutional violation. For example, in *James ex. Rel. James v. Sadler*, 909 F2d 934 (5th Cir. 1990) cited with approval by *Chuman*, the court held that officers who provided armed backup during an unconstitutional search were "integral" to that search, and were there-fore participants rather than mere bystanders. Id at 837.

See also *Anderson-Francois v. County of Sonoma*, 2009 US Dist. Lexis 44176 at pg. 21

> Finally, defendant Newman contends that he cannot be held liable for Claim One (the procedural due process claim for warrantless removal) because he did not

personally participate in the removal of the two children. It is uncontested that Newman did not accompany Detective Conners to plaintiff's house and physically remove the children. Nevertheless, this order declines to hold, as a matter of law, that a county employee can be liable for a warrantless child removal only if he or she physically participated in the removal. Newman conducted the investigation into the abuse allegations. He contacted the police to initiate the forensic interviews. He provided input and recommendations to Detective Conners in support of emergency removal. The decision to remove the children was based in large part on his investigation and input -- at least, the current record viewed in the light most favorable to plaintiff could so indicate. Plaintiff has established a triable of fact regarding whether Newman "integrally participated" in the alleged violation. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir 2004); See also *McLaughlin* supra at 21-22 for the same proposition.

The reliance on cases such as *Jones v. Williams*, 297 F3d 930, 934 (9th Cir. 2002) related to individual liability are misplaced. Jones is a case where the proof of individual involvement was measured by the evidence proven up at a jury trial. At this stage of the proceeding the court is only determining whether the plaintiffs have pled a theory that would hold the officer's each personally liable. Here the plaintiffs have pled each of the officers integrally participated in the separation of the parents from their child, a police presence at the hospital, a fabricated and manipulated investigation and creating a false narrative carried out in police reports, DFCS reports and testimony; and most importantly the decision to remove the child from the custody and care of his parents without a warrant, court order or imminent risk of serious bodily injury.

Likewise defendants' reliance on *Mueller v. Auker*, 700 F3d 1180 is misplaced. In Mueller the imminent risk had to do with the parent interfering with what the doctors stated was critical emergent care. The court held it was not unreasonable for the police officers to rely on the doctor's opinion getting the child particular treatment was the emergency. *Mueller* is clearly factually distinguishable from the instant case in light of the fact there are no, nor can their be any allegations the parents did anything to interfere with medical treatment, in fact the allegations are leading up to the date in question the parents were seeking out medical treatment for the child (PC 20-25) and that the child was undergoing treatment at the hospital, was in critical condition and the parents were under the supervision of both hospital personnel and the police presence; and never threatened or did anything to suggest they were going to take the child from the hospital. The question here is whether removal of the child was an emergency under the circumstances. To the extent the officers played a role in the decision to remove without a warrant or court order they are individually and jointly liable. There are no allegations

in the complaint that any officer was a mere bystander, they were each integrally involved with the constitutional violations.

**E. The Third Cause of Action for Conspiracy Under 42 U.S.C § 1983 was Properly Plead and Constitutes a Viable Cause of Action**

Title 42 U.S.C. § 1983 provides in relevant part that: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution. ..shall be liable to the party injured...."

In *Hampton v. Hanrahan*, the court defined a civil rights conspiracy as follows:

A civil conspiracy is a "combination of two or more persons acting in concert to commit an individual act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between parties "to inflict a wrong against or injury upon another," and "an overt act that results in damage." In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "[c]ircumstantial evidence may provide adequate proof of conspiracy."…Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist. Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives…

A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or identity of all participants therein."…An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know of all the details of the plan designed to achieve the objective or possess the same motives for designing the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] known to each *person who is to be held responsible for its consequences*." *Hampton v. Hanrahan*, 600 F.2d 600, 620-24 (7th Cir. 1979), cert. granted in part, judgment rev'd in part on other grounds, 446 U.S. 752 (1980) (emphasis added).

