Peter Johnson, SBN No. 165523
Law Office of Johnson & Johnson
2125 Oak Grove Rd. Ste. 315
Walnut Creek, CA 94598
(t) 925.952.8900
(f) 925.952.8902
jjlaw2@earthlink.net

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE COURTHOUSE**

| | |
|---|---|
| AVANTHI MANDA, SURENDER YERVA, and AVINASH YERVA as GAL for minor A.Y., <br><br> Plaintiffs, <br><br> v. <br><br> CATHERINE ALBIN, CITY OF SUNNYVALE, MATTHEW MEYER, JESSE ASHE, ANTHONY SERRANO, GREGORY GIGUIERE, and DOES 1 through 10 inclusive; <br><br> Defendants. | Case No. 5:19-CV-01947-EJD <br><br> PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FRCP 12(b)(6) AS TO CATHERINE ALBIN <br><br> Date: 11/7/19 <br> Time: 9:00am <br> Location: Courtroom 4, 5th Floor <br><br> Hon. Edward J. Davila |

# TABLE OF CONTENTS

I. SUMMARY OF FACTS.................................................................................6

II. ARGUMENT ..................................................................…………………7

    A. PLAINTIFFS' COMPLAINT IN THIS CASE SHOULD NOT SUBJECT TO DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

    B. DEFENDANT CATHERINE ALBIN, M.D. IS A STATE ACTOR

    C. A PRIVATE ACTOR CAN BE LIABLE WHEN ACTING WITH A STATE ACTOR

    D. PLAINTIFF HAS PLED SUFFCENT FACTS TO SHOW ALBIN CONSPIRED WITH THE POLICE TO REMOVE A.Y. FROM HIS PARENTS CUSTODY

    E. THE CONSTITUTIONAL VIOLATION ALLEGED HEREIN IS NOT THE MAKING OF A MANDATORY REPORT

    F. ALBIN IS NOT AFFORDED ABSOLUTE WITNESS IMMUNITY WHEREAS IN THIS CASE SHE FABRICATED INFORMATION IN THE DFCS PETITION AND IN THE MEDICAL RECORDS

    G. THE STATE IMMUNITY STATUTE FOR A MANDATORY REPORTER DOES NOT APPLY IN FEDERAL CIVIL RIGHTS ACTIONS

    H. THE DEFENDANT IS NOT AFFORDED IMMUNITY FOR STATE LAW CLAIMS UNDER THE FACTS OF THIS CASE

    I. ALBIN MAY BE HELD LIABLE FOR PROVIDING DFCS FALSE STATEMENTS FOR THE JUVENILE COURT PETITION

III. CONCLUSION………………………………………………………………....25

# TABLE OF AUTHORITIES

## CASES

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ......................................................................................................... 7

*Ashcroft v. Iqbal*
   129 S. Ct. 1937 (2009) ...................................................................................................... 7

*NL Indus., Inc. v. Kaplan*
   792 F.2d 896 (9th Cir.1986) .............................................................................................. 7

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................................................... 7

*McQuillion v. Schwarzenegger*
   369 F.3d 1091 (9th Cir. 2004) ........................................................................................... 8

*Dennis v. Sparks*
   449 US 24 (1980) ........................................................................................................ 13,14

*Howerton v. Gabica*
    708 F2d 380 (9th Cir. 1983) ............................................................................................ 13

*Fonda v. Gray*
   707 F2d 435, 437 (9th Cir. 1983) ..................................................................................... 13

*Brentwood v. Acad. v. Tennessee Secondary Sch. Ath. Assn.*
   531 US 288 (2001) ............................................................................................................ 13

*Lee v. Katz*
   276 F3d 550 (9th Cir 2002) .............................................................................................. 13

*U.S. v. Price*
    383 U.S. 787 (1966) ......................................................................................................... 14

*Adickes v. S.H. Kress & Co.*
   398 US 144 (1970) ............................................................................................................ 14

*Lugar v. Edmondson Oil Co.*
   457 US 922 (1982) ............................................................................................................ 14

*Sutton v. Providence St. Joseph Medical Center*
   192 F3d 826 (1999) ........................................................................................................... 14

*Briley v. California*
    564 F.2d 849 (1977) ............................................................................................... 14

*Warren v. Fox Family Worldwide, Inc*.
    328 F3d 1136 (2001) ............................................................................................... 15

*Hampton v. Hanrahan*
    600 F.2d 600 (7th Cir. 1979) ............................................................................... 16

*Harris v. Roderick*
    126 F.3d 1189 (9th Cir. 1997*)* ............................................................................ 16

*Arce v. Children's Hospital Los Angeles*
    211 Cal.App.4th (2012) ......................................................................................... 16

*Lockhead v. Weinstein*
    24 Fed. Appx. 805 (9th Cir. 2001*)* ..................................................................... 17

*Benavidez v. Gunnel*
    722 F2d 615 (1983) ............................................................................................... 18

*Radcliffe v. Rainbow Const. Co.*
    254 F.3d 772 (9th Cir. 2001) ........................................................................... *18*

*Sawyer v. Legacy Emanuel Hospital and Health Center*
    US Dist. Lexis 75097 (2019) ............................................................................... 19

*Lisker v. City of Los Angeles*
    780 F.3d 1237 (2015) ...................................................................................... 19, 24

