UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

AVANTHI MANDA, et al.,

             Plaintiffs,

      v.

CATHERINE ALBIN, et al.,

             Defendants.

Case No. 5:19-cv-01947-EJD

**ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS**

Re: Dkt. Nos. 16, 27

      The Complaint names multiple defendants: (1) the "City Defendants"—the City of Sunnyvale, Sunnyvale Police Officers Matthew Meyer, Jesse Ashe, Anthony Serrano, Gregory Giguiere, and ten Doe Defendants (who are also police officers)—and (2) Dr. Catherine Albin. Complaint for Damages ("Compl.") ¶ 20, Dkt. 1. Defendant Albin is the director of the Northern California Pediatric ICU for Kaiser Medical Group and a general pediatrician with special training and a fellowship in pediatric critical care medicine. *Id.* ¶ 37. She "holds herself out as having special expertise in the area of physical child abuse." *Id.* Plaintiffs contend Defendant Albin garnered this "special expertise" when she served as the Director of the Center for Child Protection for the County of Santa Clara. *Id.* ¶ 38. Defendant Albin is "the resident child abuse expert for Santa Clara County." *Id.* ¶¶ 36, 39. In that capacity, she provides child abuse reports for Santa Clara County Department of Family & Children's Services ("DFCS"), consults with local law enforcement, and testifies for public entities in court. *Id.* ¶ 39. Avinash Yerva ("A.Y.") is the appointed Guardian ad Litem of the minor child for the purposes of this litigation. *Id.* ¶ 7.

      Defendants argue, pursuant to separate theories, that Plaintiffs have not adequately pled a

Section 1983 claim.  City Defendants also argue Plaintiffs have not pled a *Monell* claim.  The Court finds this motion suitable for consideration without oral argument.  *See* N.D. Cal. Civ. L.R. 7-1(b).  Having considered the Parties' papers, Defendants respective motions to dismiss are **GRANTED** without prejudice, except as to Plaintiffs' ratification claim.

## I.    BACKGROUND

### A.  Factual Background

On April 7, 2017, Plaintiffs Avanthi Manda and Surender Yerva ("Plaintiffs") brought their three-month-old son, minor A.Y., to Kaiser Hospital in Sunnyvale, California, because he was not eating and had a fever.  *Id.* ¶ 20.  A.Y. was checked by a Kaiser physician and a urine analysis and culture was conducted.  *Id.*  A.Y. was sent home with instructions and Tylenol.  *Id.*

On April 8, 2017, Plaintiffs brought A.Y. back to Kaiser for a follow-up visit.  *Id.* ¶ 21. A.Y. was diagnosed with a urinary tract infection.  *Id.*  A day later, on April 9, 2017, Plaintiffs brought A.Y. back to Kaiser for further follow-up, where he was allegedly diagnosed with an E. Coli infection.  *Id.* ¶ 22.  Plaintiffs claim the medical provider mistakenly considered the E. Coli count low and only provided an oral antibiotic.  *Id.*  As a result of this misdiagnosis and inadequate antibiotic, A.Y. developed sepsis and his urinary tract infection spread to the dura mater (a thick membrane of dense irregular connective tissue surrounding the brain and spinal cord).  *Id.* ¶ 23.  This caused meningitis and exacerbated A.Y.'s condition.  *Id.*

On April 11, 2017, Plaintiff Manda discovered A.Y. suffering from a fever and possibly seizing.  *Id.* ¶ 24.  She brought him back to Kaiser.  *Id.* ¶ 25.  Shortly after arrival, Defendant Albin allegedly took A.Y. off antibiotics entirely, which further exacerbated his condition.  *Id.* ¶ 26.  A.Y. was then diagnosed with E. Coli Meningitis.  *Id.* ¶ 27.  A.Y. was taken for a Magnetic Resonance Imaging ("MRI") scan.  *Id.* ¶ 28.  Dr. Saket, a neuroradiologist, concluded the MRI showed abnormal findings in the brain and surrounding tissue and was "consistent with non-accidental head trauma, specifically, Shaken Baby Syndrome."  *Id.*  Plaintiffs claim that Dr. Saket was not informed by Defendant Albin that A.Y. was suffering from E. Coli. Meningitis or that

A.Y. was misdiagnosed and given the wrong medication (thus exacerbating his physical condition). *Id.* Plaintiffs argue the MRI showed signs of E. Coli Meningitis, not Shaken Baby Syndrome, and that if Dr. Saket had known A.Y.'s full history, he would not have concluded the MRI showed evidence of Shaken Baby Syndrome. *Id.*

Plaintiffs further contend that during discussions with Dr. Saket regarding his MRI findings, Defendant Albin "purposely did not disclose to [Dr.] Saket the fact that A.Y. had been misdiagnosed and mistreated by Kaiser physicians, including [Defendant] Albin, regarding the E. Coli Meningitis." *Id.* ¶ 29. They allege that after discussions with Dr. Saket about his MRI findings, Defendant Albin "again purposely took no action to inform [Dr.] Saket of the E. Coli Meningitis of A.Y." *Id.* ¶ 30. She also "allowed the false record" she created through "manipulation" to persist in A.Y.'s medical records. *Id.* She allegedly "knew" this "false record" would be accessed and relied on by other future medical providers and serve as a baseline for their opinions and conclusions regarding the condition and causation of A.Y.'s injuries. *Id.* Defendant Albin's decision to "manipulate" the MRI record by omitting critical information was "calculated" to create a paper trail of physician's records showing that A.Y. needed medical treatment for Shaken Baby Syndrome. *Id.* ¶ 31. Based on Defendant Albin's experience, she knew this would support her false claim of Shaken Baby Syndrome and that Plaintiffs were responsible for A.Y.'s injuries. *Id.* ¶¶ 30–31. Defendant Albin made "other medical providers . . . unwitting participants in her scheme based on her manipulation of the medical record." *Id.* ¶ 31.

