UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AVANTHI MANDA, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>CATHERINE ALBIN, et al.,<br><br>   Defendants. | Case No. 5:19-cv-01947-EJD<br><br>**ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 53, 58 |

This is Plaintiffs' second attempt to plead facts to support their claims that Defendants unconstitutionally seized Plaintiffs' minor child A.Y. The First Amended Complaint again names multiple defendants: (1) the "City Defendants" consisting off the City of Sunnyvale, Sunnyvale Police Officers Matthew Meyer, Jesse Ashe, Anthony Serrano, Gregory Giguiere, and ten Doe Defendants (who are also police officers) and (2) Dr. Catherine Albin. First Amended Complaint for Damages ("FAC"), Dkt. 50. Defendant Albin is a medical expert in child abuse and is a pediatrician at Kaiser. Plaintiffs argue that Albin is also a child abuse investigator for the County of Santa Clara and for law enforcement agencies therein. *Id.* ¶¶ 16, 62, 68. Defendant Albin was the "lead responsible" for child abuse allegations in the county outside of the Santa Clara County Hospital. *Id.* ¶¶ 57, 58. Defendant Albin allegedly served as the primary child abuse expert for the County of Santa Clara and in that capacity provided child abuse reports for Santa Clara County Department of Family & Children's Services ("DFCS") and consulted with social workers and law enforcement officers about court testimony. *Id.* ¶¶ 59–60.

Avinash Yerva ("A.Y.") is the appointed Guardian ad Litem of the minor child for the purposes of this litigation. *Id.* ¶ 7. Defendants contend that this Court must dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted. Having considered the Parties' papers, the Court **GRANTS** Defendants' motions to dismiss.[1]

## I.   BACKGROUND

### A. Factual Background

On December 27, 2016, Plaintiffs Avanthi Manda and Surender Yerva's minor son, A.Y. was born prematurely. *See* FAC ¶ 20. Plaintiff Manda allegedly had a difficult birth process that included a variety of birthing complications. *See id.* (alleging that A.Y. was born prematurely and that during birth, due to A.Y.'s birthing position, his head was stuck inside the birth canal for a prolonged time and was manipulated via "significant manual twisting and spinning" in order to place the baby's head in a position for delivery).

On March 3, 2017, Plaintiffs took A.Y. to check-up and engaged in injury prevention counseling. *Id.* ¶ 27. The child was deemed "healthy" and had "normal growth and development."[2] *Id.*; *see also id.* ¶ 28 (recounting A.Y.'s head circumference percentile and his height and weight percentiles). Plaintiffs allege that at the visit, A.Y. was given a "cocktail of 5 immunizations." *Id.* ¶ 27. After these immunizations, Plaintiff Yerva allegedly noticed that A.Y. was behaving strangely. *Id.*

On April 7, 2017, Plaintiffs brought A.Y. to Kaiser Hospital in Sunnyvale, California and claimed that he was not eating and was experiencing a fever. FAC ¶ 30. A.Y. was checked by a Kaiser physician and a urine analysis and culture was conducted—blood in the urine was noted. *Id.* After A.Y.'s temperature dropped to 98 degrees, A.Y. was sent home with instructions and Tylenol. *Id.* Plaintiffs were told that the initial urine analysis was encouraging and were advised

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), this Court found this motion suitable for consideration without oral argument. *See* Dkt. 65.

[2] The Court notes some confusion. Plaintiffs plead that A.Y. was "deemed healthy" at the March 2017 appointment. FAC ¶ 27. Yet, Plaintiffs also seem to allege that A.Y.'s height and weight percentiles were below average. *Id.* ¶ 28.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

2

to call back for the urine culture results. *Id.* Plaintiff Yerva followed up with A.Y.'s pediatrician later on April 7, 2017, who told Plaintiffs the testing would take about two days. *Id.* ¶ 31. Plaintiffs allege that they told the pediatrician that A.Y. was still febrile, appeared weak, uncomfortable, and seemed to be moaning. *Id.*

On April 8, 2017, Plaintiffs brought A.Y. back to Kaiser for a follow-up visit. *Id.* ¶ 32. They told the staff that A.Y.'s fever would rise and fall with the administration of Tylenol. *Id.* A.Y. again received a complete examination, and "[n]othing to indicate abuse was noted." *Id.* At this point, A.Y. was diagnosed with a urinary tract infection. *Id.* ¶ 33. A day later, on April 9, 2017, Plaintiff Yerva spoke with the physician, who advised that A.Y. would be started on antibiotics for the infection. *Id.* ¶ 34. Later that day, Plaintiff Yerva spoke with A.Y.'s pediatrician, who told Yerva to start A.Y. on the antibiotics and that Yerva should expect A.Y. to improve in one or two days. *Id.*