As such, a conspiracy will subject to liability *all* of the police officers and other persons who planned or acted in concert to deprive the plaintiffs of their civil rights. *Id*; *see also Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997). The defendants rely on Harris for another

proposition. Principally the defendants rely on *Harris* to suggest the Ninth Circuit requires a heightened pleading standard for all cases alleging a conspiracy to violate civil rights. That however is not the holding in *Harris*. In *Harris* the Court specifically held a heightened pleading standard must be met in cases in which the *subjective intent* of the defendant is an element of the claim. Id at 1195 (note *Harris* is a police shooting case). As previously argued where as here a constitutional violation for a procedural due process claim is made the subjective intent of the defendant is not at issue for the purposes of meeting the elements of a viable claim for a violation of a constitutional right. Notwithstanding the lack of requirement for heightened pleading there does remain a requirement to articulate in some clear way the nature of the conspiracy. In this case it has been alleged when the police arrived at the hospital they met with Albin. From that meeting it was determined that the parties needed to establish a mechanism of injury and a perpetrator, neither of which existed. By doing so they would then be in a position to remove the child from the care of the parents and initiate dependency proceedings if not criminal proceedings. In order to do so the officer engaged in a bogus investigation wherein they created a false narrative by manipulation and fabrication, which narrative was carried out through false police reports and false information in DFCS reports, and ultimately false testimony. The false narrative created by the officers in conjunction with Albin was that the mother was suffering from post-partum depression and due to the stress she was suffering harmed the child in a manner characterized as Shaken Baby Syndrome. Due to creation of that false narrative the officers then, along with Albin removed the child without a warrant, court order and despite obvious lack of imminent risk of serious bodily injury for the reasons stated above.

**F. The Law is Clearly Established and a Violation of the Law Does Not Support Application of Qualified Immunity**

It is clearly established a child may not be removed from the care of his parents without a warrant, court order or imminent risk of serious bodily injury. *Rogers v. San Joaquin County* supra; *Wallis v. Spencer* supra; *Mabe v. San Bernadino County* supra, amongst many, many others. Even under the most particularized standard as predictably suggested by defendants under cases such as *White v. Pauley*, 137 S. Ct. 548, 550 (2017) the defendant's argument fails. *White* involved an officer arriving after the fact and making assumptions that his fellow officers already followed proper procedures related to a police shooting. In this case the constitutionality question lies with whether to effectuate the removal of the child without a warrant. That decision was reached by all officers acting in concert along with Albin and was predicated on the false

narrative earlier described to create a mechanism of injury and perpetrator. Moreover whether or not their decision to belive that the mother was in fact the perpetrator and taking action against the parents was thereby reasonable is not even the question here. The question here is whether or not there existed imminent risk of serious bodily injury under the circumstances at the time they chose to act without a warrant or court order. Clearly the officer were on notice of the fact a constitutional violation would occur if you take a child without a warrant, court order or imminent risk of serious bodily injury. That law is as stated above abundantly clear and has been for over decades preceding this case.

There are no facts alleged, nor can there be, that the parents presented any risk to this child while the child was seriously ill, under the care and supervision of the hospital personnel in a hospital with a police presence, undergoing an investigation engaged in by those same officers, in the time it would have taken to attain a warrant or court order. Qualified immunity does not apply in this case and nonetheless should not be considered by this court under the circumstances of this case until a factual record can be established through discovery and the matter challenged at summary judgment if the defendants feel they still have a legitimate basis for claiming such immunity. While qualified immunity is properly considered as part of a 12(b)(6) motion, see for example *Williams v. Grant County*, 2016 US Dist. Lexis 123078 at pg. 9 in doing so the Court must consider the allegations as true and as such the motion will necessarily fail here as we are dealing in this case with a clearly established law and a fact pattern that squarely fits the current fact pattern, has previously been held to support an inference of non-imminent risk in *Arce v. Children's Hospital Los Angeles* supra at 1477. In addition to the legal precedent and the simplicity of the underlying legal principal… need for a warrant or court order absent imminent risk … the fact pattern here, including amongst others, the child's condition, the parents seeking out medical care, the parents being cooperative, the supervision and oversight by hospital personnel and a police presence throughout weigh heavily against any reasonable interpretation that this case presents circumstances that are "far from an obvious case" *Kisela v. Hughes*, 138 Sup. Ct. 1148. *Kisela* like many other cases where the courts have found qualified immunity is an excessive force case. The officer acted in the circumstances where he had to decide whether or to act immediately to quell an imminent threat of harm to another individual (a woman described as acting erratically with a knife ignores the officers' command to stop and continued to approach another woman and was in striking distance of the woman at the time the officer acted, the situation unfolded very quickly and the officer shot the knife bearing woman below the