*Paine v. City of Lompoc*
    265 F.3d 975 (2001) ............................................................................................... 20

*Briscoe v. Lahue*
    460 US 325 (1983) ................................................................................................. 20

*Franklin v. Terr*
    201 F3d 1098 (9th Cir. 2000) ............................................................................... 20

*Buckhelt v. Dennis*
    713 F. Supp. 2d 910 (2010) .................................................................................. 20

*Wallis v. Spencer*
    202 F3d 1126 (9th Cir. 1999*)* ............................................................................ 20

*Martinez v. California*
    444 US 277 (1980) ................................................................................................. 20

*Good v. Dauphin County Social Serv.*
891 F2d 1087 (3d Cir. 1989) .................................................................20

*John Doe v. Regents of the Univ. of California*
2006 US Dist. Lexis 65035 (E.D. Cal Aug 29, 2006) ...........................21

*James W. v. Superior Court*
Cal.App.4[th] 246 (1993) ......................................................................21

*Jones v. County of Los Angeles*
802 F.3d 990 (2015) ...............................................................................22

*Beltran v. Santa Clara County*
514 F3d 906 (9th Cir. 2009) ...............................................................22

*Costanich v. Dept. of Soc. And Health Services*
627 F.3d 1101 (9th Cir. 2010) ...........................................................22

*O'Con v. Katavich*
US Dist. Lexis 168387 (2013) ...............................................................23

*Rubin v. Green*
4 Cal.4th 1187 (1993) ............................................................................23

*Silberg v. Anderson*
50 Cal.3d 205 (1990) .............................................................................23

*Kachig v. Boothe*
22 Cal.App.3d 626 (1971) .....................................................................24

*Pettitt v. Levy*
28 Cal.App.3d 484 (1972) .....................................................................24


STATUTES AND OTHER AUTHORITIES

United States Constitution
First Amendment..................................................................................19
Fourth Amendment..............................................................................19

42 United States Code
§ 1983...............................................................................................15,20

Federal Rules of Civil Procedure
12(b)(6)....................................................................................................7
15(a)(2)....................................................................................................8

PLAINTIFFS' OPPOSITION TO CATHERINE ALBIN'S MOTION TO DISMSS FRCP
12(b)(6) – Case No. 5:19-CV-01947-EJD          5

# I. SUMMARY OF FACTS

On April 7, 2017 the plaintiffs Yerva and Manda brought their young child A.Y. to Kaiser Hospital Sunnyvale due to the fact the child was suffering from a fever and not eating. The child was sent home, prescribed Tylenol and a urine analysis and culture was conducted. (Plaintiffs' Complaint, hereinafter PC 20). On April 8, 2017 plaintiffs brought their child back for a follow up and he was diagnosed with a urinary tract infection. (PC 21). On April 9, 2018 the parents brought their child back for further follow up and for the results of the culture. It was determined AY had an E. Coli infection. A misdiagnosis led to the wrong antibiotic being prescribed. (PC 22). As a result the child developed Sepsis and the infection spread to the brain dura leading to meningitis. (PC 23). On the morning of April 11, 2017 the child was suffering fever and possible seizing. The mother brought the child back to the hospital. (PC 24-25). The child was taken off the antibiotics by Defendant, Catherine Albin, MD, which further exacerbated the condition. (PC 26). Shortly after the child was diagnosed with E. Coli Meningitis. (PC 27). Later that morning the child was taken for an MRI. Albin did not inform the radiologist and the radiologist had no information the child was suffering from meningitis.  As such, the radiologist reported irregularities in the imaging, misdiagnosed as non-accidental brain trauma caused by so called "Shaken Baby Syndrome." (PC 28). Shortly thereafter the City of Sunnyvale police arrived due to concerns related to a report of suspected child abuse. The police arrived and began their investigation. Shortly after their arrival they met with Albin who advised them she was a "child abuse expert" for the County. Albin told the police the injuries were caused by violent shaking of the child. During the discussion with the police it was determined between Albin and the police that they needed to direct their investigation in such a way as to identify a perpetrator and mechanism of injury. During the investigation they continued to consult with each other and determined they would target the mother as the perpetrator and the mechanism, violent shaking that occurred due to the mother suffering from post-partum depression and a skin condition

that made it unbearable for her to care for her child. The story was a fabrication concocted to falsely blame the mother for the injuries to the child. The fabrication was the product of the joint investigation by Albin and the police, sometime *after* a report of suspected child abuse had been made. During the investigation Albin along with the police decided to remove the child from the care and custody of his parents. Albin and the police made a decision to remove the child from the custody and care of the parents, without a warrant or court order and despite the absence of any imminent risk of the parents inflicting serious bodily injury to the child.

## II.     ARGUMENT

### A.  PLAINTIFFS' COMPLAINT IN THIS CASE SHOULD NOT SUBJECT TO DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only when the complaint does not give a defendant fair notice of a legally cognizable claim and the basis on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement…" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Based on the specified factual allegations against the *City of Sunnyvale et al.* defendants, which support the alleged causes of action, the complaint here is not appropriate subject for dismissal pursuant to FRCP 12(b)(6).