Dr. Saket only learned in August 2017, during a Juvenile Court proceeding, that A.Y. was suffering from E. Coli Meningitis. *Id.* ¶ 33. Dr. Saket was "not provided any clinical history that there was suspicion of infection." *Id.* ¶ 34. Plaintiffs contend that if Dr. Saket knew about the Meningitis during his diagnosis, he would not have concluded A.Y. suffered from non-accidental head trauma. *Id.* Plaintiffs argue that Defendant Albin interfered with the legal process during the juvenile court proceeding and caused Dr. Saket to change his testimony and "directed him to testify to a new finding supporting child abuse on another basis." *Id.* ¶ 35. It was Defendant

Albin, as the child abuse expert for the Santa Clara County, who "initiated the accusation and ultimately inculpated and incriminated [Plaintiffs]" during a joint investigation by DFCS, the Sunnyvale Police Department, and Defendant Albin. *Id.* ¶ 36. Defendant Albin, allegedly, "told police the parents [Plaintiffs] were responsible for inflicting the injuries to A.Y." and that she manipulated the record to support this. *Id.* ¶ 40. Defendant Albin "knew at the time she inculpated and incriminated [Plaintiffs] . . . police would act upon her recommendation and remove the child from the custody of the parents." *Id.* ¶ 41. She also knew the courts and DFCS would act on her recommendation, which would cause permanent deprivation of familial association. *Id.* ¶¶ 42–43.

On some unspecified date, City Police Officer Defendants and Defendant Albin removed A.Y. from Plaintiffs' custody and care without "any lawful court order or warrant, or other legal or just cause." *Id.* ¶ 46. Allegedly, the joint investigation did not support a finding that Plaintiffs inflicted A.Y.'s head trauma. *Id.* ¶ 47. According to Plaintiffs, Defendant Albin instructed the police that Plaintiffs were responsible for inflicting the head-trauma on A.Y. *Id.* ¶ 49. Defendant Albin pushed a false narrative that Manda was unable to care for A.Y. because of a medical condition, A.Y.'s demeanor, and her post-partum mental state. *Id.* City Police Officer Defendants and Defendant Albin told Plaintiffs they were liars and were responsible for injuring A.Y. *Id.* ¶ 50. Plaintiffs argue there was neither an imminent risk of serious bodily injury to A.Y. nor any justification for removing A.Y. without a warrant. *Id.* ¶ 53.

Plaintiffs contend that Defendants (collectively) breached 42 U.S.C. § 1983 by: (1) violating Plaintiff A.Y.'s Fourth Amendment rights by seizing A.Y. without a warrant or court order, *id.* ¶¶ 59–61; (2) violating Plaintiffs Manda and Yerva Fourteenth Amendment rights to freedom of association and familial association by seizing A.Y. without a warrant, *id.* ¶¶ 62–66; and (3) conspiring and fabricating evidence, *id.* ¶¶ 67–74. Plaintiffs also contend that Defendant Albin both intentionally and negligently inflicted emotional distress. *Id.* ¶¶ 75–94. Finally, Plaintiffs assert a *Monell* claim as to Defendant City of Sunnyvale. *Id.* ¶¶ 95–97. Plaintiffs seek

compensatory, punitive, and exemplary damages. *Id.* at 20.

## B. Procedural History

On June 20, 2019, City Defendants filed a motion to dismiss Plaintiffs' Complaint. Motion to Dismiss Plaintiffs' Complaint ("City Mot."), Dkt. 16. Plaintiffs submitted an opposition to this motion to dismiss on July 19, 2019.[1] Opposition/Response re Motion to Dismiss ("City Opp."), Dkt. 31. City Defendants replied to this opposition on July 26, 2019. Reply re Motion to Dismiss ("City Reply"), Dkt. 32.

On July 16, 2019, Defendant Albin submitted a motion to dismiss Plaintiffs' Complaint. Motion to Dismiss Plaintiffs' Complaint ("Albin Mot."), Dkt. 27. On July 30, 2019, Plaintiffs submitted an opposition to this Motion to Dismiss. Opposition/Response re Motion to Dismiss ("Albin Opp."), Dkt. 33. On August 20, 2019, after a stipulation to extend the time to reply, Defendant Albin filed a reply. Reply re Motion to Dismiss ("Albin Reply"), Dkt. 36.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss[2]

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8(a)(2)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The requirement that the court must "accept as true" all allegations in the complaint is "inapplicable to legal conclusions." *Id.* Dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient

---

[1] Should Plaintiffs choose to amend their complaint or bring/challenge another motion, the Court asks that they follow Civil Local Rule 3-4(d). It is unhelpful to the Court to have case names without reporter citations.

[2] A large portion of Plaintiffs Complaint focuses on fabrication, falsity, and fraud by Defendants. *See, e.g.*, Compl. ¶ 48. Because Defendants only address Federal Rule of Civil Procedure 8(a)(2), the Court does not address Federal Rule of Civil Procedure 9(b), which states the elevated pleading standard for allegations of fraud or mistake. The inconsistency in the allegations and the pleading standard addressed is based on the parties' papers; the opinion should not be construed as supporting a Rule 8 standard for allegations of fraud.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

5

facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Qualified immunity is properly brought as a motion to dismiss under Rule 12(b)(6). *Uptergrove v. United States*, 2008 WL 2413182, at *6 (E.D. Cal. 2008).