On April 11, 2017, Plaintiff Manda discovered A.Y. suffering from a fever and possibly seizing. *Id.* ¶ 35. She brought him back to Kaiser that morning. *Id.* ¶ 36. On the way to the hospital, Plaintiff Manda noticed that it appeared A.Y. was having a seizure. *Id.* At the hospital, shortly after arrival, A.Y. was taken off antibiotics by Defendant Albin entirely, which further exacerbated his condition. *Id.* ¶ 37. A.Y. was administered Ativan, which stopped A.Y.'s seizing. *Id.* ¶ 39. Per Dr. Albin's instructions, A.Y. was taken for a Magnetic Resonance Imaging ("MRI") scan. *Id.* ¶ 40. Dr. Saket, a neuroradiologist, concluded that the MRI showed abnormal findings in the brain and surrounding tissue and was "consistent with non-accidental head trauma, specifically, Shaken Baby Syndrome." *Id.* ¶¶ 40–42. Plaintiffs maintain that Defendant Albin failed to inform Dr. Saket that A.Y. was suffering from E. Coli. Meningitis or that A.Y. had presented with an infection and persistent fever. *Id.* ¶¶ 41–42. Likewise, Plaintiffs allege that Dr. Saket failed to review A.Y.'s chart. *Id.* ¶ 41. Plaintiffs argue the MRI showed signs of E. Coli Meningitis, not Shaken Baby Syndrome, and that if Dr. Saket had known A.Y.'s full history, he would not have concluded that the MRI showed evidence of Shaken Baby Syndrome. *Id.* ¶ 42. In

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS
3

Plaintiffs' view, the brain trauma shown in the MRI is consistent with A.Y.'s complicated birth and E. Coli Meningitis. *Id.* ¶ 44.

Plaintiffs further contend that during discussions with Dr. Saket regarding his MRI findings, Defendant Albin "purposely did not disclose . . . the fact that A.Y. had been misdiagnosed and mistreated by Kaiser physicians, including [Defendant] Albin, regarding the E. Coli Meningitis." *Id.* ¶¶ 47, 48. She also "allowed the false record" she created through "manipulation" to persist in A.Y.'s medical records. *Id.* She allegedly "knew" this "false record" would be accessed and relied on by other future medical providers and serve as a basis for their opinions and conclusions regarding A.Y.'s injuries. *Id.* ¶ 47. Defendant Albin's decision to "manipulate" the MRI record by omitting critical information was "calculated" to create a paper trail of physician's records showing that A.Y. needed medical treatment for Shaken Baby Syndrome. *Id.* ¶ 49. Based on Defendant Albin's experience, she knew this would support her false claim of Shaken Baby Syndrome and that it would help support her theory that Plaintiffs were responsible for A.Y.'s injuries. *Id.* ¶¶ 48–50. Defendant Albin made "other medical providers . . . unwitting participants in her scheme based on her manipulation of the medical record." *Id.* ¶ 49. Indeed, Plaintiffs allege that Dr. Albin never mentioned A.Y.'s E. Coli Meningitis diagnosis and let Dr. Saker's findings stand to "support her intent to put forth a case of Shaken Baby Syndrome" against Plaintiffs. *Id.* ¶ 50. Dr. Saket only learned in August 2017, during a Juvenile Court proceeding, that A.Y. was suffering from E. Coli Meningitis. *Id.* ¶ 51. Plaintiffs contend that if Dr. Saket knew about the Meningitis during his diagnosis, he would not have concluded A.Y. suffered from non-accidental head trauma. *Id.* ¶ 52.