waist to protect the other woman).  The officers in this case were not under pressure in any way similar to that of the officer in *Kisela,* nor were they or any third part in imminent danger. The child was under the care of physicians, nurses and other hospital staff. The child's condition was such that it required close medical attention.  The parents were cooperative and under the supervision and watchful eye of the medical providers.  Moreover there was a significant police presence.  In light of the fact there was no indication of an imminent threat, not only did the officers here have adequate time to deliberate, but did in fact deliberate and decided to conduct a bogus investigation before later deciding to remove the child without a warrant or court order. The cases cited by defendants simply cannot be reconciled with the facts in this case as it was clear there was time to submit the matter for judicial review before any risk of infliction of serious bodily injury upon the child by the parents could occur.  Similarly in *Reese v. County of Sacramento,* 88 F3d 1030 (9th Cir. 2018) another excessive force case relied on by defendants, the officers responded to a call of an individual who had shot a gun, was possibly crazy, was under the influence of drugs and now had a knife.  They went to the subject apartment. It was dark, they decided to knock on the door. One deputy stood to the side of the door entry and another stood about 15 feet away from the doorway. After knocking the door flew open and the deputies saw a figure along with an extended arm and a large knife flailed approximately one foot away from the deputy's neck.  The officer standing by shot to protect the deputy who had knocked on the door. Id at 1035.  The nearest officer then advanced into the house expecting to see the individual incapacitated but he was not, the officer could not see his hand and immediately shot. The officer described the matter as occurring in a millisecond. Id at 1036. Again the decision of the Court was affected by the lack of time to react and the inherent danger to the safety of the officer.

> "Critically, Reese points to no case that considered the relevant question whether Deputy Rose, having come within striking distance of a suspect who had held a knife a fraction of a second before, was objectively unreasonable in using deadly force before determining whether the suspect still possessed the knife." Id at 1039

A serious flaw in defendants' argument is the focus on whether or not the officers should be second guessing medical providers. To resolve the issue at hand it does not matter whether they did or did not.  The question here is whether or not the parents presented a current and imminent risk of inflicting serious bodily injury to the child such that the officer could not have obtained a warrant.  Defendants re-citing to *Alberici* supra is of no import as the issue there was the inability to establish the plaintiff was related to the children and the separation was

temporary, not whether or not there was imminent risk of serious bodily injury justifying complete removal. Id at 60. Moreover the comment relied on by defendants here was only made in dicta in light of the fact the Court held there was no constitutional violation in the first place. Id at 61-62.  This is simply not a case about attributing a medical professional's error in judgment to the officers as the defendants have characterized.  The circumstances in this case are nothing like *Mueller* supra relied on by defendants wherein the doctor specifically told the officers he needed them to remove the child because the parent was preventing the child from receiving urgent medical treatment. No such facts nor similar facts are found in this case.

### G. The *Monell* Claim Has Been Adequately Pled

In this case the plaintiffs have alleged the officers arrived to the hospital in response to concerns over a child's medical condition.  The police met with defendant Albin and were faced with the issue that the child was suffering a medical condition for which there was no mechanism of injury nor perpetrator. The police officers then decided along with Albin to create a false narrative of non-accidental child abuse wherein the mother would be accused of inflicting the injuries to the child based on her inability to cope with the stressor of child care due to post-partum depression. The officers then engaged in a bogus investigation to carry forth the false narrative, including manipulation of information, fabrication of information in police reports, providing false information to DFCS (Department of Family and Child Services .. ie.. Child Protection Services) and ultimately providing false testimony.

Most importantly the officers with full knowledge of the current circumstances of the child's condition, the parents cooperation, the fact the parents were seeking medical assistance not interfering with it, the fact the child and the parents were under the watchful eye of the medical providers and the fact that there was a significant police presence throughout, got together and made decision to remove the child without first seeking judicial review by way of an application for a warrant or court order.

In pleading the *Monell* claim reasonable inferences may be drawn from the underlying facts that the Department/Municipality failed to train (*City of Canton v. Harris*, 289 US 3788, 388-389) or adequately supervise the officers. In *Dawkins v. County of Honolulu*, 761 F. Supp. 2d 1080, 1087 the Court in applying the *Ashcroft* standard found the inferences to be drawn from the underlying allegations of excessive force were sufficient to meet the pleading requirements for the *Monell* claim.