In the alternative, if the court finds any legal or factual deficiencies in the pleading, the court should allow plaintiffs leave to amend to cure such defects. A complaint should not be dismissed without leave to amend unless amendment would be *futile*. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004). Furthermore, the court should "freely give leave" to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2).

## B. DEFENDANT CATHERINE ALBIN, M.D. IS A STATE ACTOR

The attorney for the *County of Santa Clara*, a public entity, who represents moving defendant Catherine Albin in this case, argues that despite the fact she is being represented in this matter by *County Counsel*, and acted in this matter from its inception through the jurisdictional trial as a representative, employee, agent of *Santa Clara County* (transparent from the fact they are representing her in this lawsuit) she is not a state actor.

In their motion, County Counsel only cites to paragraphs 16, 37, 39, and 46 of plaintiffs' complaint as providing support for the argument it has not been pled she is a state actor. In their complaint however, plaintiffs allege as follows:

- Catherine Albin, was at all times relevant herein, an agent for the County of Santa Clara and City of Sunnyvale, and is sued in her individual capacity and as a representative, employee or agent of the County of Santa Clara and City of Sunnyvale. Albin is a pediatrician and child abuse investigator for the County of Santa Clara and law enforcement in the County of Santa Clara. (PC 16).

- Albin not only permitted the false medical record to stand and permeate the opinions, conclusions and actions of all future medical providers, but during Saket's testimony interfered with the legal process while serving as the consultant for the County of Santa Clara during the juvenile court trial and caused Saket to change his testimony…." (PC 35).

- Albin, a resident child abuse expert for Santa Clara County initiated the accusation and ultimately inculpated and incriminated the parents, Manda and Yerva, during a joint investigation by Albin, Santa Clara County DFCS and the Sunnyvale Police Department as having purposely inflicted the harm to their child A.Y. by the mechanism of so called Shaken Baby Syndrome. (PC 36).

- Catherine Albin is the director of Northern California Pediatric ICU for Kaiser Medical Group. Albin is a general pediatrician with special training and fellowship in pediatric care medicine. She also has a PhD in infectious diseases and holds herself out as having special expertise in the area of physical child abuse. (PC 37).

- Albin "special expertise" in the area of physical child abuse was garnered in her role as the director of the Center for Child Protection for the County of Santa Clara. (PC 38).

- In addition to her employment with Kaiser Medical Group, for at least one year prior to her being involved with A.Y. and during the time of her being involved with A.Y. she continued to serve in the capacity she had for some 30 years as the Child Abuse Expert for the County of Santa Clara. In that capacity she provides abuse reports for Santa Clara County DFCS, consultation to social workers for Santa Clara County DFCS, consultation to local law enforcement and testimony for public entities in support of her claims just as she did in this case. (PC 39).

- Albin knew at the time she inculpated and incriminated Manda and Yerva for the injuries to A.Y. the police would act upon her recommendation and remove the child from the custody of the parents. (PC 41).

- Albin was further aware at the time of accusing the Parents DFCS would act on her recommendation and initiate dependency court action against the parents with the aim of permanently depriving this family of familial association. (PC 42).

- Albin was further aware that based on the nature of the accusation and her experience in pointing the finger at 100's of parents before the Court would most likely act upon her recommendation and make a finding against this family resulting in permanent deprivation. (PC 43).

- Not only was Albin aware that all these things would occur she played and active and integral role, in fact the principal instigator of ensuring progression of the false claim throughout the administrative and legal process. (PC 44).

- As the resident child abuse expert over the course of 30 plus years Albin had worked in conjunction with most, in not all law enforcement jurisdictions in Santa Clara County, and DFCS for the County of Santa Clara in conducting 100's if not thousands of joint investigations regarding child abuse including numerous incidents of falsely accusing parents of having engaged in child abuse, leading to removal of children from the custody of their parents, criminal action, and in many cases leading to permanent separation of children from their parents based on these false claims. (PC 45).

In summary, Plaintiffs alleged as follows:

1. The joint investigation of the Sunnyvale Police Officers, (each of them) along with Albin and DFCS failed to attain any competent information to support a non-accidental head injury suffered while in the parents care. (PC 47).

2. The investigators, Albin and the police manipulated and fabricated their interrogations, records and the investigation. (PC 48).

3. In conducting the investigation, after conferring with Albin the police and Albin undertook to attain fabricated information by creating and pushing a false narrative that Manda was incapable of caring for her child due to her own medical condition and inability to cope with the demeanor of the child due to symptoms of post-partum mental issues. (PC 49).

4. Law enforcement along with Albin told the parents they were liars and were responsible for inflicting the injuries. (PC 50).

5. Despite the fact all reasonable information pointed to the conclusion the parents did not inflict harm to their child, and the further fact that the child was under the care of the hospital personnel with a police presence, the defendants did not obtain a court order or warrant before removal of the child. (PC 51-52).

6. Not only was the child in this case not in imminent risk of serious bodily injury, but there is no justification for not having attempted to attain a warrant or court order in light of the fact the child's condition was such that it was well known he would remain in the hospital, under the care of hospital staff and the watchful eye of law enforcement in the meantime. (PC 53).

7. Albin and the Sunnyvale Police officer defendants discussed their plan to remove the child despite knowledge there was no competent evidence to support a showing the child was in imminent danger suffering severe bodily injury at the hands of the parents in the time it would take to get a warrant or court order. (PC 54).