### B. Section 1983 Action

To state a claim under 42 U.S.C. § 1983, a plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived some claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 623–33 (9th Cir. 1988).

### III.     DISCUSSION

### A. City Defendants' Motion to Dismiss

City Defendants do not dispute they were acting under color of state law; the thrust of their motion to dismiss is that (1) qualified immunity bars Plaintiffs suit and (2) that did not deprive Plaintiffs of any Constitutional or legal right. Because the Court finds the Qualified Immunity argument dispositive, it only addresses that argument. Defendants also argue that Plaintiffs do not plead a *Monell* claim.

#### 1.   Qualified Immunity as to Section 1983 Claims[3]

#### a.   Legal Standard

The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, the Supreme Court established a two-part approach for analyzing qualified immunity. 533 U.S. 194 (2001). First, a court must decide whether the facts alleged make out a violation of a constitutional right. *Id.* at 201. Then, if this first step is satisfied, the court must decide whether the right at issue was "clearly established" at the time of defendant's

---

[3] City Defendants do not dispute they were "acting under color of state law" when the conduct at issue was committed. The Court thus does not address the applicability of Section 1983 as to City Defendants.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

6

United States District Court
Northern District of California

alleged misconduct." *Id.* The *Saucier* sequence of analysis is not mandatory—the court may exercise discretion in determining which of the two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009). It may be unnecessary to discuss the underlying constitutional right (step one) if the defendants would be entitled to qualified immunity in any event because no "clearly established constitutional right" is shown. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) Thus, in assessing a defense of qualified immunity, deciding whether plaintiff's claimed right was "clearly established" is the central inquiry. *Harlow*, 457 U.S. at 818–19.

The court must discern whether "the [officer] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). The court should consider only the facts that were knowable to the defendant officers." *White*, 137 S. Ct. at 550. This provides officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229.

The Supreme Court has recently reiterated the longstanding principle that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White*, 137 S. Ct. at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The Ninth Circuit does not require a case "directly on point," however the precedent cited must have "placed the statutory or constitutional question beyond debate." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038 (9th Cir. 2018). This ensures the "clearly established law" is "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[G]eneral statements of the law are not inherently capable of giving fair and clear warning" to officers since the unlawfulness of the conduct must be apparent "in [] light of pre-existing law." *White*, 137 S. Ct. at 552 (citations omitted). In the Fourth Amendment context, where it can be difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts, officers are entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Thus, Plaintiff must show the law was so

clearly established that every reasonable officer would understand that what they are doing violates the law. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The driving force behind the defense is a "desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Id.* (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the Supreme Court has repeatedly stressed the need to resolve questions of immunity at the earliest possible stage of litigation. *See Hunter*, 502 U.S. at 228 ("Immunity ordinarily should be decided by the court long before trial.").

### b. Discussion

The Court, in its discretion, addresses the second prong first and finds it dispositive. *Harlow*, 457 U.S. at 818–19. A claim by parents regarding the unconstitutional removal of children is assessed under the First and Fourteenth Amendments for interference with the right to family association, while a claim by the child who was seized is assessed under the Fourth Amendment. *Alberici v. Cty. of L.A.*, 2013 WL 5573045, at *17 (C.D. Cal. Oct. 9, 2014). Because "the same legal standard applies in evaluating First, Fourth and Fourteenth Amendment claims for removal of children," the claims are analyzed together. *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000). The general standard is:

> Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure *is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury* and that the scope of the intrusion is reasonably necessary to avert that specific injury.

*Id.* at 1138 (emphasis added); *see also James v. Rowlands*, 606 F.3d 646, 652 n.2 (9th Cir. 2010).[4]

---

[4] City Defendants' argument that a different standard applies (or that this one is too generic) misses the mark. Mot. at 15–16. To the extent Defendants use excessive force cases to establish Plaintiffs' burden of proving a specific standard, the Court finds this unavailing. Plaintiffs provide a specific standard because the precedent cited "placed the statutory or constitutional question

A government official may intrude on a parent's custody of their children without a warrant if, at the time of the seizure, the official has information that establishes "reasonable cause to believe the child is in imminent danger of serious bodily injury and the scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001). Exigency is established by a "totality of the circumstances." *Alberici*, 2013 WL 5573045 at *17. "An indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody." *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997). The age of the child can weigh in favor of exigency; if the child is young, it may be unable to relay abuse as "babies [are] incapable of testifying." *Dietz v. Damas*, 932 F. Supp. 431, 447 (E.D.N.Y. 1996).