During the early evening of April 11, 2017, Defendant Giguiere arrived at the hospital. *Id.* ¶ 55. The matter was cross-reported to the Department of Child and Family Services and a social worker also arrived at the hospital. *Id.* When Defendant Giguiere learned about the shaken-baby accusations and that A.Y. was going to require continued hospitalization, Giguiere invoked the mandatory Joint Protocol. *Id.* The Joint Protocol has specific requirements related to child abuse

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS

4

investigations. *Id.* ¶ 63. In cases involving hospitalization and/or abusive head trauma, the protocol calls for the creation of a "Severe Child Injury Response Team ("SCIRT"). The SCIRT consists of law enforcement officers that are specially trained in child abuse investigations and other medical experts. *Id.* ¶¶ 59, 61. Because A.Y. was suspected to have suffered abusive head trauma, a SCIRT was assembled to conduct a child abuse investigation. *See id.* ¶¶ 62, 63. The SCIRT consisted of Defendants Ashe, Meyer, and Giguiere, who were specially trained in child abuse investigations, and Defendant Albin. *Id.* A social worker from DFCS was also on the SCIRT. *Id.*

On April 11, 2017, after Defendant Giguiere arrived at the hospital, Defendant Albin, Defendant Giguiere, another officer, and the DFCS social worker had an initial SCIRT meeting. *Id.* ¶¶ 63, 64. Plaintiffs allege that during this meeting, Defendant Albin stated that she believed A.Y. suffered from shaken baby syndrome. *Id.* ¶ 64. Defendant Giguiere then passed this information to the other members of the SCIRT team. *Id.* Plaintiffs contend that Defendant Albin made her determination without reviewing A.Y.'s or Plaintiff Manda's medical records. *Id.* ¶ 65. Plaintiffs further allege that at this initial SCIRT meeting, Defendant Albin told the police that she also believed that Plaintiff Manda (the baby's mother) was responsible for A.Y.'s injuries. *Id.* ¶¶ 66, 67. The SCIRT "team" thus allegedly decided to focus the investigation on proving that Plaintiff Manda had abused A.Y. *Id.* ¶ 67. Plaintiffs allege that the team exaggerated and fabricated Plaintiff Manda's medical conditions so as to establish a theory of why Manda would abuse A.Y. *See id.*

Because of Defendant Albin's "30 plus years of experience as a child abuse expert" in Santa Clara County, Plaintiffs contend that Defendant Albin knew that based on her representations (1) police would remove A.Y. and (2) DFCS would initiate dependency court action. *Id.* ¶¶ 68, 69 (alleging that Defendant Albin knew that her report would result in permanent deprivation of A.Y.); *see also id.* ¶ 70 (recounting Defendant Albin's decades of experience and her participation in hundreds of other joint investigations regarding child abuse).

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS
5

1   Plaintiffs maintain that Defendant Albin not only played an integral and active role in the
2   investigation, but also that she was "the principal instigator" of ensuring her false claims
3   progressed through the administrative and legal process. *Id.* ¶ 70.

4   Plaintiffs claim that police officers met with Plaintiff Yerva at the hospital. *Id.* ¶ 72.
5   Plaintiffs allege that the officers were able to observe that Plaintiff Yerva was calm, appropriate,
6   caring and cooperative. *Id.* This interview allegedly did not provide any information to suggest
7   that A.Y. experienced any non-accidental or accidental trauma. *Id.* Defendants Ashe and Meyer
8   then met with Plaintiff Manda at Plaintiffs' home. *Id.* ¶ 73. Plaintiff Manda was allegedly
9   cooperative and appropriately behaved. *Id.* ¶ 74. Again, this interview allegedly did not yield any
10  information that would support the theory that A.Y. was abused. *Id.* Plaintiff Manda claims that
11  she told the officers about A.Y.'s difficult birth and that she believed A.Y.'s problems were
12  related to that. *Id.* Plaintiff Manda gave the officers consent to view A.Y.'s medical records, but
13  the officers allegedly never did so. *Id.* The officers also spoke with A.Y.'s grandparents, who
14  corroborated everything that had been stated by Plaintiffs. *Id.* ¶ 75.

15  After speaking with the Plaintiffs, the officers decided to remove A.Y. from Plaintiffs'
16  custody. *Id.* ¶ 76. This occurred shortly after midnight on April 11, 2017. *Id.* At the time of
17  removal, police did not have a warrant or court order. *Id.* Moreover, at the time of removal, A.Y.
18  was to remain in hospital custody for at least 21 days to treat his meningitis. *Id.* The officers also
19  knew that Plaintiffs were at home and thus presented no risk to A.Y. *Id.* Additionally, the officers
20  knew that Plaintiffs were cooperative. *Id.* ¶ 77. Plaintiffs thus allege that the only thing
21  supporting the removal was Defendant Albin's theory of abuse and her "manipulation and
22  fabrication of the medical records." *Id.* ¶ 78. Plaintiffs maintain that at the time of removal, A.Y.
23  was not at risk of suffering imminent bodily injury since A.Y. was in the hospital and Plaintiffs
24  were at home. *Id.* ¶ 83. Allegedly, City Defendants joined Defendant Albin in fabricating
25  information to support the theory that Plaintiff Manda was incapable of caring for A.Y. *Id.* ¶ 79.
26  City Defendants and Defendant Albin also told Plaintiffs they were liars and were responsible for

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS

injuring A.Y. *Id.* ¶ 80.