The Complaint contains factual allegations on which it can plausibly be inferred that the City failed to adequately supervise and train its police officers, resulting in the unlawful arrest of Plaintiff. Plaintiff alleges that Officer Hamrick shot Plaintiff with a taser, punched and kicked him, and proceeded to arrest him, without any provocation from Plaintiff or probable cause to believe he had committed a crime. Plaintiff also alleges that Defendant Hamrick recognized Plaintiff and knew he had mental problems. It is plausible to infer from these allegations, accepted as true for the purposes of this Motion, that the City failed to adequately train and/or supervise the police officers who arrested Plaintiff. Defendant City's Motion to Dismiss Plaintiff's Fourth Amendment arrest without probable cause claim based on the City's failure to train or supervise the police officers is DENIED.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balisteri v. Pacifica Police Dept.*, 901 F2d 696, 699 (9th Cir. 1990).

Moreover the plaintiffs have alleged the City of Sunnyvale Police department maintains at a minimum the following policies, practices or customs: (PC 96)

-Removal of children from the care and custody of their family without a warrant or court order;

-Removal of children from the care and custody of their family without evidence of imminent risk of great bodily injury;

Elsewhere in the complaint the plaintiffs have made a number of allegations, incorporated in the *Monell* claim identifying the plaintiffs' claims as to the deficiency of the policy or custom, how it has caused the plaintiffs harm and how it amounts to deliberate indifference.

Amongst others in this case the plaintiffs have pled the child was removed from the parents by the Sunnyvale Police Department Officers (4 of them acting together) without making any effort to seek judicial review of the decision, despite clear notice that a warrant or court order is required in order to remove a child from his family. Additionally, that the possible exception to the need for a warrant or court order would be whether there was imminent risk of the parents inflicting great bodily injury on the child in the time they would have needed to get a warrant or court order. The 4 officers here employed by the City of Sunnyvale, together made a

decision to remove the child despite it was obvious there was no imminent risk the parents would inflict great bodily injury on the child under the circumstances of this case.

Additionally the plaintiffs have pled the officers willingly and knowingly sought to assist Albin in creating a false narrative pointing the finger at the mother in order to create a mechanism of injury and identify a perpetrator, two important factors not present without their assistance. A reasonable inference to be drawn from their joint conduct, their numbers, 4 of them all on the same page, and their decision to remove without a court order and despite no facts to support imminent risk of great bodily injury, is that in fact there was a policy or custom at the Department they were following, deliberately indifferent to plaintiffs constitutional rights and by following the policy or custom harmed plaintiffs. *Harvey v. City of Lake Tahoe*, 2012 US Dist. Lexis 51876.

The defendants challenge to the pleading is based on sole consideration of the recitation of policies/customs/practices outlined in paragraph 96 of the plaintiffs' complaint, without any consideration of the other facts pled throughout pleading in the context of those policies/customs/practices clearly alleged through incorporation of the earlier allegations in paragraph 95 as opposed to reciting again each and every individual allegation.

The question for the court here is whether the plaintiffs have provided a complaint that contains sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 679 citing *Wilkie v. Robbins*, 551 US 537, 550.

Narrowly stated the question is whether with the plaintiffs have pled facts taken as true, it is plausible that 1) no warrant or court order was obtained prior to the decision to remove; and further was it plausible that 2) in light of the child suffering from a serious medical condition and being supervised along with the parents by hospital staff and medical providers, coupled with a significant police presence (at least 4 officers); that in fact the parents who were being cooperative and were seeking medical attention and not interfering with the medical procedures did in fact not present an imminent risk of serious bodily injury to the child. It is certainly plausible. Is it plausible a warrant could have been obtained before any imminent risk arose, certainly. Is it further plausible that in light of the fact that the lack of imminent risk was so obvious, coupled with the further conduct of the officers that they were either not adequately trained, not adequately supervised or acting consistent with a policy custom or practice. It is plausible there was a constitutional violation, the defendants were responsible and the city failed to train or supervise their officers, and /or there was a policy custom or practice being followed.

### III. CONCLUSION

Based on the foregoing it is respectfully requested the Court deny the motion to dismiss on all counts. Moreover that in the event the Court were to disagree with the plaintiffs assertions regarding the adequacy of the pleadings herein, Plaintiffs hereby request the Court grant the plaintiffs leave of Court to amend the complaint to address any concern the Court may have regarding specific factual allegations or other deficiencies, if any.

Dated: July 19, 2019                  _/s/Peter Johnson_____

Peter Johnson
Attorney at Law