Later in the Complaint plaintiffs have also pled:

8. Due to the fact the parents could not explain their child's medical condition in a manner satisfactory to the defendants, the defendants (those with the power to control the custody and control of children in Santa Clara County) due to their predisposition against parents under those circumstances undertook to fabricate evidence, provide false information to the court and assist their "partners" in the system due to having a similar mindset that the ends justifies the means. (PC 69).

9. The police and Albin agreed to conduct the investigation together, and did so. (PC 71).

Further, specifically:

-On April 11, 2017 and thereafter, defendant Catherine Albin acting in her capacity as a child abuse investigator for the County of Santa Clara and Sunnyvale Police Department did engage in activity to cover-up ….. (PC 76 and similarly at PC 86).

Summarized the facts are as follows:

The police came to the hospital to investigate a child with a serious medical condition. There are no facts pled that Albin was the person making the initial report to the police. The police conferred with Albin a well-known child abuse expert for the County and law enforcement in general regarding the history. After the report of suspected abuse was made the investigation of the claim ensued. The premise of the investigation was the parents were the perpetrators. The police and Albin worked together to conduct this investigation. This investigation was done in furtherance of Albin's role as a "child abuse expert" for the County of Santa Clara used by the County and law enforcement. Together, Albin and the police decided to create and pursue a false narrative that the child had suffered a traumatic brain injury at the hands of the mother due to acting out under the stress of post-partum depression in order to create a mechanism of injury that did not exist as to person or manner. This false narrative permeated the medical records for months to come, and despite knowledge that the radiologist was never informed of the E. Coli Meningitis, Albin never sought to correct the record

During the relevant time, the police were present along with hospital personnel and therefore, there were no facts to support that the child was in imminent danger of serious physical injury at the hands of the parents. The police along with Albin removed the child from the care of his parents and interfered with their familial association without a warrant or court order despite the fact that they clearly could have attained a warrant in the time needed to avert any risk. Since no risk existed while the child remained in the hospital, particularly under the watchful eye of hospital staff and police.

The complaint gives adequate notice to the defendants of what the allegations are against them. They all worked together; they all agreed and engaged in the acts of creating this false narrative

in order to fabricate a mechanism for a non-accidental injury at the hands of the parents. They accomplished through their purposeful investigation that was directed at supporting the false narrative and that was accomplished by providing false information in their reports, to DFCS and in testimony.

It has been clearly set forth in the plaintiffs' complaint that Catherine Albin was acting in her capacity as a so called "child abuse expert" for the County of Santa Clara and in that role an agent of the City of Sunnyvale while undertaking the investigation and ultimate removal of the child.

### C. A PRIVATE ACTOR CAN BE LIABLE WHEN ACTING WITH A STATE ACTOR

There can be no dispute that the Police and DFCS are state actors. While it is plaintiffs view Albin is a state actor and that this has been adequately pled, to act "under color" of state law does not require the defendant be an officer of the State. *Dennis v. Sparks*, 449 US 24, 27 (1980). Private parties act "under color" of state law where there is significant state involvement in the action. *Howerton v. Gabica*, 708 F2d 380, 382 (9th Cir. 1983). A private party is considered to have acted under color of state law when it acts in concert with state agents to deprive individuals of their constitutional rights. *Fonda v. Gray*, 707 F2d 435, 437 (9th Cir. 1983). In assessing whether state action exists courts have generally relied on four distinct, but no mutually exclusive, tests: 1) the governmental nexus test, 2) the joint action test, 3) the public function test, and 4) the state compulsion test. *Howerton* supra at 382, 383. It is sufficient if plaintiffs meet any one of the tests. *Brentwood v. Acad. v. Tennessee Secondary Sch. Ath. Assn.* 531 U.S. 288, 303 (2001); Lee v. Katz, 276 F.3d 550, 554 (9th Cir. 2002).

Moreover, whether a private party has acted "under color" of state law is a question of fact. *Howerton*, supra 708 F2d at 883. ("only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.") As such this question should not be decided through a motion to dismiss.

Under the facts pled in the plaintiffs' complaint the police and Albin worked together to carryout the "state action" (i.e. removal of the child) therefore the elements of the "joint action" test have been met. This is not just a mere police stand-by this is concerted action by and between Albin and the police, minimally, and with DFCS also playing a role, though likely entirely deferring to Albin to carry out their investigative function. "It is enough if he is a willful participant in joint activity with the State or its agents" *U.S. v. Price*, 383 U.S. 787, 794 (1966); *Dennis v. Sparks*, 449 US 24, 27-28. State action is also found when a private person engages in a conspiracy with a state employee. *Adickes v. S.H. Kress & Co.* 398 US 144, 152 (1970).

Under the "close-nexus" test it's really not a close one in this case. To the extent Albin is acting in her role as an investigatory (child abuse expert) for law enforcement and DFCS the behavior at issue is not actually private at all, and moreover the act of removal is clearly one that rises from authority from the State. Albin, acting out her role as the "child abuse expert" has both acted with and obtained significant aid from the state officials for which there cannot possible be any dispute, City of Sunnyvale Police and County of Santa Clara DFCS. *Lugar v. Edmondson Oil Co.*, 457 US 922, 937 (1982).