A.Y., a three-month old infant, was removed from Plaintiffs Manda and Yerva care and custody without a court order or warrant. *See* Compl. ¶ 53. Thus, the issue is whether a reasonable officer, under the same situation and circumstances, could believe A.Y. was in "imminent risk of serious bodily injury." Defendants argue they reasonably believed, based on the information given to them, that A.Y. was in serious danger due to the medical diagnosis of Shaken Baby Syndrome, and that there was no "clearly established" precedent requiring them to second-guess the findings and conclusions of medical professionals. Mot. at 16. Plaintiffs, in response, argue that Defendants' focus on "second guessing medical providers" is misplaced because the only issue is whether the parents presented an "imminent risk of inflicting serious bodily injury." Opp. at 19. This misses the forest for the trees—part of resolving the qualified immunity issue depends on assessing the reasonableness of the officers' actions. *See Mabe*, 237 F.3d at 1106. The Court must assess whether the officers acted reasonably based on the information provided to

---

beyond debate." *Reese*, 888 F.3d at 1038. The unlawfulness of the conduct need only have been apparent in light of preexisting law. *See Ram*, 118 F.3d at 1310 (holding preexisting law clearly established that to seize a child, officials need a court order or a warrant, unless the child is in "imminent danger of harm"). Thus, Plaintiffs have identified a factually similar authority "squarely on point." Mot. at 16.

them by the medical providers.  *See Hunter*, 502 U.S. at 228.  Then, the Court must determine, if exigency is established based the totality of the circumstances.  *See Dietz*, 932 F. Supp. at 447.

While the Court disagrees with Defendants' argument regarding the applicable standard, see *supra* n.4, the Court agrees with Defendants that it was reasonable to believe "imminent danger" existed.  *Alberici*, 2013 WL 5573045, at *17 (holding that a government official may seize a child if, at the time of the seizure, there is "reasonable cause to believe the child is in imminent danger of serious bodily injury").  The City Defendants relied on Defendant Albin and Dr. Saker's findings, as well as an independent investigation, to conclude that the parents were responsible for inflicting the non-accidental head trauma on A.Y.  Compl. ¶ 49.  Plaintiffs provide no case law indicating that Defendants could not rely on a medical provider's evaluations.  *Cf. Reichle*, 566 U.S. at 664 (noting that the plaintiff must show precedent "clearly establishing" a requirement to do, or not do, something).

Plaintiffs neither contend that it was unreasonable to rely on these findings nor do they argue that Defendants knew of Defendant Albin's alleged fabrication.  Instead, Plaintiffs contend that there was no imminent danger because A.Y. was at the hospital and Defendants knew A.Y. would remain there under the care of hospital staff and the watchful eye of law enforcement.  Compl. ¶ 53.  But Plaintiffs do not provide any evidence or facts indicating that A.Y. could not leave the hospital or that he certainly would remain under the "watchful eye of law enforcement."  To the contrary, Plaintiff pleads facts indicating that A.Y. had been removed from the hospital multiple times and kept getting worse.  *See id.* ¶¶ 20–27.  A reasonable officer with this knowledge could have concluded there was insufficient time to get a warrant as there was no guarantee A.Y. would remain in the hospital.  *See Hunter*, 502 U.S. at 229 (noting that qualified immunity provides officers "ample room for mistaken judgments").  Hence, a reasonable officer could have believed that A.Y. was in imminent danger since it was uncertain A.Y. would stay at the hospital.  *Cf. Ram*, 118 F.3d at 1311 (holding imminent danger not shown when officer acted

on two-year old allegations that had twice been investigated and unconfirmed).[5] Further, two separate doctors had diagnosed A.Y. with Shaken Baby Syndrome and Defendant Albin allegedly blamed Plaintiffs Manda and Yerva for A.Y.'s injuries. Compl. ¶ 49. Finally, A.Y., because of his age, could not testify or relay what abuse, if any, was occurring. *Dietz*, 932 F. Supp. at 447.

Considering the totality of the circumstances, a reasonable officer could have believed A.Y. was in imminent danger from Plaintiffs Manda and Yerva and needed to be removed from their care. It is appropriate for the Court to make this determination as "[i]mmunity ordinarily should be decided by the court long before trial." *See Hunter*, 502 U.S. at 228. Accordingly, City Defendants' motion to dismiss on qualified immunity grounds is **GRANTED**.

### 2. *Monell* Claim

Plaintiffs *Monell* claim is based on Defendant City of Sunnyvale allegedly "encourag[ing][,] tolerat[ing], [and] ratif[ying]" Officer Defendants' acts and/or omissions. Compl. ¶ 96. The City was "deliberately indifferent" to policies, patterns, practices, and customs relating to removing children from their parents. *Id.*

#### a. Legal Standard

"A *Monell* claim for § 1983 liability against a public entity may be stated in one of three circumstances—(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of 'deliberate indifference' to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Carmona v. Bolanos*, 2019 WL 2247832, at *3 (N.D. Cal. May 23, 2019). A sufficient causal connection between the enforcement of the municipal policy or practice and the violation of the federally protected right must be shown. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1078–79 (9th Cir. 2016) (quoting *Bd. of Cty. Comm'rs of*

---

[5] Defendants do not specifically argue that the conspiracy cause of action should be dismissed on qualified immunity grounds, but because the conspiracy is grounded in violations of the Fourth and Fourteenth Amendment, which the Court finds are barred by qualified immunity, the conspiracy charge is dismissed on these same grounds.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS

1   *Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404–05 (1997)). The *Monell* violation must be pled

2   with specificity as required by *Twombly* and *Iqbal*; without allegations of plausible facts

3   supporting a policy or custom, a *Monell* claim should be dismissed. *Sanchez v. City of Fresno*,

4   914 F. Supp. 2d 1079, 1097 n.7 (E.D. Cal. 2012).

5          A municipality is liable under Section 1983 only where its policies are "the moving force"

6   behind the constitutional violation. *Brown*, 520 U.S. at 405. Indeed, "rigorous standards of

7   culpability and causation must be applied to ensure that the municipality is not held liable solely

8   for the actions of its employee." *Id.*; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391–

9   92 (1989) (discussing the consequences of adopting a lesser standard of fault and causation, as

10  doing so would "open municipalities to unprecedented liability under § 1983" and result in federal

11  judges second-guessing municipal employee-training programs, implicating federalism issues).