As part of her role on the SCIRT team, Defendant Albin was required to produce a "Child Protection Evaluation." *Id.* ¶ 84. Plaintiffs further allege that when Defendant Albin prepared this report, she still had not communicated with A.Y.'s pediatrician or the physicians that treated A.Y. during his earlier hospitalizations. *Id.* ¶ 86. Defendant Albin also had not reviewed Plaintiff Manda's pre-birth or post-birth medical records or A.Y.'s labor and delivery records. *Id.* Defendant Albin allegedly knew that DFCS and law enforcement would take action against Plaintiffs based on this report. *Id.* ¶ 85. Plaintiffs allege that the Child Protection Evaluation contained the following misinformation:

- A.Y. presented with multiple episodes of head injury without explanation.
- A.Y.'s head trauma was complicated by the presence of meningitis, but the meningitis was caused by the abusive head trauma.
- The MRI was consistent with abusive head trauma.
- The MRI showed shearing injury.
- The elevated temperature reported by Plaintiff Manda was not confirmed at the Kaiser Emergency Department.
- The report omits information about A.Y.'s birth; namely that A.Y.'s head (1) swelled during birth, (2) became stuck in the birth canal, (3) struck Plaintiff Manda's pelvic bones and birth canal due to asynclitic positioning, and (4) had to be manually twisted and spun during birth.
- Plaintiffs were not following developmental milestones accurately.
- While the report notes that A.Y. received immunizations, Plaintiff Yerva's comments about A.Y. acting differently after is omitted.
- The report states that Plaintiff Manda was unable to tolerate holding A.Y. for feeds and for comforting due to her eczema and thus had others take over the care.
- The report indicates that there was no indication that A.Y. was suffering from meningitis

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

7

1       upon admission.

2   •   While the report mentions that A.Y. has no retinal (eye) hemorrhages, the report fails to

3       explain that scientific literature includes retinal hemorrhages as a symptom of Shaken

4       Baby Syndrome.

5   •   Blood was found in A.Y.'s cerebrospinal fluid.

6   •   The report highlights innocuous conduct to support the theory that Plaintiff Manda abused

7       A.Y.

*Id.* ¶ 87.

### B. Procedural History

On November 25, 2019, this Court issued an order dismissing Plaintiffs' complaint. *See* Order Granting City Defendants' Motion to Dismiss; Order Granting Defendant Albin's Motion to Dismiss ("November 2019 Order"), Dkt. 42. The Court granted Plaintiff leave to amend, except as to Plaintiffs' *Monell* ratification claim. *Id.* at 23. Subsequently, Plaintiffs filed their first amended complaint. Plaintiffs contend that Defendants (collectively) breached 42 U.S.C. § 1983 by: (1) violating Plaintiff A.Y.'s Fourth Amendment rights by seizing A.Y. without a warrant or court order, *see* FAC ¶¶ 94–96; (2) violating Plaintiffs Manda and Yerva's Fourteenth Amendment rights to freedom of association and familial association by seizing A.Y. without a warrant, *id.* ¶¶ 97–101; and (3) conspiring and fabricating evidence, *id.* ¶¶ 102–09. Plaintiffs also contend that Defendant Albin both intentionally and negligently inflicted emotional distress. *Id.* ¶¶ 110–29. Plaintiffs also assert a *Monell* claim as to the City of Sunnyvale. *Id.* ¶¶ 130–32. In their FAC, Plaintiffs have added a seventh cause of action—judicial deception in violation of the U.S. Constitution—against Defendant Albin. *See id.* ¶¶ 133–43. The Court specifically instructed Plaintiffs that they could not add claims without leave of Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. *See* November 2019 Order at 24. Plaintiffs neither sought leave of Court nor permission from Defendant Albin to add their seventh cause of action. Accordingly, the Court **DISMISSES** this claim **with prejudice**.