The line of cases cited by defendant for the point that "private hospitals, doctor's and nurses are generally not considered state actors" are not helpful to this Court. In *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826, 835 (1999) is a case where the plaintiff tried to hold the private employer (hospital) liable because they were seeking to attain the social security number of the employee/plaintiff. Plaintiff pursued a "compulsion" theory that relates in no way to the fact in this case. In *Briley v. California*, 564 F.2d 849, 855-856 (1977) the plaintiff had entered a plea for a suspended sentence in a criminal child molestation case. Part of the plea included chemical castration. Years later the individual sought to sue the hospital amongst others where the surgery had occurred based on a civil rights violation. The Court stated without much discussion the hospitals and

physician are not generally held liable. The court did find the medical examiner in the case was susceptible to a civil rights claim, due to being "clothed" with the authority of state law. The line of cases relied upon by the court in *Briley* offer no factual relationship that can assist the Court under the circumstances of this case where the claims involve investigation of child abuse by a so called "child abuse expert" along with a police department and DFCS and ultimately removal of a child from his parents. Defendant's citation to *Warren v. Fox Family Worldwide, Inc.* 328 F.3d 1136, 1139 (2001) a copyright / standing case also provides no assistance to the Court. In *Warren* the complaint made specific reference to documents that contradicted the allegations in the complaint. *Id.* at 1139. The Court reviewed the documents in deciding the motion. The documents disclosed the contractual relationship between the parties and allowed the Court to resolve the issue of standing. *Warren* is essentially a contract claim and does not begin to address the significance of the issues in this 1983 civil rights action involving removal of a sick child from the care and custody of his parents. County Counsel would have the Court relieve his client from civil rights liability based on a limited and incomplete reading of the provisions in the complaint and despite the transparency of the fact she was acting on behalf of the County leading to representation by County Counsel in this action. Catherine Albin, "child abuse expert" for the County of Santa Clara County for some 30 years undertook a false and fabricated investigation along with the police targeting the mother as having inflicted significant and near deadly force on her infant child and removed the child from his mothers custody and care without a warrant or court order despite no imminent risk of serious physical injury in the time it would have taken to get a warrant. The *Warren* case was a case where the pleadings and the extrinsic documents identified, relied upon and authenticated by those pleadings provided the court with the facts needed to resolve the standing question. It is simply inapplicable to the facts of this case.

### D. PLAINTIFF HAS PLED SUFFICENT FACTS TO SHOW ALBIN CONSPIRED WITH THE POLICE TO REMOVE A.Y. FROM HIS PARENTS' CUSTODY

Title 42 U.S.C. § 1983 provides in relevant part that: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable to the party injured...."

In *Hampton v. Hanrahan*, the court defined a civil rights conspiracy as follows:

A civil conspiracy is a "combination of two or more persons acting in concert to commit an individual act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between parties "to inflict a wrong against or injury upon another," and "an overt act that results in damage." In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "[c]ircumstantial evidence may provide adequate proof of conspiracy."…Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist. Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives…

A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or identity of all participants therein."…An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know of all the details of the plan designed to achieve the objective or possess the same motives for designing the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] known to each *person who is to be held responsible for its consequences*." *Hampton v. Hanrahan*, 600 F.2d 600, 620-24 (7th Cir. 1979), cert. granted in part, judgment rev'd in part on other grounds, 446 U.S. 752 (1980) (emphasis added).

As such, a conspiracy will subject to liability *all* persons (state actors and those acting with state actors) who planned or acted in concert to deprive the plaintiffs of their civil rights. *Id*; *see also Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997).

In this case it has been alleged when the police arrived at the hospital they met with Albin. From that meeting it was determined that the parties needed to establish a mechanism of injury and a

perpetrator, neither of which existed. By doing so they would then be in a position to remove the child from the care of the parents and cause dependency proceedings if not criminal proceedings to be initiated. In order to do so the officers and Albin engaged in a bogus investigation wherein they created a false narrative by manipulation and fabrication, which narrative was carried out through false police reports and false information in DFCS reports, and ultimately false testimony. The false narrative created by the officers in conjunction with Albin was that the mother was suffering from post-partum depression and due to the stress she was suffering harmed the child in a manner characterized as Shaken Baby Syndrome. Due to creation of that false narrative the officers then, along with Albin removed the child without a warrant, court order and despite obvious lack of imminent risk of serious bodily injury in light of police supervision, the condition of the child and the supervision of medical staff. *Arce v. Children's Hospital Los Angeles*, 211 Cal.App.4th 1455 (2012).

The defendant cites *Lockhead v. Weinstein*, 24 Fed. Appx. 805, 806 (9th Cir. 2001) involves a grant of summary judgment against a plaintiff who claims the complaining witness in his criminal case lied. The court held mere providing of information to the police is not sufficient to create liability for a conspiracy. The mere cause and effect relationship is not sufficient as there must be some meeting of the minds or agreement to violate constitutional rights. *Lockhead* is factually distinguishable from the case at hand in light of the fact plaintiffs have identified in their complaint the specific nature of the conspiracy and the acts done in furtherance thereon. An agreement is clearly alleged as Albin and the police met, determined they needed to identify a perpetrator and mechanism of injury, targeted the mother based on a theory that she suffered from post-partum depression and a skin condition that they would use to explain how she could not deal with the stress of a child and therefore must have shaken the baby to the point of brain injury, all Albin was aware the child came to the hospital suffering from E. Coli meningitis and purposefully omitted this information to the pediatric radiologist who misread the MRI images based on this misinformation as traumatic brain

injury consistent with so called shaken baby syndrome. Together they conducted an investigation, provided fabricated information to DFCS and continued to proliferate the false narrative.