**b. Discussion**

13         Defendants assert three grounds for dismissing the *Monell* claim; they argue that

14  insufficient facts are stated to show: (1) a pattern, policy, or custom of constitutional injury, (2) a

15  ratification claim, and (3) an inadequate training claim. The Court addresses these in turn.

**i.      Pattern, Custom, or, Policy**

17         To establish municipal liability based on a pattern, custom, or policy, the particular custom

18  or practice must be "so widespread" as to have the force of law. *Brown*, 520 U.S. at 404;

19  *Praprotnik*, 485 U.S. at 127 (noting custom or practice must be "permanent and well settled"). A

20  plaintiff may not merely "identify a custom or policy, attributable to the municipality, that caused

21  his injury. [He] must also demonstrate that the custom or policy was adhered to with 'deliberate

22  indifference to the constitutional rights of [others].'" *Castro*, 833 F.3d at 1076 (quoting *City of

23  Canton*, 489 U.S. at 392).

24         The allegations in the Complaint only relate to A.Y. being taken; there is no showing of a

25  "widespread" practice of wrongfully depriving parents of their children or of any particular illegal

26  policy. *Compare Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1218 (E.D. Cal. 2015)

27

28

("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." (citation and quotation marks omitted)), *with* Opp. at 20 (arguing A.Y.'s seizure shows illegal policy, practice, or custom). While Plaintiffs are correct that "deliberate indifference" may be inferred, see Opp. at 20, they misread the standard recited in *City of Canton*. There, the Supreme Court specifically noted the need to show a "pattern of violations from which a kind of 'tacit authorization' by city policymakers can be inferred." *City of Canton*, 489 U.S. at 397 (Brennan, J., concurring).

Plaintiffs allege only conclusory and vague policies, customs, and practices, such as the City of Sunnyvale allows children to be removed from their parents without a warrant, court order or evidence of imminent risk of serious bodily injury. Opp. at 21; Compl. ¶ 96. Such conclusory allegations, without some pattern or knowledge by the City of such deprivation, do not establish a pattern, practice, or custom of deliberate indifference by the City. It only permits the Court to infer that specific employees allegedly violated Plaintiffs' constitutional rights. "That a plaintiff has suffered a deprivation of his federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply show that the *employee* acted culpably." *Brown*, 520 U.S. at 406–07. Such "*respondeat superior* liability" has repeatedly been rejected. *See, e.g.*, *id.* at 415. Some "deliberate action" directly causing a deprivation of federal rights must be attributable to the municipalities. *Id.* Vague, conclusory allegations of City policies based on *one* alleged violation, is insufficient to show either an actionable custom, policy, or practice or "deliberate indifference to [] constitutional rights." *Castro*, 833 F.3d at 1076; *Johnson*, 99 F. Supp. 3d at 1218 (noting that "widespread" practices or evidence of "repeated" violations can support inference of unconstitutional custom or practice). Accordingly, no actionable custom, practice, or policy has been pled.

### ii.    Ratification Claim

A municipality can be liable for an "isolated constitutional violation" if the final

policymaker "ratified" a subordinate's actions.  *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999).  Ordinarily, this is a jury question, but it must be adequately pled to survive a motion to dismiss.  *Id.* at 1238–39.  A policymaker's knowledge of an unconstitutional act does not, by itself constitute ratification.  *Id.* at 1239.  The plaintiff must show the policymaker approved of the subordinate's act—mere refusal to overrule a subordinate's completed act does not constitute approval.  *Id.*; *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 781 (9th Cir. 1997) ("To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983.").  Knowledge by the policymakers must be shown before the constitutional violations ceased.  *Christie*, 176 F.3d at 1239.

Plaintiffs summarily state that the City "ratified" Defendant Officer's conduct.  Compl. ¶ 96.  No facts are stated to show City policymakers knew of the alleged unconstitutional conduct.  Mot. at 20.  Further, Plaintiffs do not appear to dispute that the Complaint fails to state a *Monell* ratification claim.  Reply at 14; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) ("Plaintiffs' opposition does not address this claim or defendants' arguments, and thus the Court concludes that plaintiffs have abandoned this claim.  The Court GRANTS defendants' motion to dismiss this claim without leave to amend.").  Accordingly, a ratification claim is not shown, and Plaintiffs are **DENIED** leave to amend the ratification claim.

### iii.    Inadequate Training/Supervision

A municipality can also be liable under Section 1983 for failure to adequately train, supervise, or discipline its employees.  *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights "may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  A municipality's culpability for a deprivation of rights, however, is "at its most tenuous where a claim turns on a failure to train."  *Id.*  Municipal liability for failure to train attaches only where "the failure to train

amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Likewise, a failure to supervise generally gives rise to Section 1983 liability in situations where "there is a history of widespread abuse. . . . [because] [o]nly then may knowledge be imputed to the supervisory personnel." *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (collecting cases). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Id.*

As established above, see *supra* III.2.b.i., Plaintiffs have only established a "single act," which is insufficient to establish supervisory inaction. Accordingly, Plaintiffs have not met their burden in establishing inadequate supervision.