1  On February 10, 2020, City Defendants filed a motion to dismiss Plaintiffs' FAC.  Motion to Dismiss Plaintiffs' FAC ("City Mot."), Dkt. 53.  Plaintiffs submitted an opposition to this motion to dismiss on February 24, 2020.  Plaintiffs' Opposition to Motion to Dismiss ("City Opp."), Dkt. 55.  City Defendants replied to this opposition on March 2, 2020.  Reply re Motion to Dismiss ("City Reply"), Dkt. 56.

On March 12, 2020, Defendant Albin submitted a motion to dismiss Plaintiffs' FAC.  Motion to Dismiss Plaintiffs' Complaint ("Albin Mot."), Dkt. 58.  Defendant Albin also submitted a request for judicial notice.  Request for Judicial Notice re Motion to Dismiss ("RJN"), Dkt. 59.  Plaintiffs submitted an opposition to this Motion to Dismiss on March 24, 2020.  Opposition/Response re Motion to Dismiss ("Albin Opp."), Dkt. 60.  Plaintiffs also submitted an objection to the Motion to Dismiss; specifically, to its use of exhibits.  Objections to Motion to Dismiss and Notice of Motion to Dismiss ("Objections"), Dkt. 61.  On April 1, 2020, Defendant Albin filed a reply.  Reply re Motion to Dismiss ("Albin Reply"), Dkt. 63.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  The requirement that the court must "accept as true" all allegations in the complaint is "inapplicable to legal conclusions."  *Id.*  Dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Qualified immunity is properly brought as a motion to dismiss under Rule 12(b)(6).  *Uptergrove v. United States*, 2008 WL 2413182, at *6 (E.D. Cal. 2008).

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS
9

## B. Section 1983 Action

To state a claim under 42 U.S.C. § 1983, a plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived some claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 623–33 (9th Cir. 1988).

## III. DISCUSSION

### A. City Defendants' Motion to Dismiss

Similar to their last motion to dismiss, City Defendants do not dispute that they were acting under color of state law; the thrust of their motion to dismiss is that (1) qualified immunity bars Plaintiffs suit and (2) that they did not deprive Plaintiffs of any Constitutional or legal right. Because the Court again finds the qualified immunity argument dispositive, it only addresses that argument.

#### 1. Qualified Immunity as to Section 1983 Claims

In its November 2019 Order, the Court granted dismissal of Plaintiffs' Complaint after determining that City Officer Defendants were entitled to qualified immunity. *See* November 2019 Order at 11. For the below reasons, the Court still finds that City Officer Defendants were protected by qualified immunity.

The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In assessing a defense of qualified immunity, the central inquiry is whether plaintiff's claimed right was "clearly established." *Id.* at 818–19. In other words, qualified immunity only applies where an officer's conduct does not violate clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The relevant question is thus whether the officer acted "reasonably under *settled* law in the circumstances." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (emphasis

added). It is irrelevant if another (more) reasonable interpretation can be construed after the fact. *Id.* The court must only consider the facts that were knowable to the defendant officers at the time of the alleged violation. *White v. Pauly*, 137 S. Ct. 548, 550 (2017). This provides officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229.

The "clearly established" constitutional right should not be defined at "high a level of generality." *White*, 137 S. Ct. at 552. While the Ninth Circuit does not require a case "directly on point," the precedent cited to show that officers violated a "clearly established right" must place the "statutory or constitutional question beyond debate." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038 (9th Cir. 2018). This ensures that the "clearly established law" is "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Indeed, the unlawfulness of the conduct must be apparent in light of "pre-existing law." *White*, 137 S. Ct. at 552. In the Fourth Amendment context, where it can be difficult for the officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts, officers are entitled to qualified immunity unless "existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Thus, the plaintiff must show that the law was so clearly established that a reasonable officer would understand that what they did violates the law. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

As the Court noted in its first order, because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231. The driving force behind the defense is a "desire to ensure that 'insubstantial claims' against government officials [are] resolved prior to discovery." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the Supreme Court has repeatedly stressed the need to resolve questions of immunity at the earliest possible stage of litigation. *See Hunter*, 502 U.S. at 228 ("Immunity ordinarily should be decided by the court long before trial."); *cf.* City Opp. at 17.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

11

This Court previously found that the law is clearly established that to seize a child, officials need a court order or warrant, unless the child is in "imminent danger of harm." *See* November 2019 Order at 8; *but see Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997) ("An indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody."); *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001) (noting that a government official may intrude on a parent's custody of their children without a warrant if, at the time of the seizure, the official has information that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and the scope of the intrusion is reasonably necessary to avert that specific injury"). The age of the child can weigh in favor of exigency; if the child is young, it may be unable to relay abuse as "babies [are] incapable of testifying." *Dietz v. Damas*, 932 F. Supp. 431, 447 (E.D.N.Y. 1996).