*Benavidez v. Gunnel*, 722 F2d 615 (1983) was another summary judgment motion case relied upon by *Lockhead* and cited by defendant. The court applied qualified immunity following discovery and the motion for summary judgment based on the finding of good faith and reasonable cause as the belief that kidnapping had occurred was not contradicted in the affidavits submitted in the summary judgment motion. Moreover the three private citizens reported what they believed to be a state crime to the police without any further concerted action. The court held the mere reporting of information to the police does not amount to joint action under color of state law. *Id* at 618.

In the case at hand Albin is not in accord with the private citizens in *Gunnel* as County Counsel is presumably arguing. In fact Albin is an integral actor in carrying out the fabricated investigation and deciding to remove the child from the custody and control of his parents.

*Radcliffe v. Robinson Const. Co.*, 254 F.3d 772, 784 (9th Cir. 2001) is another summary judgment case however was resolved under the preemption doctrine due to application of the NLRB to the union action as to some defendants, absolute immunity as to a prosecutor and granted as to private actors finding amongst others that the plaintiffs' had failed to produce a "shred of evidence" to support the various actors were even aware of the others' conduct, in that case that an arrest had occurred; and they had little if any contact with the prosecutor. All this after having the benefit of discovery and supplementing the pleadings with affidavits and evidence attained during discovery. The *Radcliffe* case does not help defendant herein as she was an integral part of the joint action between herself and the police.

### E. THE CONSTITUTIONAL VIOLATION ALLEGED HEREIN IS NOT THE MAKING OF A MANDATORY REPORT

Initially, there is no allegation in the complaint that Albin was the initial reporter of the suspicion of child abuse to the police. (i.e. mandatory reporter). In this case it is alleged after the

police arrived they met with Albin and determined they (Albin and the police) needed a perpetrator and mechanism of injury to support the contention of shaken baby. Albin and the police then undertook their bogus investigation ultimately targeting mom based on a false narrative serving their purpose of removing the child from the custody and care of his parents. The defendant relies on *Sawyer v. Legacy Emanuel Hospital and Health Center,* US Dist. Lexis 75097 (2019), however the facts in Sawyer do not comport with the facts in this case. In Sawyer the doctor was the mandatory reporter based on the parent preventing emergency medical care, and the doctor did nothing more than make a report, specifically neither investigating the matter beyond the report nor removal, both of which occurred here. *Id* at 13-14.

**F. ALBIN IS NOT AFFORDED ABSOLUTE WITNESS IMMUNITY WHEREAS IN THIS CASE SHE FABRICATED INFORMATION IN THE DFCS PETITION AND IN THE MEDICAL RECORDS**

Initially, the plaintiffs have stated a cause of action against Albin whether or not she is found to be liable for any conduct that occurred after the removal of the child. To the extent the defendant is seeking to have the Court apply witness immunity to the underlying civil rights action, stemming from the investigation and removal it does not apply. As far as her conduct thereafter including consultation, promulgation of a false narrative and witness interference, as County Counsel has argued, such immunity is not limitless. In *Lisker v. City of Los Angeles*, 780 F3d 1237, 1242 (2015) the Court found the immunity did not apply to the officer's fabrication of evidentiary documentation that became part of the evidentiary record. Like the fabrication of the evidence by the officers in *Lisker*, here Albin was personally responsible from purposefully omitting before the MRI the fact the child had E. Coli Meningitis and despite knowing the pediatric radiologist, Saket had misdiagnosed Shaken Baby Syndrome, undertook to ensure this false narrative continued throughout the child's medical record, (for months and relied upon by multiple medical providers – Shaken Baby Syndrome injuries falsely proliferated the medical record) into the DFCS petition, and into the courtroom,

initially to support removal of the child and then to support the effort to permanently deprive the family of their 4th amendment and 14th amendment rights to familial association. Defendants here are seeking to "cloak" the misconduct of Albin, the fabricator, with the immunity in a manner specifically excluded under *Lisker*. *See also Paine v. City of Lompoc*, 265 F3d 975, 981 (2001) cited therein and again here by defendants. Albin here plays the dual role of both fabricator and testifier and therefore her conduct is excepted from the immunity otherwise afforded a mere witness. The witnesses in *Briscoe v. LaHue,* 460 US 325, 345-46 (1983), were afforded immunity based solely on their testimony in the judicial proceeding. The Court in *Briscoe* did not want to carve out an exception merely because the witnesses were police officers. *Id* at 328. Nowhere in the *Briscoe* opinion, relied upon by defendants, was there any discussion regarding those same individuals fabrication of evidence prior to the judicial process, which are the facts in this case. Again the issue before the Court in the other case cited by the defendant *Franklin v. Terr*, 201 F3d 1098 (9th Cir. 2000) was whether an expert witness accused of conspiring to provide false testimony should be afforded the immunity. The Court elected not to carve out an exception for providing immunity for false testimony to allegations of conspiracy to provide false testimony. *Id* at 1101, 1102. Again the *Franklin* case is inapposite because it does not involve conduct that preceded the judicial proceeding, fabricated evidence permeating the judicial process, in the dual role served by Albin herein.