Plaintiffs cite to *Dawkins v. City of Honolulu* to argue that one alleged constitutional violation can itself show that the City "failed to adequately train and/or supervise" its officers. 761 F. Supp. 2d 1080, 1087 (D. Haw. 2010); *but see Long v. Yomes*, 2011 WL 4412847, at *5 & n.8 (D. Haw. Sept. 20, 2011) (arguing an isolated event is insufficient to establish a custom and noting "*Dawkins's* ruling on the *Monell*-based failure to train and/or supervise claim seems questionable under cases such as *City of Canton v. Harris,* 489 U.S. 378, 388–92 (1989)"). This Court agrees with the *Long* court—one event is insufficient to establish failure to train or supervise. An alternative conclusion would allow municipalities to be held liable for failure to train/supervise on a "lesser standard of fault" and endorse a "*respondeat superior*" theory of liability. *See City of Canton*, 489 U.S. 388–92. Thus, one constitutional violation, without more, is insufficient to establish failure to train/supervise.

Further, Plaintiffs' Complaint lacks any facts about the City's training programs and fails to allege *any* inadequacies with the program. Conclusory statements like the City needs "more or different training, supervision, investigation or discipline" are insufficient. *See Iqbal*, 556 U.S. at 678 (noting that court does not "accept as true" "legal conclusions" pled in a complaint). Accordingly, Plaintiffs have failed to plead a *Monell* claim. Defendants' Motion to Dismiss is

1  **GRANTED** as to the *Monell* claim.

2  ### B. Defendant Albin's Motion to Dismiss

3  Defendant Albin argues that Plaintiffs have pled insufficient facts demonstrating that she is

4  a "state actor." Albin Mot. at 6. The Court declines to exercise supplemental jurisdiction over

5  Plaintiffs' state law claims at this time. *See infra* III.B.3.

6  #### 1. State Actor

7  To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must show that the

8  action occurred under (1) "color of law" and (2) resulted in a deprivation of a constitutional right

9  or a federal statutory right. *Leer*, 844 F.2d at 623–33. In a Section 1983 action, the statutory

10  requirement of action "under color of state law" and the "state action" requirement of the

11  Fourteenth Amendment are "identical." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).

12  First, the deprivation must be "caused by the exercise of some right or privilege created by the

13  State or by a rule of conduct created by the state." *Id.* Second, the party charged with the

14  deprivation must be a person "who may fairly be said to be a state actor." *Id.* While the second

15  *Lugar* prong does not restrict the application of the Constitution solely to governmental entities, a

16  "private party's actions must be properly attributable to the State." *Roberts v. AT&T Mobility*

17  *LLC*, 877 F.3d 833, 838 (9th Cir. 2017) (quotation marks and citations omitted).

18  "Private hospitals, doctors, and nurses are not generally considered state actors amenable

19  to suit under § 1983." *Sliwinski v. Maysent*, 2019 WL 581720, at *4 (S.D. Cal. Feb. 13, 2019)

20  (citing *Briley v. California*, 564 F.2d 849, 855–56 (9th Cir. 1977) ("[P]rivate hospitals and

21  physicians have consistently been dismissed from § 1983 actions for failing to come within the

22  color of state law requirement of this section.").

23  Plaintiffs must show specific facts establishing that Defendant Albin was an employee of

24  the City of Sunnyvale at the time of the alleged unconstitutional activity. Plaintiffs' allegation,

25  however, that Defendant Albin is a private hospital physician employed by Kaiser Permanente

26  Medical Group undercuts the argument that she is a state actor. Compl. ¶¶ 37, 39. During the

27

28

alleged seizure of A.Y., Plaintiffs provide no facts showing that Defendant Albin acted as an employee of the Sunnyvale Department of Public Safety. Instead, Plaintiffs provide only conclusory allegations that during the relevant times "[Albin] was. . . a representative, employee, or agent of the County of Santa Clara and City of Sunnyvale." *Id.* ¶ 16. Such barebone conclusory statements are entitled little deference. *Iqbal*, 556 U.S. at 678.

Likewise, Plaintiffs' allegations that Defendant Albin *was* the Director for the County's Center for Child Protection and served as a child-abuse expert for DFCS fail to establish that in April 2017, when she reported neglect, she was acting under color of law. Compl. ¶¶ 38, 39. Contrary to Plaintiffs assertions, Defendant Albin's *past* employment is irrelevant, it has no bearing on the issue of whether she was a state actor *at the time* A.Y. was seized. Opp. at 9. Her "special expertise" and "awareness that her recommendations would be acted upon" do not establish that she was acting "under color of state law" because they do not show that she was a state employee or officer. *See* Albin Opp. at 9. Plaintiffs provide no precedent to the contrary. Nothing in Plaintiffs' papers can lead this Court to believe a private physician, who reports neglect, is a state actor simply because they communicate with police, have expertise in child abuse, and formerly served as a state employee. Such a finding would no doubt open the scope of "state actor" beyond the boundary established by the Ninth Circuit and the Supreme Court. *See Lugar*, 457 U.S. at 936 ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. . . . A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests.").

### 2. Private Actor Subject to Section 1983 Liability

The state-action requirement for establishing Section 1983 liability reflects judicial recognition that "most rights secured by the Constitution are only protected against infringement by governments." *Lugar*, 457 U.S. at 936. Thus, when the action challenged under Section 1983 is that of a private person, there must be "significant" state involvement in the action for it to meet

United States District Court
Northern District of California

the "under color of state law" requirement. *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983). There are four tests for determining if a private actor can be considered a state actor for Section 1983 purposes: (1) public function; (2) joint action; (3) government compulsion or coercion; and (4) government nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). One way the "joint action" test is satisfied is if a "conspiracy" is shown. *Howerton*, 708 F.2d at 382. Plaintiff relies on the "joint action" and "close-nexus" test.