The Court still finds that it was reasonable for the City Officer Defendants to believe that A.Y. was in imminent danger such that the warrantless seizure was reasonable. The Court's November 2019 analysis supports this finding—as the Court noted there, even while A.Y. remained at the hospital, *nothing* prevented Plaintiffs from taking A.Y. out of the hospital's care. The officers were informed of A.Y.'s hospital history; namely, that each time A.Y. returned to the hospital, he was worse. They also were informed by Defendant Albin that A.Y. had been abused by his parents. These facts make it reasonable for the officers to believe that A.Y, was in danger. And, Plaintiffs' FAC and Opposition fail to establish that it was unreasonable for the officers to rely on Defendant Albin's medical opinion that Plaintiff Manda abused A.Y. *See Mueller v. Akar*, 700 F.3d 1180,1188 (9th Cir. 2012) (holding that it is reasonable for an officer to rely on a doctor's opinion). Likewise, Plaintiffs fail to provide precedent that "squarely" shows that officers in a comparable situation were required to obtain a warrant.

Plaintiffs reliance on *Arce v. Children's Hospital Los Angeles*, 150 Cal. Rptr. d 735 (Ct. App. 2012) is misplaced. There, the minor children were removed from their parent's custody without a warrant after one child was diagnosed with Shaken Baby Syndrome. *Arce*, 150 Cal. Rptr. 3d at 741. On appeal, the court held the court improperly dismissed the plaintiffs' complaint on qualified immunity grounds. *Id.* at 758. The facts showed that even before the children's removal, "several individuals investigating the matter concluded that the parents had not caused [the minor's] injuries." *Id.* at 751. Likewise, after interviewing the parents, the police allegedly also agreed that the parents had not injured the minor. *Id.* at 751–52. This raised "factual questions as to whether County social workers had a reasonable basis" for concluding that the parents presented an imminent risk to the children. *Id.* at 752. Moreover, "more than a day and a half passed between the occurrence of the purported exigency that gave rise to the detention . . . and the actual detention." *Id.* ("This alleged 40-hour delay . . . raises questions as to why officials did not attempt to obtain a warrant prior to taking custody of [the minors]."). All of these facts raised "serious question[s]" about whether it was reasonable to believe that the minors were in imminent danger. *Id.* (alteration in original).

In contrast, here, the FAC fails to allege any facts that suggest that any officer doubted Defendant Albin's alleged conclusions that A.Y.'s injuries were inflicted by Plaintiffs (specifically by Plaintiff Manda). Likewise, the temporal period alleged in the FAC is much smaller than *Arce*. The FAC shows that officers investigated the Shaken Baby Diagnosis the day A.Y. was brought to the hospital *and* that A.Y. was removed within the next 12 hours. Plaintiffs argue that this case is like *Arce* because, in both cases, the minor children were under the care of the hospitals. But, this ignores the significant factual dissimilarities noted between the cases. Here, until officers seized A.Y., he remained under the care and *control* of Plaintiffs. The officers also had reasonable cause to believe that Plaintiffs presented a serious danger to A.Y.—they had been told by Defendant Albin, a child abuse expert, that A.Y. had been abused. Moreover, even assuming that Defendant

Albin was incorrect about her Shaken Baby Syndrome diagnosis, qualified immunity offers officers a "wide zone of protection." *See Alberici v. Cty. of L.A.*, 2013 WL 5573045, at *18 (C.D. Cal. Oct. 9, 2013). Accordingly, Plaintiffs have neither provided a precedent "squarely" on point that shows the officers should have acted differently nor a case showing that it was unreasonable for the officers to trust Defendant Albin's medical opinion.

For these reasons, the Court holds that Plaintiffs have not amended their complaint to show that the "violative nature of [the] *particular* conduct [at issue] is clearly established" by controlling precedent. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also* November 2019 Order. Thus, because it was reasonable for the officers to believe that A.Y. was in serious danger, the Court **GRANTS** City Defendants' motion to dismiss on qualified immunity grounds.