### G. THE STATE IMMUNITY STATUTE FOR A MANDATORY REPORTER DOES NOT APPLY IN FEDERAL CIVIL RIGHTS ACTIONS

Importantly the defendant does not cite any cases discussing the application of a state immunity statute to a federal civil rights action. It is well settled that the state afforded absolute immunity for being a mandatory reporter does not apply in civil rights cases founded under section 1983. See *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 923-24 (2010).

> "The Court declines to do because it is bound by the law of the Ninth Circuit, which is clear that "[i]mmunity under section 1983 is governed by federal law; state law

cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer*, 202 F3d 1126, 1144 (9th Cir. 1999) In *Wallis*, the Ninth Circuit reversed a district court that had applied state statutory immunities for child abuse investigations to the federal section 1983 constitutional claims. *Id*. (citing *Martinez v. California*, 444 US 277, 284 n. 8 (1980). ("Conduct by persons acting under color of state law which is wrongful under 42 USC section 1983 . . . cannot be immunized by state law") and *Good v. Dauphin County Social Serv.* 891 F2d 1087, 1090-91 (3d Cir. 1989) (state laws providing immunity from suit for child abuse investigators have no application to suits under section 1983.) Although as one district court has noted "it is unclear from the court's opinion in *Wallis* which state statutory immunities were at issue in the child abuse investigations, this court is bound by the Ninth Circuit, and in the face of such explicit admonition, this court cannot dismiss the federal claims against [defendant] based on state law." *John Doe v. Regents of the Univ. of Calif.* 2006 US Dist. Lexis 65035 (E.D. Cal. Aug 29, 2006) In *John Doe*, Judge Karlton explained: "While this court is mindful of the California appellate court's reasoning in *Chadwick*, until Congress explicitly states that a state statute may provide immunity for section 1983 claims, the court declines to follow *Chadwick* because it contravenes Ninth Circuit authority." *John Doe*, 2006 US Dist. Lexis 65035 at 6 . This Court agrees with Judge Karlton's reasoning, and concludes that it is bound by the Ninth Circuit with respect to whether state law immunities apply to federal constitutional claims, including in the context of mandatory reporters of suspected child abuse."

### H. THE DEFENDANT IS NOT AFFORDED IMMUNITY FOR STATE LAW CLAIMS UNDER THE FACTS OF THIS CASE

The defendant also asserts she is entitled to immunity for state law claims based on being a mandatory reporter. In order to apply that reasoning the defendant would have the Court look at the conduct of Albin as merely consisting of the making of a mandatory report. As has been stated before though it has not been alleged that Albin made a mandatory report in this case. Additionally, and more importantly the conduct for which the plaintiffs are seeking to hold Albin liable is conduct which has found to be outside of the mere making of a mandatory report and therefore not subject to the absolute immunity. See for example *James W. v. Superior Court*, 17 CA 4th 246, 254-257 (1993) where in the court did not apply the immunity to acts that went beyond the mere making of the report, including the principal that once the report is made (where the immunity may be afforded) the matter is now turned over to the authorities to investigate versus not extending the immunity to unreasonable post reporting investigation. Whereas here in this case Albin, along with the police conducted the

fabricated investigation to name a perpetrator and mechanism of injury, and made the decision to remove the child without a court order or warrant.

In *Jones v. County of Los Angeles*, 802 F3d 990 (2015) the Court, in denying the defendant's summary judgment motion, did not apply the mandatory reporter immunity to the state law claims in light of the fact "Dr. Wang's challenged conduct occurred after she reported G.J.s case to the DFCS" *Id.* at 1009. In *Jones* the physician orchestrated the removal of the child from the care and custody of the parents after she had made a mandatory report. *Id* at 1007. In this case Albin orchestrated the investigation of the matter after a report was made and further orchestrated the removal of the child, usurping the function of DFCS the normal investigative agency. *Id* at 1008.

## I. ALBIN MAY BE HELD LIABLE FOR PROVIDING DFCS FALSE STATEMENTS FOR THE JUVENILE COURT PETITION

The defendant while recognizing a cause of action for placing a false statement in a dependency petition under *Beltran v. Santa Clara County*, 514 F3d 906, 908 (9th Cir. 2009) the defendant would have the court limit liability for such falsities to social workers. In this case however, the police and Albin were faced with a situation where there was no mechanism of injury and no perpetrator. In order to establish a perpetrator and mechanism of injury they engaged in a course of conduct to fabricate and manipulate the facts of the investigation, write false police reports, provide false information to DFCS for the purpose of the DFCS petition and ultimately testify falsely regarding the investigation in Court. The latter allegations would separately support a substantive due process claim under *Costanich v. Dept. of Soc. and Health Services* 627 F3d 1101, 1113-1114 (9th Cir. 2010) (note case was initial published precedent so the court granted qualified immunity however the case is from 2010 which significantly pre-dates this case) wherein court found:

> We therefore conclude that Costanich had a Fourteenth Amendment due process right to be free from deliberately fabricated evidence in a civil child abuse proceeding, and that, because genuine issues of material fact exist as to whether Duron deliberately fabricated evidence, which led to the termination proceedings and license revocation, the district court erroneously concluded that "Plaintiff has not provided evidence

PLAINTIFFS' OPPOSITION TO CATHERINE ALBIN'S MOTION TO DISMSS FRCP 12(b)(6) – Case No. 5:19-CV-01947-EJD          22

showing that Defendants deliberately made false statements and fabricated evidence to make a false finding of abuse."