### a. Close Nexus/Joint Action Test

In order to be considered state action, when a private actor participates in a governmental act, the court must find a sufficiently close nexus between the state and the private actor "so that the action of the latter may be fairly treated as that of the State itself." *Jensen v. Lane Cty.*, 222 F.3d 570, 575 (9th Cir. 2000). The State must be "so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974).

While courts generally do not consider private doctors or hospitals state actors, courts have found state action when a state delegates its obligation to provide medical care to inmates to a private hospital or medical provider. *See, e.g.*, *Carl v. Muskegon Cty.*, 763 F.3d 592, 596 (6th Cir. 2014); *Conner v. Donnelly*, 42 F.3d 220, 225–26 (4th Cir. 1994) (holding private doctor who treated inmate was a state actor even though he had no contract with the prison). For instance, in *Jensen*, the Ninth Circuit held that Dr. Robbins, a private physician, was a state actor because the record was clear that "Dr. Robbins and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves or others." 222 F.3d at 575. The court relied on the fact that "County employees intiate[d] the evaluation process" and looked to the "significant consultation with and among the various mental health professionals (including both [private] and [state] workers)." *Id.* The private actors helped develop and maintain the mental health policies of the County Psychiatric Hospital. *Id.* The court was thus "convinced" the state so deeply

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS

18

insinuated itself into the commitment process that there was a "sufficiently close nexus between the State and the challenged action of the [defendant] so that the action of the [defendant] may be fairly treated as that of the State itself." *Id.*

In contrast, here, Defendant Albin acted alone in her role as a treating physician at a private hospital. She was neither under <u>contract</u> to provide services on behalf of the state, see *Carl*, 763 F.3d at 596, nor did she provide services to someone in <u>state custody</u>, see *Conner*, 42 F.3d at 225–26. The "private doctor treating someone in state custody" series of cases are thus inapplicable. Further, merely being a "child abuse expert," without showing county or state involvement in the decision of whether A.Y. was neglected, is insufficient to show "significant" state involvement. Opp. at 14. It does not rise to the level of interconnectivity explained in *Jensen* because it does not show interconnectivity. *Cf. Jensen*, 222 F.3d at 575 (noting significant consultations among the various mental health professionals and the private psychiatrists' involvement in developing county psychiatric hospital standards).

Likewise, Defendant Albin initially reported the neglect on her own volition, pursuant to a state law requiring physicians, public and private, to report child neglect. *See Sawyer v. Legacy Emanuel Hosp. & Health Ctr.*, 2019 WL 1982530, at *5 (D. Or. May 3, 2019) (holding private doctor, acting pursuant to Oregon's mandatory reporter laws, was not a "state actor" for Section 1983 purposes even though the report imposed various investigative duties upon public officials); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) ("[I]n a case involving a private defendant, the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable' to the private defendant. Indeed, without some other nexus between the private entity and the government, we would expect that the private defendant is *not* responsible for the government's compulsion . . . ."). When a state compels a specific result by a private party, "it is the state action, not the private conduct, which is unconstitutional" because the private party is "left with no choice of his own" and should not be liable. *Sutton*, 192 F.3d at 838 (quoting Barbara Rook Snyder, *Private Motivation, State Action,*

*and the Allocation of Responsibility for Fourteenth Amendment Violations*, 75 CORNELL L. REV. 1053, 1067, 1069 (1990)).  Thus, even if Defendant Albin initiated a false report of suspected child abuse, that alone does not show she was acting in conjunction with the state.

### b. Conspiracy

Finally, in an attempt to show joint action, Plaintiffs argue that Defendants were working in conjunction and conspiring to violate Plaintiffs' constitutional rights.  Private parties have been held to act under color of law if they willfully participate in joint action or a conspiracy with state officials to deprive others of constitutional rights.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989) (collecting cases).  To prove a conspiracy between private parties and the government under Section 1983, an agreement or "meeting of the minds" to violate constitutional rights must be shown.  *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).  For instance, the "mere acquiescence of [private employees] to the investigation requests of [state actors] is, without more, insufficient to prove a conspiracy." *Id.*  While each participant in the conspiracy need not know the "exact parameters of the plan," they must at least "share the general conspiratorial objective." *Id.*; *Phelps Dodge Corp.*, 865 F.2d at 1541 ("To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.").  Thus, to demonstrate the existence of a conspiracy, it must be shown that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Hoffman-La Roche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971).  The plaintiff must state specific facts to support the existence of the claimed conspiracy.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004).

First, the mere furnishing of information to police officers does not constitute a conspiracy or "joint action" under color of state law.  *See Lockhead v. Weinstein*, 24 F. App'x 805, 806 (9th Cir. 2001).  Indeed, the mere fact that a private citizen was lying does not establish a conspiracy or joint action—the plaintiff must show that the private citizen conspired with state actors, *i.e.*, that

there was a "meeting of the minds to violate constitutional rights." *Id.* Indeed, in a case involving an alleged conspiracy between a private citizen and a prosecutor, the Ninth Circuit concluded that merely telling a prosecutor about a complaint is insufficient to establish a conspiracy "or every citizen who complained to a prosecutor would find himself in a conspiracy." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).