### 2. *Monell* Claim

Plaintiffs next allege a *Monell* claim against the City of Sunnyvale. FAC ¶ 130–32. A public entity is subject to liability under § 1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation or policy statement, see *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," see *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); (3) the decision of a person with "final policymaking authority," see *id.* at 123; or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights, see *City of Canton v. Harris*, 489 U.S. 378 (1989). Plaintiffs must show a sufficient causal connection between the enforcement of the municipal policy or practice and the violation of their federally protected right. *Harris*, 489 U.S. at 389; *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

In its November 2019 Order, the Court dismissed Plaintiffs' *Monell* claims after it determined that Plaintiffs failed to plead: (1) a widespread pattern, custom, or policy that caused them injury, (2) that the City "ratified" the Defendant Officers' conduct, or (3) that the City failed

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS
14

1    to adequately train/supervise its employees.  The Court denied Plaintiffs leave to amend the

2    "ratification" claim, but granted leave to amend as to the other two *Monell* theories.  *See*

3    November 2019 Order at 12–16.

4        The FAC suffers from the same problems as the first complaint—Plaintiffs have not

5    alleged a "widespread" practice of wrongfully depriving parents of their children or sufficient

6    facts to support their allegation that the City failed to adequately train/supervise its employees.

7    *See Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1218 (E.D. Cal. 2015) ("Liability for

8    improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon

9    practices of sufficient duration, frequency and consistency that the conduct has become a

10   traditional method of carrying out policy." (quotation marks and citation omitted)); *see also*

11   *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of

12   rights is at its most tenuous where a claim turns on a failure to train.").  The FAC adds no facts

13   which show that the City had a widespread policy or practice of unconstitutionally depriving

14   parents of their children.  To the contrary, it only adds information about the alleged misconduct

15   *in this case*.  The FAC is thus devoid of any allegations about misconduct outside this case and

16   does not plead a widespread pattern, custom, or policy that caused Plaintiffs' injury.

17       For these same reasons, the FAC also fails to state a claim based on inadequate training.

18   *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) ("A single act or isolated incidents

19   are normally insufficient to establish supervisory inaction upon which to predicate § 1983

20   liability."). Accordingly, because Plaintiffs have only plead a "single act" of misconduct, they

21   have not met plead sufficient facts to establish a *Monell* claim.[3]  The Court thus **GRANTS** City

22   Defendants' motion to dismiss on Plaintiffs' *Monell* claim.

23       **B.  Defendant Albin's Motion to Dismiss**

24       Defendant Albin maintains that Plaintiffs have pled insufficient facts to show that she is a

25   "state actor."  Albin Mot. at 6.  For the foregoing reasons, the Court agrees.

---

[3] For a more detailed analysis, the Court directs the parties back to its November 2019 Order.
Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS
15

### 1. Judicial Notice

Generally, on a motion to dismiss, the court is limited to the contents of the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2005). A court may, however, consider evidence outside the compliant if (1) the complaint refers and incorporates the document or (2) if the document is subject to judicial notice. Under the first exception, the "incorporation by reference" doctrine, the court may consider documents whose contents are alleged in the complaint or where the complaint "necessarily relies" on the documents or contents therein, as long as the document's authenticity is not in question and there are no disputed issues as to the document's relevance. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The purpose of this rule is to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting" portions of documents upon which their claims are based. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

The FAC refers to the mandatory "Joint Protocol" and the "Child Protection Evaluation" form. Defendant Albin requests that the Court take judicial notice of these documents. *See* RJN. Plaintiffs object. The Court finds Plaintiffs' objections unpersuasive—contrary to Plaintiffs' argument, there is no indication that Defendant Albin manipulated the Child Abuse Evaluation form or that it is fraudulent. Moreover, Defendant Albin seeks to introduce the form not for its contents, but to show that it was created by a private actor. Perhaps recognizing that this is damning to their claim, Plaintiffs argue introduction would deny them their "right of confrontation or dispute." *See* Objections at 4. Not so. First, Plaintiffs have no "right of confrontation;" this is a civil case. Second, Plaintiffs specifically relied on and plead facts about this evaluation form. They cannot now say its introduction is unfair. Accordingly, because the FAC relies on these exhibits and because the exhibits authenticity and relevance cannot be reasonably questioned, the Court **GRANTS** Defendant Albin's request for judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT ALBIN'S MOTION TO DISMISS

16

### 2. State Actor

This Court granted Defendant Albin's Motion to Dismiss Plaintiffs' first complaint because the complaint failed to adequately allege that Dr. Albin was a state actor or a private actor whose actions were significantly involved with state action. November 2019 Order at 16–22. The FAC does not plead facts that change the Court's earlier analysis.