See also *O'Con v. Katavich*, US Dist. Lexis 168387 (2013) at pg. 25 (a false police report can lead to a substantive due process claim where the action leads to a deprivation of life, liberty or property).

Similarly the defendants ask the Court to apply the litigation privilege under Civil Code Section 47(b)(2) to the State claims. The premise of the litigation privilege is to give litigants the "utmost freedom to access to the courts to secure and defend their rights." *Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993). In *Rubin* the court extended the litigation privilege to solicitation by attorneys to induce parties to file a lawsuit. Nothing about the litigation privilege or the holding in Rubin applies to this action. The defendant's reliance on *Silberg v. Anderson*, 50 Cal.3d 205 (1990), is similarly misplaced. Again the defendant is seeking to have the Court latch onto the language that the litigation privilege has been given broad application. *Id.* at 211. Presumably the theory of the defendant is that since there was a legal process undertaken, the litigation privilege is so sweeping any communication, in any way related to the litigation should come under the umbrella of the privilege.

In *Silberg*:

"A former husband brought an action against the attorney who had represented his wife in dissolution proceedings. The action was for breach of contract, negligence, and "intentional tort," and was based on the following allegations: the attorney made representations that a psychologist she recommended for evaluation and counseling for the purpose of determining visitation and custody was independent and neutral; the psychologist was a person with whom the attorney had a preexisting relationship; and the attorney used this undisclosed relationship to influence the psychologist to the wife's advantage in his evaluation of family members, leading him to produce a biased, defamatory, and inaccurate report.

The Supreme Court reversed the judgment of the Court of Appeal as to the cause of action for "intentional tort" with directions to reinstate the order of dismissal issued by the trial court as to all causes of action asserted against the attorney. The court held that the attorney's statements as to the psychologist's neutrality and independence were privileged under Civ. Code section 47, subd. 2; since they occurred in the context of a judicial proceeding, were logically related to the action, played an integral role in the proceeding, and were made by one of the participants about an

authorized participant. The court held that, contrary to the conclusion of the Court of Appeal, an otherwise privileged communication need not have been made in the "interest of justice" to qualify for the protection of section 47 subd. 2."

The best case the defendant can make is that her perjury during the trial is subject to the litigation privilege. This however in no way furthers the purpose of the litigation privilege, and more importantly completely ignores the fact that the conduct complained of occurred prior to and outside of the judicial process. Not a single mention of the judicial proceeding is made in the pleading of the 4th Cause of Action for Intentional Infliction of Emotional Distress. (Complaint Para. 76-83). Due to the fact that the cause of action is principally based on the actions taken at the hospital. While it is true that the cause of action does incorporate some earlier allegations, including mention of the judicial proceedings, the crux of the claim is described in the cause of action itself and does not necessarily include her testimony in court. Similarly the fifth cause of action for Negligent Infliction of Emotional Distress incorporates earlier allegations, but the crux of the claim is identified at paragraphs 86-93, and does not rely on Albin's testimony in court.

Moreover Albin's request to have the Court apply the mandatory reporter immunity to these claims is misplaced as previously argued in light of the fact the complained of conduct all outside of the making of a report (no allegation has been made that Albin made the report).

Additionally this ignores the dual role Albin played in creating false evidence used in the proceeding. *Lisker v. City of Los Angeles, supra.*

The citation to *Kachig v. Boothe,* 22 CA3d 626, 633 (1971) fails in that it has to do with attacking a final judgment based on perjury, something that does not exist here as this matter was set aside on appeal. Defendant's reliance on *Pettitt v. Levy,* 28 Cal.App.3d 484, 489 (1972) is likewise misplaced. In *Pettitt* as part of a proceeding where the aggrieved sought to attain a variance the defendant was alleged to have submitted a perjured document for consideration in that proceeding. The analogized the submittal of the perjured document to providing perjured testimony as it was

submitted as part of the proceeding. *Id.* at 490-491. Here however the crux of the conduct alleged to give rise to the negligent and intentional infliction of emotional distress is the conduct that occurred at the hospital, long before the judicial proceeding occurred and nowhere do plaintiffs rely on the perjured testimony given during the legal proceeding to support these claims.

### III. CONCLUSION

Based on the foregoing it is respectfully requested the Court deny the motion to dismiss on all counts. Moreover that in the event the Court were to disagree with the plaintiffs assertions regarding the adequacy of the pleadings herein, Plaintiffs hereby request the Court grant the plaintiffs leave of Court to amend the complaint to address any concern the Court may have regarding specific factual allegations or other deficiencies, if any.

Dated: July 30, 2019
_/s/Peter Johnson_____
Peter Johnson
Attorney at Law