Plaintiffs argue that Defendant Albin was an "integral actor" in carrying out the fabricated investigation and deciding to remove A.Y. Opp. at 18. This misses the point. *Lockhead* and *Radcliffe* stand for the proposition that merely providing information, even false information, to the police is insufficient to establish a conspiracy. Some "plus" factor is needed; in other words, the plaintiff must show the police *knew* the information was false and shared the general conspiratorial objective of violating someone's constitutional rights. *See Crowe v. Cty. of San Diego*, 608 F.3d 406, 440–41 (9th Cir. 2010) (holding private actor not part of conspiracy because helping obtain a confession did not show he had the common objective of the larger conspiracy to wrongfully prosecute and convict the boys). Simply providing police information, without more is, as a matter of law, insufficient to establish a conspiracy.

Here, Plaintiffs allege that Defendant Albin lied to police; they allege that A.Y. did not have Shaken Baby Syndrome, but rather had E.Coli, which Defendant Albin knew, but kept from the police. Compl. ¶¶ 40–42. The conspiracy, thus, is that Dr. Albin and the police officers had the conscious objective to seize A.Y. and justify this seizure by falsifying evidence. The Complaint, however, focuses on what Defendant Albin knew and her falsification of evidence, it does not discuss what City Defendants knew or specifically allege that they themselves falsified evidence. *See Olsen*, 363 F.3d at 929. Contrary to Plaintiffs assertions, see Opp. at 16–17, a physical meeting is insufficient to establish a "meeting of the minds." The fact that Defendants "met" does not further Plaintiffs' conspiracy arguments. Compl. ¶ 71. To the extent "overt acts" by City Defendants are alleged, they are too conclusory for this Court to give them merit. *See id.* (alleging bare conclusions of "overt acts"); *Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d

1156, 1161 (9th Cir. 2003) (requiring more than "conclusory allegations" to establish a conspiracy). Most troubling, there is *no* allegation that Defendant Albin told police about the E. Coli or that they knew of her falsification. *See* Compl. ¶ 40 ("In this case Albin told the police the parents were responsible for inflicting the injuries to A.Y. despite having to fabricate evidence . . . ."). As Defendant Albin notes, any argument that there was a "meeting of the minds" directly contradicts paragraphs 40–43 of the Complaint. Reply at 6. Those paragraphs allege Defendant Albin singularly fabricated evidence and thus provide no specific facts supporting the existence of the claimed conspiracy. Hence, the police officers and County social workers, like the defendant in *Crowe*, were not told of the fabrication and so there can be no conspiracy between Defendants to deprive Plaintiffs' of their constitutional rights.

Accordingly, Plaintiffs have not shown that Defendant Albin was a "state actor" as required by Section 1983. Therefore, all Section 1983 claims against Defendant Albin are **DISMISSED.**[6]

### 3. Immunity from Tort Causes of Action

"Where a district court has dismissed all claims over which it has original jurisdiction, it may sua sponte decline to exercise supplemental jurisdiction over remaining state law claims" under 28 U.S.C. § 1367(c). *Nardico v. J.P. Morgan Chase & Co.*, 2013 WL 1856683, at *7 (N.D. Cal. May 2, 2013) (citing 28 U.S.C. 1367(c)(3)); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015); *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101 (N.D.N.Y. 2016).

All that remain are Plaintiffs state law tort claims (the intentional and negligent infliction of emotional distress claims); the Court does not have original jurisdiction over these claims.[7] Here, after carefully considering the relevant factors (economy, convenience, fairness, and

---

[6] The Court does not address Defendant Albin's argument that she is entitled to testimonial immunity as it is unnecessary because she is not subject to 1983 liability.
[7] Plaintiffs allege that this Court has federal question jurisdiction over the Section 1983 claims. Compl. ¶¶ 1–2. They do not, nor could not, allege diversity jurisdiction because the parties are all domiciled in California. 28 U.S.C. § 1332.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS
22

United States District Court
Northern District of California

comity), the Court finds that they weigh in favor of declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). The Court may sua sponte render this determination. *See Sikhs for Justice*, 144 F. Supp. 3d at 1096. This case has yet to proceed beyond the pleadings and no discovery has been conducted. Few judicial resources are wasted by dismissing the case at this stage. *Pasillas v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 5225982, at *5 (N.D. Cal. Sept. 17, 2013).

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and **GRANTS** Defendant's motion to dismiss these claims without prejudice. *Miller v. Cal. Dep't of Corrections*, 2011 WL 4433165, at *4 (E.D. Cal. Sept. 21, 2011) (dismissing without prejudice the claims that court declined to exercise supplemental jurisdiction).

## IV.   CONCLUSION

The Court **GRANTS** City Defendants' motion to dismiss Plaintiffs' Section 1983 claims because these Defendants are protected by qualified immunity. The Court **GRANTS** Defendant Albin's motion to dismiss Plaintiffs' Section 1983 claims because she is not a state actor. The Court **DECLINES** to exercise supplemental jurisdiction over the state law claims at this time and **DISMISSES** those claims without prejudice.

Under Federal Rule of Civil Procedure 15(a), leave to amend "should be freely granted when justice so requires." When dismissing a complaint for failure to state a claim, a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000). It is possible Plaintiffs can cure their allegations. Accordingly, because Plaintiffs may salvage their Complaint, the Court finds amendment would not be futile. Plaintiffs' claims are therefore **DISMISSED** with leave to amend, except as to Plaintiffs' ratification claim. *See supra* III.A.2.b.ii. Should Plaintiffs choose to file an amended complaint, they must do so by **December 27, 2019**. Failure to do so, or

failure to cure the deficiencies addressed in this Order, will result in dismissal of Plaintiffs' claims with prejudice. Plaintiffs may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: November 25, 2019

EDWARD J. DAVILA
United States District Judge