Generally, only a state actor, and not a private individual or entity, may be liable under 42 U.S.C. § 1983 because "section 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). "Private hospitals, doctors, and nurses are not generally considered state actors amenable to suit under § 1983." *Sliwinski v. Maysent*, 2019 WL 581720, at *4 (S.D. Cal. Feb. 13, 2019) (citing *Briley v. California*, 564 F.2d 849, 855–56 (9th Cir. 1977) ("[P]rivate hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement of this section.").

As noted in the earlier order, Plaintiffs must show specific facts establishing that Defendant Albin was an employee of the City of Sunnyvale at the time of the alleged unconstitutional activity. In an attempt to do this, Plaintiffs argue that Defendant Albin (1) acted as a medical expert assigned by the Center for Child Protection and (2) acted as a member of the SCIRT team pursuant to the Joint Protocol. Neither of these things, however, change the reality that when Defendant Albin treated and diagnosed A.Y., she was acting as a *private* hospital physician employed at a *private* hospital. *See* FAC ¶ 58; *see also* RJN. Her role on the SCIRT team does not change this—she reported suspected child abuse, as is her duty, and explained her findings to the officers. The simple fact that she aided county employees does not make her a county employee. Defendant Albin thus cannot "fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

### 3. Private Actor Subject to Section 1983 Liability

Without state action, a plaintiff cannot state a § 1983 claim for relief against a private party. *Rendell-Baker v. Kohn*, 457 U.S. 830, 843 (1982). When the action challenged under § 1983 is that of a private individual, there must be "significant" state involvement in the action for it to meet the "under color of state law" requirement. *Haverton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983). The Ninth Circuit recognizes four tests for determining whether a private individual can be considered a state actor for purposes of § 1983 liability: (1) public function; (2) joint action; (3) government compulsion or coercion; and (4) government nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

The same concerns the Court highlighted in its November 2019 Order apply to the FAC. The FAC's allegations still fail to rise to the level of interconnectivity examined in cases like *Jensen v. Lane County*, 222 F.3d 570, 575 (9th Cir. 2000). *See* November 2019 Order at 18. Nothing Plaintiffs have alleged change the Court's conclusion that Defendant Albin reported the alleged abuse due to a mandatory duty to report. *Cf.* Albin Opp. at 18. Moreover, Plaintiffs do little to correct their bare-bones allegations of conspiracy. The *only* allegations that City Defendants conspired with Defendant Albin are conclusory statements like Defendants "act[ed] in concert and conspired with one another." FAC ¶¶ 18, 79. This is plainly insufficient. The analysis from this Court's earlier order thus continues to apply herein and the Court directs the Parties to that order for a more thorough analysis as to why Plaintiffs' FAC fails to allege sufficient facts to show joint action and conspiracy.[4] Accordingly, the Court **GRANTS** Defendant Albin's motion to dismiss Plaintiffs' FAC.

---

[4] Plaintiffs also make light of the fact that Defendant Albin was on the SCIRT team and use this to show joint action. This, however, ignores the reality that Defendant Albin was neither under contract to provide services on behalf of the state nor provided services to someone in state custody. *See* November 2019 Order at 19 (collecting cases). Simply assisting police with a child abuse investigation did not render Defendant Albin a joint actor. A contrary finding would expand the definition of "joint action" beyond reasonable bounds.

Case No.: 5:19-cv-01947-EJD
ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT ALBIN'S MOTION TO DISMISS

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** City Defendants' motion to dismiss and **GRANTS** Defendant Albin's motion to dismiss. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses those claims without prejudice. *See* November 2019 Order at 22–23. The Court also declines to afford Plaintiffs another opportunity to amend their complaint as it holds doing so would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."). The Clerk shall close the file and a judgment in favor of Defendants shall follow.

**IT IS SO ORDERED.**

Dated: May 22, 2020

EDWARD J. DAVILA
United States District Judge